UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMANDA JONES,

          Plaintiff,

    v.

NATIONAL RAILROAD PASSENGER CORPORATION, et al.,

          Defendants.

Case No. 15-cv-02726-MEJ

**ORDER RE: SECOND MOTION FOR JUDGMENT ON THE PLEADINGS; ORDER ON MOTION TO STRIKE**

Re: Dkt. Nos. 51, 52

## INTRODUCTION

Amanda Jones ("Plaintiff") was injured when riding a bus owned by the National Railroad Passenger Corporation ("Amtrak") and operated by the Santa Cruz Metropolitan Transit District ("SCMTD") (together, "Defendants"). She alleges Defendants violated several federal and state anti-disability discrimination statutes and were negligent. First Am. Compl., Dkt. No. 49. The Court partially dismissed Plaintiff's original complaint for failure to state a claim (Dkt. No. 45), and Defendants once more move for judgment on the pleadings, arguing Plaintiff fails to state any disability-based claim. Mot., Dkt. No. 51. Plaintiff filed an Opposition (Dkt. No. 53), and Defendants filed a Reply (Dkt. No. 55). Defendants also move to strike certain portions of the First Amended Complaint ("FAC"). Mot. to Strike, Dkt. No. 52. Plaintiff filed an Opposition (Dkt. No. 54), and Defendants filed a Reply (Dkt. No. 56). All parties have consented to the jurisdiction of this Court. *See* Dkt. Nos. 8, 12, 16. The Court heard oral argument from the parties on December 8, 2016 and continued the motions until such time as the parties had the opportunity to attend a settlement conference with a magistrate judge. The parties attended settlement conferences with the Honorable Laurel Beeler on April 4, 2017, and December 21, 2017, but failed to settle their dispute. Dkt. Nos. 67, 88.

Having considered the parties' writetn and oral arguments and the relevant legal authority,

the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings, and **FINDS MOOT** Defendant's Motion to Strike.

## BACKGROUND

In her original complaint, filed June 17, 2015, Plaintiff alleged she "was traveling in a wheeled apparatus (a scooter) and had apprised [her bus driver] that she needed to be secured to avoid falling." Compl. ¶ 11, Dkt. No. 1. She contended the bus driver did not know how to properly secure her scooter, would not listen to her instructions, and secured the scooter improperly such that, when the driver sped around a curve, her scooter tipped over, and she was injured. *Id.* ¶¶ 13-15. Based on these facts, she asserted seven claims: (1) a discrimination claim against each Defendant based on disability under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131 et seq.; (2) a claim under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794(a), against all Defendants; (3) a claim under the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51 et seq., against all Defendants; (4) a claim pursuant to California's Disabled Persons Act ("CDPA"), Cal. Civ. Code §§ 54 et seq., against all Defendants; (5) a negligence claim against all Defendants; and (6) a negligent infliction of emotional distress("NIED") claim against all Defendants. Compl. ¶¶ 22-75.

On July 20, 2016, Defendants filed a Motion for Judgment on the Pleadings, arguing Plaintiff had insufficiently pleaded her disability discrimination claims. *See* First Mot., Dkt. No. 41. The Court granted the Motion with leave to amend, finding Plaintiff insufficiently pleaded "the threshold issue" in her disability discrimination claim, "that she is disabled" and insufficiently pleaded "facts sufficient to give rise to a plausible claim that Defendants discriminated against her because of any disability". *See* Order at 5-6, Dkt. No. 45.

Plaintiff filed her First Amended Complaint on September 28, 2016. Dkt. No. 49. She added the following new allegations: Plaintiff is a "qualified individual with a disability" under the ADA and the Rehabilitation Act "because she has a physical impairment that substantially limits her in the major life activity of walking." FAC ¶ 2; *see also id.* ¶¶ 20, 36, 37. She further alleges that "[a]t the time of the accident, [she] traveled by a common wheeled apparatus (scooter) to get around the city due to injuries sustained in a previous accident." *Id.* ¶ 3; *see also id.* ¶ 13

United States District Court
Northern District of California

2

("Due to her disability, [Plaintiff] traveled by a wheeled apparatus (scooter) at the time of the accident"). She contends Defendants "knew or should have known [Plaintiff] was a disabled person with a federally protected right of equal access to a public entity's services pursuant to the ADA and Section 504." *Id.* ¶ 14. She alleges she informed the bus driver that she needed to be secured to avoid falling; that the driver attempted to secure Plaintiff using the available equipment but was confused about how to secure the scooter; that the driver ignored Plaintiff's instructions for securing the scooter, such that when the driver sped around a curve, the scooter tipped over, resulting in injuries to Plaintiff. *Id.* ¶¶ 15-22. The driver is not a defendant. She further alleges Defendant Amtrak failed to "provide staff proficiently trained in operating the securement technology" on the bus, thereby denying Plaintiff equal access to Defendants' services by reason of her disability. *Id.* ¶ 32. Based on these facts, Plaintiff reasserts each of the claims included in the original complaint. She seeks an order enjoining Defendants from further discriminatory conduct and requiring them to institute policies and practices relevant to Plaintiff's claims, as well as damages and attorneys' fees and costs. *Id.* at 15-16.

In their Second Motion for Judgment on the Pleadings, Defendants seek judgment on Plaintiff's ADA claims, Rehabilitation Act claim, Unruh Act claim, CDPA claim, and NIED claim. They argue once again that Plaintiff has failed to state sufficient factual allegations to support claims of discrimination under any theory. *See* Mot. at 5. In their Motion to Strike, they ask the Court to strike Plaintiff's NIED claim, certain paragraphs from the factual averments of the FAC, and certain prayers for relief. *See* Strike Mot.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

"Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the facts alleged in the complaint, taken

as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While a complaint need not contain "detailed factual allegations" to survive a Rule 12(b)(6) motion, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citations omitted). A claim is plausible on its face when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In considering whether a claim satisfies this standard, the court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (internal quotation marks omitted). "[I]t is within [the court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

## DISCUSSION

### A. Whether Plaintiff States a Claim

While Plaintiff does not need to plead a detailed, prima facie discrimination case to survive a Rule 12(c) motion, her pleading must give Defendants fair notice of her claims and the grounds upon which those claims rest:

> The Ninth Circuit has interpreted *Iqbal* and *Twombly* to hold that (1) to be entitled to the presumption of truth, allegations in a complaint may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; and (2) the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. [Citation.] While a plaintiff need not plead

> facts constituting all elements of a prima facie employment discrimination case in order to survive a Rule 12(b)(6) motion to dismiss, courts nevertheless look to those elements to analyze a motion to dismiss, so as to decide, in light of judicial experience and common sense, whether the challenged complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. [Citations].

*Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 796-97 (N.D. Cal. 2015) (citations omitted); *see also Lacayo v. Donahoe*, 2015 WL 993448, at *14 (N.D. Cal. Mar. 4, 2015) ("*Iqbal* and *Twombly* eliminated mere notice pleading, and instead plainly require a plaintiff to plead facts sufficient to give rise to a plausible claim for relief.").

     1.   <u>Disabled Individual</u>

In order to plead a disability discrimination claim under the ADA, the Rehabilitation Act, the Unruh Act, or the CDPA, Plaintiff must plead facts sufficient to show she is a disabled individual whose disability limits a major life activity.[1]  Plaintiff alleges she (1) is a qualified individual with a disability; (2) has a physical impairment that substantially limits her ability to walk; and (3) used a scooter at the time of the accident because of injuries sustained in a previous accident.  *See* FAC ¶¶ 2-3, 13, 20, 37.  While Plaintiff could provide greater detail regarding her impairment, the Court finds her allegations that she was physically injured in a prior accident, that the injury limits her ability to walk, and that she was using a scooter because of that injury is sufficient to plead Plaintiff is disabled.  *See Barilleaux v. Mendocino Cty.*, 61 F. Supp. 3d 906, 916 (N.D. Cal. 2014) (plaintiff alleged that at time of incident, she was "using crutches due to her mobility impairment after knee surgery" and that she was able to walk, but with pain and difficulty; the court held she had stated a claim for relief under the ADA "because she has alleged that she required crutches to walk or otherwise walks with difficulties due to a weakened knee,

---

[1] *See* 42 U.S.C. § 12102(1)(A) (defining "disability" as "a physical or mental impairment that substantially limits one or more major life activities"); *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007) (standards of substantive liability of ADA, including definition of disability, are incorporated into the Rehabilitation Act); Cal. Civ. Code § 51(e)(1) (defining disability as "any mental or physical disability as defined in Sections 12926 and 12926.1 of the Government Code"); Cal. Civ. Code § 54(b)(1) (defining "disability" as "any mental or physical disability as defined in Section 12926 of the Government Code"); Cal. Gov. Code § 12926(m) (defining "physical disability" as including conditions that both affect specific body systems and that "limit[] a major life activity").

which reflects a substantial impairment in the major life activity of walking.").  Defendants may challenge Plaintiff's disability at the summary judgment stage, but these allegations are sufficient to survive the present motion.

### 2.  Discrimination

In order to plead ADA and Rehabilitation Act claims, Plaintiff must allege enough facts to show Defendants discriminated against her solely based on her disability.  *See Shankar v. U.S. Dep't of Homeland Sec.*, 2014 WL 523960, at *4 (N.D. Cal. Feb. 6, 2014) (citations omitted); *Smith v. Brennan*, 2016 WL 1446720, at *4 (N.D. Cal. Apr. 13, 2016) (Rehabilitation Act claim deficiently pleaded where plaintiff alleged no facts "plausibly establishing" that any employment decision was motivated by his impairments or that his employer failed to provide a reasonable accommodation).  Additionally, to plead a disability discrimination claim under the Rehabilitation Act and the Unruh Act (apart from one that is premised on a violation of the ADA), Plaintiff must allege facts showing the discrimination was intentional.  *See Phillips v. P.F. Chang's China Bistro, Inc*., 2015 WL 469049, at *6 (N.D. Cal. Aug. 6, 2015); *cf. Ferguson v. City of Phoenix*, 157 F.3d 668, 675-76 (9th Cir. 1998) (to obtain compensatory damages under ADA, plaintiff must show discriminatory intent; however, no showing of intent is necessary to obtain injunctive relief under ADA).  She can demonstrate intent either by showing discriminatory animus or deliberate indifference.  *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).  To plead disability discrimination under the CDPA, Plaintiff may show Defendants violated California accessibility requirements or federal disability law.  *Rodriguez v. Barrita, Inc*., 10 F. Supp. 3d 1062, 1074-75 (N.D. Cal. 2014).

Plaintiff's central allegation in the FAC continues to be that the bus driver was "confused" about how to secure her scooter, and despite her informing him she needed to be secured in order to avoid falling and trying to instruct him in how to secure her properly, he failed to properly do so.  FAC ¶¶ 15-21.  Based on this interaction, Plaintiff alleges that "Defendant knew or should have known that [she] was a disabled person" (FAC ¶ 14), that "Defendant knew or should have known that he did not know how to properly secure" the scooter (*id*. ¶ 19), and that in ignoring her instructions, "Defendant acted with deliberate indifference" to the risk Plaintiff would suffer harm

(*id*. ¶ 20). But the "Defendant" in these allegations appears to refer to the bus driver, who is not a defendant in this action.

Further, there is a paucity of authority addressing whether, as a matter of law, a single instance of failing to provide equal access states an ADA claim. Generally speaking, "[t]he regulations implementing the ADA do not contemplate perfect service for wheelchair-using bus commuters." *Midgett v. Tri-County Met. Transp. Dist. of Or.*, 254 F.3d 846, 849 (9th Cir. 2001) (granting summary judgment to defendant); *Stephens v. Shuttle Assocs., LLC*, 547 F. Supp. 2d 269, 277-78 (S.D.N.Y. 2008) (plaintiff failed to plead a failure to train claim under ADA where she only alleged "an isolated incident": "Even assuming the allegations in [the complaint] are true and drawing all reasonable inferences in her favor, based only on one isolated incident Stephens has alleged no set of facts to indicate that Transit Defendants failed to adopt policies or procedures to effectively train their employees how to deal with disabled individuals"); *Shankar*, 2014 WL 523960, at *10 (N.D. Cal. Feb. 6, 2014) (dismissing discrimination claim for several reasons, including failure to allege facts plausible showing defendant breached any duty to train); *Kirola v. City & Cty. of San Francisco*, 74 F. Supp. 3d 1187, 1236-37 (N.D. Cal. 2014) ("[A] Title II [ADA] plaintiff cannot establish standing [to obtain injunctive relief] by merely pointing to a few isolated access barriers in her neighborhood. Rather, to establish standing, a Title II plaintiff must show that the barriers she encountered amounted to a wholesale denial of 'meaningful access' to the challenged program, service, or activity, when viewed in its entirety."); *cf. Askins v. New York City Trans.*, 2013 WL 142007, at *4 (S.D.N.Y. Jan. 8, 2013) (based on plaintiff's allegations of "twenty discrete discriminatory incidents, a reasonable inference can be drawn that [transit operator] has failed to properly train its employees"); *Midgett*, 254 F.3d at 849 (holding on summary judgment that neither injunctive relief nor damages were warranted under ADA where plaintiff and other bus passengers submitted evidence bus line failed to properly secure wheelchair, wheelchair ramps were too steep, lifts failed dozens of time, and drivers had poor attitude towards lift users: "Plaintiff's evidence establishes several frustrating, but isolated, instances of malfunctioning lift service on Tri–Met. The evidence also shows that, unfortunately, a few individual Tri–Met operators have not treated passengers as they are required and are trained

to do.  Under the regulations, these occasional problems do not, without more, establish a violation of the ADA.").  The Court is reluctant to hold that, as a matter of law, Plaintiff cannot state a claim for disability discrimination based on the single incident alleged in the FAC.  Evidence may support Defendants' contention that this single incident is insufficient to show a violation of the anti-discrimination statutes Plaintiff alleges were violated, or it may reveal circumstances establishing the single incident is sufficient.

Plaintiff does not allege facts sufficient to show Defendants either had discriminatory animus towards her or were deliberately indifferent to her needs.  Plaintiff appears to concede she has not alleged facts sufficient to show that Defendants had discriminatory animus towards her, as she focuses exclusively on the sufficiency of deliberate indifference to state a claim.  *See* Opp'n at 8-13.  To show that Defendants were deliberately indifferent, Plaintiff must allege plausible facts that Defendants had knowledge that a harm to Plaintiff's right to safe and equal access was substantially likely, and that they failed to act upon that likelihood.  *See Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001) ("Deliberate indifference standard" in ADA Title II context "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon the likelihood"); *Patel v. Kent Sch. Dist*., 648 F.3d 965, 974 (9th Cir. 2011) ("[D]eliberate indifference requires a culpable mental state.  The state actor must recognize [an] unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff.  In other words, the defendant knows that something is going to happen but ignores the risk and exposes the plaintiff to it.") (citations and internal quotation marks omitted)).   For the most part, Plaintiff has included in the FAC the same allegations this Court found conclusory in the original pleading.

In the FAC, Plaintiff for the first time asserts that Amtrak, "[i]n failing to provide staff proficiently trained in operating the securement technology on the vehicle in question, [denied Plaintiff] . . . equal and safe access to Defendant's services, by reason of her disability."  FAC ¶ 32.  (Plaintiff does not allege in her ADA claim against SCMTD that SCMTD failed to train its

personal.  *See* FAC ¶¶ 35-42.[2])  Plaintiff correctly points out that ADA regulations mandate that bus personnel be "trained to proficiency, . . . so that they operate vehicles and equipment safely and properly assist and treat individuals with disabilities who use the service in a respectful and courteous way . . ." 49 C.F.R. § 37.173; *see also id.*, App. D, Section 37 ("[T]raining must be to proficiency . . . However every employee of a transportation provider who is involved with service to persons with disabilities must have been trained so that he or she knows what needs to be done to provide the service in the right way . . .  While there is no specific requirement for recurrent or refresher training, there is an obligation to ensure that, at any given time, employees are trained to proficiency.  An employee who has forgotten what he was told in past training sessions, so that he or she does not know what needs to be done to service individuals with disabilities, does not meet the standard of being trained to proficiency.").  Failure to train personnel to proficiency could constitute deliberate indifference to the rights of disabled passengers who need to be secured to safely use Defendants' services if Defendants were aware that their driver(s) were not trained to proficiency in securing wheeled scooters on the bus, and failed to act upon that knowledge.  *See Duvall*, 260 F.3d at 1139; *see also Garedakis v. Brentwood Union Sch. Dist.*, 2016 WL 1718270, at *8 (N.D. Cal. Apr. 29, 2016) ("deliberate indifference" standard under ADA and Rehabilitation Act "is a stringent standard of fault, 'even higher than gross negligence'" (quoting *Patel*, 648 F.3d at 974)).  Plaintiff has not alleged facts suggesting that Defendants failed to provide training, were aware the training they provided to drivers was insufficient to ensure proficiency, or were aware that the driver was not trained to proficiency.  Plaintiff also has not alleged any facts suggesting Defendants failed to act upon that knowledge.  As it did in its prior order, the Court finds that Plaintiff's allegations regarding wrongdoing by *Defendants* are conclusory and insufficient to state a plausible claim under *Iqbal* and *Twombly*.

///

_____

[2] In the original Complaint, Plaintiff did not include a "failure to train to proficiency" allegation in her ADA claims, but included more generic "failure to train" allegations when pleading her Rehabilitation Act, Unruh Act, and CPAL claims.  *See* Compl. ¶ 41 (Rehabilitation Act), ¶ 49 (Unruh Act); ¶ 58 (Cal. Public Accommodation Law).  She reasserts those allegations here.  *See* FAC ¶¶ 47, 55, 64.

3.    <u>Standing</u>

Finally, Plaintiff has failed to demonstrate she has constitutional standing to obtain prospective relief under the ADA, or any of her other claims.  To demonstrate standing for injunctive relief under Article III of the United States Constitution, Plaintiff "must demonstrate a 'real and immediate threat of repeated injury' in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citations omitted); *see also San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir. 1996) (plaintiff seeking injunctive relief must show significant possibility of future harm).  Plaintiff alleges she is a resident of Chicago, Illinois.  FAC ¶ 1.  In her Opposition, she explains that at the time of the accident, and to this day, she is a PhD student at the University of Chicago.  Opp'n at 4.  She states she "was in California [on the day of the accident] because she was considering transferring to a program there to complete her education." *Id*.  Based on the statements in her Opposition, it appears Plaintiff did not transfer to a program in California to complete her education, but chose to remain in Chicago.  During the December 8, 2016 hearing, however, Plaintiff's counsel represented that Plaintiff had moved to Los Angeles, and that Plaintiff could contemplate coming to Santa Cruz at some point.

Nevertheless, Plaintiff fails to allege in the FAC that she intends to return to Santa Cruz to utilize Defendants' busses.  An "ADA plaintiff can show a likelihood of future injury when he intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier.  Alternatively, a plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Chapman*, 631 F.3d at 949-50; *see also O'Campo v. Ghoman*, 622 Fed. App'x 609 (9th Cir. 2015) (no standing to pursue ADA barrier-to-access claim unless plaintiff can show likelihood of future harm by establishing either (1) intent to return or (2) barriers deter plaintiff from returning, but that plaintiff would return if barriers were removed) (quoting *Chapman*, 631 F.3d at 950)); *cf. Barilleaux*, 61 F. Supp. 3d at 917-918 (denying motion to dismiss ADA and Rehabilitation Act claims where plaintiff established standing to obtain injunctive relief by alleging she had a need to, wished to return to, and was deterred from returning to, non-compliant building).  Plaintiff has neither pleaded an intent to return nor alleged

10

that the barriers deter her from returning. As such, she has not alleged facts sufficient to establish Article III standing to pursue injunctive relief on her ADA claims, or any of her other claims.

### 4. Claim for Negligent Infliction of Emotional Distress[3]

California does not recognize an independent tort for negligent infliction of emotional distress. *See Morello v. AMCO Ins. Co.*, 2014 WL 2215754, at \*10 (N.D. Cal. May 29, 2014) (citing *Potter v. Firestone Tire & Rubber Co.,* 6 Cal. 4th 965, 984 (1993) ("[T]here is no independent tort of negligent infliction of emotional distress")).

## B. Leave to Amend

Because Plaintiff may be able to allege facts sufficient to plausibly state claims against Defendants under the ADA, the Rehabilitation Act, the Unruh Act, and the CDPA, the Court will grant her a final opportunity to amend her complaint as to those claims.

## C. Motion to Strike

In light of the Court's decision to grant the Motion for Judgment on the Pleadings, the Court need not reach the Motion to Strike the FAC. If Plaintiff amends her complaint, the FAC will be superseded. The Motion to Strike is therefore denied as moot.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Second Motion for Judgment on the Pleadings with respect to Plaintiff's disability-discrimination claims (Claims I-V of the Complaint), with leave to amend. The Court **DENIES** Defendants' First Motion to Strike as moot. Defendants' request for reasonable attorneys' fees and costs (Mot. at 18) is **DENIED**. Any amended complaint must be filed no later than July 30, 2018.[4] The Court notifies Plaintiff that should she amend these claims and fail to do so adequately such that the Court grants a future Motion for Judgment on the Pleadings, the Court will consider awarding Defendants their

---

[3] Plaintiff did not respond to Defendants' argument that this claim should be dismissed as redundant of her negligence claim.

[4] Plaintiff's counsel shall review the Civil Local Rules of this Court, including Local Rule 3-4, to ensure future papers presented for filing comply with the Court's requirements.

reasonable attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: July 16, 2018

_____
MARIA-ELENA JAMES
United States Magistrate Judge