UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA JONES,<br><br>   Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, et al.,<br><br>   Defendants. | Case No. 15-cv-02726-TSH<br><br>**ORDER DENYING MOTION TO BIFURCATE**<br><br>Re: Dkt. No. 130 |

## I. INTRODUCTION

Plaintiff Amanda Jones was injured when riding a bus owned by National Railroad Passenger Corporation ("Amtrak") and operated by Santa Cruz Metropolitan Transit District ("SCMTD"; together, "Defendants"). She alleges Defendants violated several federal and state anti-disability discrimination statutes and were negligent. Sec. Am. Compl., ECF No. 102. Defendants now move to bifurcate the issues of liability and damages, with a separate discovery and trial schedule for each. ECF No. 130. Plaintiff filed an Opposition (ECF No. 139) and Defendants filed a Reply (ECF No. 143). The Court finds this matter suitable for disposition without oral argument and **VACATES** the December 20, 2018 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendants' motion for the following reasons.

## II. BACKGROUND

**A. Factual Background**

Plaintiff filed the operative Second Amended Complaint[1] on July 30, 2018, alleging six causes of action: (1) a claim against Amtrak under the Americans with Disabilities Act of 1990

---

[1] As explained below, this case has been pending since June 17, 2015, and Plaintiff is now on the third version of her complaint.

("ADA"), 42 U.S.C. §§ 12131 et seq.; (2) a separate ADA claim against SCMTD; (3) a Rehabilitation Act claim against both Defendants; (4) an Unruh Act claim against both Defendants; (5) a CDPA claim against both Defendants; and (6) negligence against both Defendants. Sec. Am. Compl. ¶¶ 40-90. The facts from this complaint are as follows.

On August 25, 2014, Plaintiff was a passenger on Amtrak's Highway 17 Express bus (#2310) from Santa Cruz to San Jose, California. *Id.* ¶ 14. At the time, Plaintiff was a Ph.D. student at the University of Chicago and had traveled to California for a conference. *Id.* ¶¶ 12-13. Due to her disability, Plaintiff traveled "by a wheeled apparatus (scooter)." *Id.* ¶ 15. She alleges Defendants "knew or should have known that Ms. Jones was a disabled person with a federally protected right of equal access to a public entity's services pursuant to the ADA and Section 504." *Id.* ¶ 16. Plaintiff informed the driver that she needed to be secured to avoid falling; however, "[b]ased upon the occasions in which Plaintiff rode the bus," she alleges "Defendants have failed to properly train their employees on disabled passengers." *Id.* ¶¶ 17-18. She further alleges "Defendants knew of their driver's lack of training due to prior incidents." *Id.* ¶ 22.

The driver attempted to secure Plaintiff's scooter using the belts and hooks on the bus which were ordinarily used to serve disabled clientele, but the driver was confused about how to properly secure her scooter and therefore "unable to properly secure Ms. Jones' scooter due to a lack of training by Defendants." *Id.* ¶¶ 20-21. Plaintiff attempted to inform the driver of how other bus drivers had secured her scooter in the past, but the driver "ignored Ms. Jones' instructions and also failed to figure out how to properly secure Ms. Jones' scooter and proceeded to secure Ms. Jones' scooter in a way that was not secure." *Id.* ¶¶ 23-24. Plaintiff alleges that "[b]y ignoring Ms. Jones' instructions and by failing to figure out how to properly secure Ms. Jones' scooter, Defendant acted with deliberate indifference to the substantial likelihood that Ms. Jones, a qualified individual with a disability, would suffer harm to her federally protected right of safe and equal access to a public entity's services, under the ADA, if he failed to properly secure her scooter." *Id.* ¶ 25. After attempting to secure Plaintiff's scooter, the driver sped around a curve, the scooter tipped over, and Plaintiff was thrown to the floor of the bus. *Id.* ¶ 26.

Plaintiff alleges Defendants caused her injuries "as a direct and proximate result of

Defendants' deliberate indifference to the substantial likelihood of harm to Ms. Jones' federally protected right of equal and safe access to a public entity's services, in the manner as alleged above, causing Ms. Jones to suffer serious injuries including, but not limited to, injuries to her knee and back." *Id.* ¶ 27. Following the fall, the driver and another passenger came to assist Plaintiff, and the passenger assisted the driver in identifying the correct way to secure her scooter. *Id.* ¶ 28. A supervisor was called to the scene of the incident, after which "an argument ensued in Spanish between the driver and the supervisor." *Id.* ¶ 29. Plaintiff reported the incident to both Defendants. *Id.* ¶ 31. Amtrak stated it did not operate the bus in question and referred her to SCMTD. *Id.* ¶ 32. SCMTD denied her claim by letter dated December 16, 2014. *Id.* ¶ 33.

Plaintiff incurred medical expenses for suffered injuries because of the incident. *Id.* ¶ 30. Due to her inability to heal from her injuries, she relocated to California to pursue her Ph.D. remotely "and is likely to use Defendants' bus system in the future." *Id.* ¶ 34. Since the incident, she has traveled on Defendants' transportation system on other occasions. *Id.* ¶ 35. "During one such incident, in attempting to travel to the courthouse for the present litigation, the bus was significantly delayed because the wheelchair lift was not working properly and the driver did not know how to operate it." *Id.* ¶ 36. The driver had to call a supervisor for instructions on how to operate the lift and, after finally being loaded onto the bus, Plaintiff was forced to wedge herself in between regular seats and the bathroom of the bus. *Id.* ¶¶ 37-38. Due to this arrangement, the bathroom door would hit Plaintiff in the legs every time it was opened, which caused her legs to swell significantly and become sore. *Id.* ¶ 39.

**B. Procedural Background**

    **1. Original Complaint**

Plaintiff filed her original complaint on June 17, 2015. ECF No. 1. Because it included claims under the ADA, the action proceeded under the initial Scheduling Order for Cases Asserting Denial of Right of Access Under Americans with Disabilities Act. ECF No. 7. On February 9, 2016, Defendants requested relief from the General Order 56 requirements, arguing "this action is not an ADA access case but, rather, a simple personal injury/negligence matter with conclusory and contradictory allegations asserting violation of the ADA." ECF No. 26-1. On

3

February 17, 2016, Magistrate Judge Paul Grewal[2] denied Defendants' motion, finding that "Defendants offer no other reason why General Order 56 should not apply." ECF No. 29. Defendants also filed a Motion for Judgment on the Pleadings, ECF No. 28, but Magistrate Judge Grewal denied the motion "[b]ecause the case remains stayed under General Order 56." ECF No. 30.

The parties subsequently participated in court-sponsored mediation on June 17, 2016, but were unable to settle. ECF No. 38. Magistrate Judge James subsequently lifted the General Order 56 stay. ECF No. 44.

On July 20, 2016, Defendants filed a second Motion for Judgment on the Pleadings, arguing Plaintiff had insufficiently pleaded her disability discrimination claims. ECF No. 41. Magistrate Judge James granted Defendants' motion with leave to amend. ECF No. 45.

**2.     First Amended Complaint**

Plaintiff filed a First Amended Complaint on September 28, 2016, with additional factual allegations. ECF No. 49. Defendants responded with a third Motion for Judgment on the Pleadings. ECF No. 51. Magistrate Judge James heard oral argument on December 8, 2016. ECF No. 59. Based on discussions at the hearing, she referred the parties to Magistrate Judge Laurel Beeler for a settlement conference and continued resolution of Defendants' motion until after the conference. ECF No. 58. Magistrate Judge James permitted the parties to conduct discovery if they felt was necessary before the settlement conference. *Id.* She also set a status conference on April 13, 2017. *Id.*

The parties participated in a settlement conference with Magistrate Judge Beeler on April 4, 2017, after which she directed Plaintiff to "provide her medical records, provide updated treatment records after her next appointment (probably within a month), and then participate in an [Independent Medical Examination] ("IME")] near where she lives." ECF No. 67. Magistrate Judge Beeler also noted "[t]he parties agree that the litigation should essentially be stayed pending

---

[2] This case was originally assigned to Magistrate Judge Grewal but was reassigned to Magistrate Judge Maria-Elena James after he resigned from the court on June 3, 2016. ECF No. 35. The case was then reassigned to the undersigned after Magistrate Judge James retired on August 31, 2018. ECF No. 108.

4

this process." *Id.* On April 5, 2017, Magistrate Judge James stayed "all litigation in this case, including any pending motions and deadlines," while the parties continued settlement negotiations with Magistrate Judge Beeler. ECF No. 68. The parties participated in a further settlement conference with Magistrate Judge Beeler on December 21, 2017, after which she directed the parties to confer on a limited discovery plan and provide an update to her by January 16, 2018, with their proposal for any next steps in the settlement process. ECF No. 88. No further settlement proceedings have taken place.

On January 25, 2018, Magistrate Judge James held a status conference, during which the parties indicated they would be submitting a joint discovery plan but had yet to work out specific details. ECF No. 89. Magistrate Judge James ordered the parties to meet and confer and file a joint status report about their progress no later than January 31, 2018. *Id.* She also set a further status conference on June 28, 2018. *Id.*

On January 31, 2018, the parties filed a Joint Discovery Plan, indicating they "have agreed to open discovery." ECF No. 90. The parties subsequently filed several discovery dispute letters. ECF Nos. 91-92, 94-96. Magistrate Judge James struck the parties' letter briefs for failure to comply with her Discovery Standing Order and ordered the parties to appear for a meet and confer session and status conference on July 12, 2018. ECF Nos. 97, 98. After the July 12 meet and confer, Magistrate Judge James issued an order memorializing the parties' agreement for Defendants to take Plaintiff's deposition on August 15, 2018, and her IME by September 15, 2018. ECF No. 100. Magistrate Judge James also ordered Plaintiff to serve supplemental interrogatories by August 2, 2018, and for Defendants to update their interrogatory and request for production responses on a continuous basis, to review and update their privilege log. *Id.* Magistrate Judge James set a December 31, 2018 discovery cut-off date. *Id.*

On July 16, 2018, Magistrate Judge James granted Defendants' second motion for judgment on the pleadings with leave to amend. ECF No. 101.

**3. Second Amended Complaint**

Plaintiff filed her Second Amended Complaint on July 30, 2018. The parties filed a Joint Case Management Conference Statement on August 9, 2018, indicating they agreed to extend the

deadline for Plaintiff's deposition to September 17, 2018, and to conduct the IME after that. ECF No. 104. The parties also indicated they were "following up on discovery assignments as ordered by this Court on July 12, 2018. Plaintiff will provide discovery requests to Defendants and also seek to depose individuals with one or both Defendants." *Id.*

On August 20, 2018, Defendants filed a Motion to Dismiss seeking dismissal of Counts One through Five of Plaintiff's Second Amended Complaint. ECF No. 106. The Court denied Defendants' motion and scheduled a Case Management Conference on October 25, 2018. ECF Nos. 114, 115.

In their updated Joint Case Management Statement, filed October 18, 2018, the parties indicated Plaintiff's deposition had been completed and that "Plaintiff's full deposition transcript will be necessary in advance of the planned and agreed IME to be conducted in Los Angeles." ECF No. 124. The parties also indicated they continued "following up on discovery assignments as ordered by this Court on July 12, 2018," and that "Defendants have agreed to provide names of employees having knowledge of the certain areas requested by Plaintiff despite no discreet PMK areas being identified in an effort to move discovery forward." *Id.* The Court issued a Case Management Order on October 25, 2018, keeping the December 31, 2018 discovery cut-off in place and scheduling a jury trial for October 7, 2019. ECF No. 125. On November 15, 2018, the Court extended the deadline for Defendants to conduct Plaintiff's IME to January 31, 2019. ECF. No. 129.

### 4. Motion to Bifurcate

Defendants filed the present motion on November 15, 2018. They argue Plaintiff's damage claims "involve extensive medical evidence and geographically distant witnesses from Chicago and the Los Angeles areas at a minimum, and also involve the challenge of proving a negative as to speculative, but massive, damage claims against a public entity which has a duty to properly defend those claims." Mot. at 2.[3] Defendants further argue Plaintiff's "disability claims were in abeyance for practical purposes until the court recently reinstated those claims . . . which

---
[3] This and subsequent citations to Defendants' motion refer to their Memorandum of Points and Authorities, ECF No. 130-1.

6

greatly expands the issues confronting the defendants." *Id.* They maintain "[t]he manifest burdens on the parties in litigating these issues overwhelmingly suggests bifurcation of both trial and discovery." *Id.*

In response, Plaintiff argues bifurcating the liability and damages issues to separate trials "would not avoid any prejudice because there is no prejudice to avoid." Opp'n at 3. Specifically, she argues that to establish liability for negligence, she must show damages, and the issues of liability and damages are inextricably intertwined. *Id.* at 4. She further argues that staying discovery until after the conclusion of the trial on liability could cause prejudice if key witnesses are no longer available or their memories fade. *Id.* Plaintiff also contends bifurcation would not promote judicial economy because it would unduly delay proceedings and require two distinct trials. *Id.* Finally, Plaintiff argues bifurcation would not promote convenience because she has been litigating this case for over three years and could now be forced to participate in two trials instead of one. *Id.* at 5.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 42(b) permits a court to order a separate trial of separate claims or issues "[f]or convenience, to avoid prejudice, or to expedite and economize." "[I]t is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016) (citations and quotations omitted). However, whether to grant bifurcation is left to the sound discretion of the district court. *Id.* "In the Ninth Circuit, '[b]ifurcation . . . is the exception rather than the rule of normal trial procedure.'" *GEM Acquisitionco, LLC v. Sorenson Grp. Holdings, LLC*, 2010 WL 1729400, at \*3 (N.D. Cal. Apr.27, 2010) (citation omitted); *In re Sortwell, Inc.*, 2011 WL 4896475, at \*2 (N.D. Cal. Oct. 12, 2011). Courts "consider several factors in determining whether bifurcation is appropriate, including separability of the issues, simplification of discovery and conservation of resources, and prejudice to the parties." *McDermott v. Potter*, 2010 WL 956808, at \*1 (N.D. Cal. Mar. 12, 2010) (citations omitted). "The party requesting bifurcation has the burden to prove that it is warranted in that particular case." *GEM Acquisitionco*, 2010 WL 1729400, at \*2 (citing *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 102 (N.D. Cal. 1992)).

7

## IV. DISCUSSION

As a preliminary matter, Plaintiff objects to Defendants' motion as it fails to comply with Federal Rule of Civil Procedure 7(b)(1)(B), which requires a moving party to "state with particularity the grounds for seeking the order[.]" Opp'n at 1-2. However, in the title of their Memorandum of Points and Authorities, Defendants state it is brought under "FRCP 42(b)," and they state in the first paragraph that they "move the court to bifurcate trial and discovery so as to separate the issue of liability and damages in this action." Mot. at 1. As such, the Court finds Plaintiff was on notice as to the type of relief Defendants seek and the grounds for such relief.

Plaintiff also objects to Defendants' motion because they "fail to cite *any* legal authority that has precedential value in this jurisdiction." Opp'n at 2 (emphasis in original). Defendants respond that "[t]he cases are not cited as mandating law in this court, but rather as persuasive authority," and "[t]his court may rely on the value of precedent from any court from which wise example emanates so long as it pertains." Reply at 2. Although it is unclear why Defendants chose to cite no authority from within the Ninth Circuit, whether binding or persuasive, and why they cite cases from district courts outside the Ninth Circuit without any attempt to explain how the factual situations in those cases are similar or different to the case at hand, it is not the Court's place to dictate Defendants' legal strategy.

Turning to the merits of Defendants' motion, the Court declines to exercise its discretion under Rule 42(b). Importantly, bifurcation would not aid judicial economy or convenience of the parties; on the contrary, bifurcation may well lead to significant additional costs, with the potential for two trials leading to an inefficient use of party, jury, and court resources. This case has been pending for over three years, with discovery set to close this month and a trial scheduled for next year. Bifurcation would set this schedule back even further. *See Lam Research Corp. v. Schunk Semiconductor*, 65 F. Supp. 3d 863, 867 (N.D. Cal. 2014) ("Granting bifurcation at this late date would require this court to calendar a second jury trial in what is already an impacted trial schedule—thus guaranteeing yet more delay.") (citing *Brown v. Toscano*, 630 F. Supp. 2d 1342, 1347 (S.D. Fla. 2008) ("The Court finds that bifurcation of the infringement issue and the proposed stay of all other discovery would only add unnecessary delay to a case that has already

been pending for more than two years.")).

Defendants admit "[b]ifurcation might result in delay of resolution," but argue "a more rapid resolution on liability redounds to the benefit of both parties if unnecessary discovery is avoided by a potential 'no liability' finding." Mot. at 5 (emphasis omitted). "However, a moving party's mere contention that judicial economy would be promoted by bifurcation, insofar as a second phase of a bifurcated trial would be rendered unnecessary if the moving party prevails at the first phase, is not sufficient to meet that party's burden of showing that bifurcation is appropriate." *Mformation Techs., Inc. v. Research in Motion Ltd.*, 2012 WL 1142537, at n.32 (N.D. Cal. Mar. 29, 2012) (citation omitted). The Court notes bifurcation is appropriate where evidence of liability does not "overlap in any meaningful way" with evidence of damages. *See Aguirre v. California*, 2018 WL 1948702, at *5 (N.D. Cal. Apr. 25, 2018) (citing *Boyd v. City & Cty. of San Francisco*, 2006 WL 680556, at *2 (N.D. Cal. Mar. 14, 2006)). But where liability and damages evidence may overlap, the proper course is to deny bifurcation. *Id.* at *5 (denying bifurcation where evidence of emotional distress may be relevant to both damages and liability if alleged wrongful conduct caused the distress); *Farrell v. Tri-Cty. Metro. Transp. Dist. of Or.*, 530 F.3d 1023, 1025 (9th Cir. 2008) (upholding jury verdict "reflect[ing] that [the plaintiff] was not awarded FMLA damages for emotional distress, but rather '*for days of work that he missed because of stress or other mental problems resulting from the wrongful denial of FMLA leave*'") (emphasis in original); *Rivera v. Nibco, Inc.*, 2003 WL 27382206, at *2 (E.D. Cal. Mar. 7, 2003) (noting the Advisory Committee Note to the 1966 amendment of Rule 42(b) "warn[ ] against routine bifurcation of the ordinary negligence case.") (citing 9 C. Wright, A. Miller & F. Elliott, Federal Practice & Procedure, § 2388 at 280 (1971 & Supp.1987)). Here, Defendants have failed to establish that evidence of liability and damages will not overlap in any meaningful way.[4]

---

[4] Plaintiff argues bifurcation is appropriate because "the amount of damages and actual liability are naturally, inextricably intertwined," and thus "the issues of damages and liability are not independent." Opp'n at 4. It is true that "[t]o establish liability under a negligence cause of action, a plaintiff must show damages." *Dent v. Nat'l Football League*, 902 F.3d 1109, 1117 (9th Cir. 2018). However, the Court is aware of no authority that prohibits bifurcation when a plaintiff's claim is based on negligence. Plaintiff cites only one in support of her argument, *Easton v. City of Boulder, Colo.*, 776 F.2d 1441 (10th Cir. 1985). However, in *Easton*, the court left in place the lower court's decision to bifurcate the trial as to liability and damages in a negligence cause of

9

Further, two separate pretrial periods will likely lead to added costs. "[T]he longer a matter is pending, the more disputes are likely to arise and the more motions are likely to be brought, with higher costs the result." *Gravity Defyer Corp. v. Under Armour, Inc.*, 2013 WL 12138987, at *3 (C.D. Cal. July 23, 2013). At a minimum, bifurcation would require the Court to reopen discovery. Defendants argue discovery "has been delayed by a lengthy settlement and mediation process." Mot. at 6. However, as discussed above, the Court permitted discovery throughout that process. Specifically, although the initial scheduling order limited the type of discovery the parties could propound, Magistrate Judge James opened discovery more than two years ago, permitting the parties to take discovery if they felt it would benefit their settlement negotiations. ECF No. 58. After the parties participated in a settlement conference with Magistrate Judge Beeler on April 4, 2017, she directed Plaintiff to provide her medical records and participate in an IME. ECF No. 67. The parties participated in a further settlement conference with Magistrate Judge Beeler on December 21, 2017, after which she directed them to confer on a discovery plan. ECF No. 88. On January 31, 2018, the parties filed a Joint Discovery Plan, indicating they "have agreed to open discovery." ECF No. 90. The parties subsequently filed several letters regarding their discovery disputes. ECF Nos. 91-92, 94-96. They also met and conferred in Magistrate Judge James's courtroom on July 12, 2018, during which the parties agreed Defendants would take Plaintiff's deposition on August 15, 2018, and her IME by September 15, 2018. ECF Nos. 97-98, 100. Magistrate Judge James also ordered Plaintiff to serve supplemental interrogatories by August 2, 2018, and for Defendants to update their interrogatory and request for production responses on a continuing basis, and to review and update their privilege log. ECF No. 100. On both August 9 and October 18, 2018, the parties indicated they continued "following up on discovery assignments as ordered by this Court on July 12, 2018.

---

action. *Id.* at 1447. Although the plaintiff asserted he was prejudiced by the decision to bifurcate "because damages are an essential element of the torts of negligence and culpable recklessness (gross negligence) and must be considered in determining whether a particular risk was unreasonable," the court noted "[t]he theory advanced by Easton, if accepted, would have the result of forbidding bifurcation whenever the plaintiff's claim is based on negligence—a consequence certainly at odds with common practice." *Id.* (citing *Idzojtic v. Pennsylvania Railroad Co.*, 456 F.2d 1228, 1230 (3rd Cir.1972)).

Plaintiff will provide discovery requests to Defendants and also seek to depose individuals with one or both Defendants." ECF Nos. 104, 124. Thus, the procedural background of this case belies Defendants' position that they have been unable to take discovery. Regardless, bifurcation "invites two rounds of discovery, with depositions of some the same persons taken more than once, and additional potential for disputes." *Gravity Defyer Corp*, 2013 WL 12138987, at *3. Defendants have not carried their burden to establish that such potential duplication is appropriate here.

Finally, the Court finds bifurcation would not promote convenience for the parties. Defendants argue bifurcation could lead to savings for them by potentially not having to perform discovery as to damages if they were to be found not liable. Mot. at 5. However, "this argument could be made in almost any case, and does not present a strong basis for bifurcation." *GEM Acquisitionco, LLC*, 2010 WL 1729400, at *3. On the other hand, Plaintiff is in Los Angeles and her counsel is located in Michigan; requiring them to travel to San Francisco for two separate trials is less convenient for them. And, as discussed above, this case has been pending for over three years and bifurcation would lead to additional delay.

In summary, this is a factually straightforward case that does not warrant bifurcation for purposes of convenience or judicial economy, and it is not in the interests of the Court or the parties for the final resolution of this matter to be delayed any further.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' motion.

**IT IS SO ORDERED.**

Dated: December 17, 2018

THOMAS S. HIXSON
United States Magistrate Judge