UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA JONES,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION, et al.,<br><br>    Defendants. | Case No. 15-cv-02726-TSH<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 203 |

## I. INTRODUCTION

Pending before the Court is Plaintiff Amanda Jones's Motion for Reconsideration of the Court's October 10, 2019 Order granting summary judgment in favor of Defendants. ECF No. 203. Defendants filed an Opposition (ECF No. 207) and Jones filed a Reply (ECF No. 211). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Jones's motion for the following reasons.

## II. BACKGROUND

The Court summarized the facts in its October 10, 2019 order granting Defendants' motion for summary judgment (the "Order"):

> On August 25, 2014, Plaintiff Amanda Jones, then a resident of Chicago, was in Santa Cruz to attend a three- to four-day research conference for her PhD program. At some point during the day, Jones took the AMTRAK Highway 17 Express Bus #2310 (the "Hwy 17 Bus" or "Bus #2310"), from Santa Cruz to San Jose. The bus was operated by Santa Cruz Metropolitan Transit District ("SCMTD") in contract with the National Railroad Passenger Corporation ("AMTRAK"). At that time, Jones was traveling with a motorized scooter because she was recovering from knee surgery and wanted to avoid walking long distances and on hills. Jones boarded the bus with her scooter. Once onboard, the coach operator, Sergio Gonzalez, tried to help Jones secure her scooter in place using securement equipment on the bus. Jones attempted to suggest a method of securing the

> device that was different from the method Gonzalez was using. Gonzalez insisted that he knew how to secure the device and used his own method. After attempting to secure Jones's scooter, Gonzalez proceeded to start the drive from Santa Cruz to San Jose. Jones remained seated on her scooter while on the bus.
>
> At some point during the journey to San Jose, the scooter (with Jones on it) fell over, and Jones fell to the floor. Gonzalez stopped the bus, and with the help of another passenger, helped Jones and her scooter off the floor. Gonzalez called his road supervisor and dispatch to report the accident. Dispatch contacted emergency services, which arrived on the scene. Jones declined assistance from emergency services, and the bus continued to San Jose.

2019 WL 5087594, at *1 (N.D. Cal. Oct. 10, 2019) (citations to the record omitted).

In her Third Amended Complaint ("TAC") Jones asserted five claims against Defendants: a violation of the Americans with Disabilities Act ("ADA") by AMTRAK; a violation of the ADA by SCMTD; a violation of section 504 of the Rehabilitation Act of 1973 by both Defendants; a violation of the California Unruh Civil Rights Act by both Defendants; and a negligence claim against both Defendants. Jones sought declaratory judgment stating that Defendants had violated her rights under the ADA and under the Unruh Act; injunctive relief; damages under the two civil rights statutes, and a trebling of those damages pursuant to California Civil Code § 3345; damages for negligence; and fees and costs.

The parties filed cross motions for summary judgment, and the Court granted summary judgment in favor of Defendants. The Court found that Jones had shown only a hypothetical—not a realistic—possibility that she would use the same bus system she was using during the underlying incident. It found that Jones had also failed to show that, even if she used the same system, she would encounter the same type of incident she did before. Thus, the Court determined Jones had no standing to pursue, and was not entitled to, injunctive relief. The Court found declaratory relief was inappropriate because there was no ongoing relationship between Jones and Defendants warranting that type of relief. Because Jones was not entitled to injunctive or declaratory relief, the only remaining relief Jones sought was for damages under the civil rights statutes. The Court found that to obtain compensatory damages under the ADA or Rehabilitation Act, Jones had to show intentional discrimination, and that under the Unruh Act she had to prove either a violation of the ADA or intentional discrimination. The Court found Jones had not put

forward evidence showing Defendants failed to provide reasonable accommodation (a violation of the ADA) let alone intentional discrimination. The Court found that without a showing of intentional discrimination, Jones would not be entitled to compensatory damages even if she had shown a violation of the ADA or Rehabilitation Act. The Court also found that since Jones had not shown a violation of the ADA, nor any evidence of intentional discrimination, she could not show a violation of the Unruh Act. Summary judgment was appropriate on the statutory counts.

Regarding Jones' negligence claim, the Court found it failed to the extent it relied on breaches of the ADA, the Rehabilitation Act, or the Unruh Act. The Court found the claim also failed to the extent it was premised on an allegation that Gonzalez was speeding, as Jones raised no genuine issue as to whether Gonzalez was speeding.

### III.  LEGAL STANDARD

Trial courts have inherent power to reconsider, set aside, or amend interlocutory orders at any time prior to entry of a final judgment. Fed. R. Civ. P. 54(b). Motions for reconsideration are disfavored and "should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1254 (9th Cir. 1999) (per curiam) (internal quotation and citation omitted). Furthermore, "[a] motion for reconsideration 'may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.'" *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (quoting *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

The Northern District of California also has local rules governing motions for reconsideration. Under Civil Local Rule 7-9, a party must seek leave to file a motion for reconsideration before judgment has been entered. Civ. L.R. 7-9(a). Moreover, a motion for reconsideration may be made on three grounds: (1) a material difference in fact or law exists from that which was presented to the court, which, in the exercise of reasonable diligence, the moving party did not know at the time of the order for which reconsideration is sought; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the court to consider material

facts or dispositive legal arguments. Civ. L.R. 7-9(b). The moving party may not reargue any written or oral argument previously asserted to the court. Civ. L.R. 7-9(c).

## IV. DISCUSSION

### A. Jones' Compliance with Rule 7-9(a)

Defendants' object that Jones did not request leave from the Court pursuant to Local Rule 7-9(a) before filing her Motion for Reconsideration. In this case, judgment has been entered and was entered concurrently with the Court's Order granting summary judgment. Accordingly, to the extent Rule 7-9(a) applies in these circumstances, the Court will excuse any non-compliance with it.

### B. Jones' Statutory Claims

#### 1. Injunctive Relief

As a preliminary point, Jones takes issue with the Court's finding that there wasn't a realistic likelihood of her again using SCTMD's bus system. She contends that Defendants did not argue whether she had shown a likelihood of using the same system again, that they only argued she did not have standing because she only complained of one incident. She asserts that she therefore did not have occasion to brief the issue or provide a declaration regarding that issue. Jones assertion is implausible.

In their Motion for Summary Judgment, it is true that Defendants argued that "the facts as they existed when the plaintiff filed the complaint involved a single incident. A single incident does not rise to the level of a real and immediate threat of repeated injury in the future." ECF No. 175, at 9. That is an accurate recitation of the law. But then immediately after, Defendants asserted that Jones "is now a resident of Los Angeles . . . . She traveled to Santa Cruz on this one occasion when her incident occurred," and that "[t]he only other bus-related incident she has referenced occurred *after* her complaint was filed and involved a different bus company and a different location." *Id.* Defendants continued—quoting *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850 (9th Cir. 2001)—"plaintiff's evidence establishes, at most, 'several frustrating, but isolated,' incidents. 'It does not, however, support an inference that Plaintiff faces a real and immediate threat of continued, *future* violations of the ADA in the absence of injunctive

4

relief' . . . ." *Id.* (emphasis in original). The obvious logic of Defendants' argument was that Jones could not show an immediate threat of "future violations" in part because she would not be using the same bus system, and thus exposing herself to the same "threat of continued, *future* violations."

Jones also argues that she testified at her deposition that she would travel on AMTRAK again in the future. She cites to a portion of her transcript wherein she testified, in part, that she would "travel on Amtrak again" "[a]s an absolute last resort for something that I have to absolutely be at. I'd rather drive." Decl. of Carla D. Aikens in Supp. of Pl.'s Mot. for Reconsideration ("Aikens Decl.") ¶ 3, Ex. B ("Jones Dep.") 276:25-277:13, ECF No. 204. However, that argument fails for three reasons. First, Jones was testifying about "Amtrak," and her testimony in the pages leading up to this quote makes clear that she understands Amtrak to be an umbrella term that refers to various bus and train systems; this testimony is not specific to SCMTD's bus system. Second, her testimony was that she was *not* likely to take Amtrak again; it was "an absolute last resort." And third, Jones did not present that testimony in her motion for summary judgment or opposition to Defendants' motion, even though it was available to her at the time. Thus, it was not before the Court for consideration and cannot form a ground for reconsideration.

Jones also submits a new declaration in which she references a training program hosted by the Center for Collaborative Research for an Equitable California at the University of California Santa Cruz. She asserts that, "I have plans to go back as often as I can, once I am able to utilize public transport, including the Santa Cruz Metro Transit District bus system." Decl. of Amanda Jones, ECF No. 203-2. This is also evidence presented (indeed, created) for the first time with the Motion for Reconsideration, when it could have been presented earlier in the litigation. It also cannot form the grounds for a motion to reconsider. Even considering it, however, Jones does not assert she *now* participates in *any* opportunities at the Center or in Santa Cruz. Jones asserts only that she has plans to go back as often as she can. This is not a real and immediate threat that Jones' will be injured while on the same transportation system. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("Such 'some day' intentions -- without any description of

5

concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require."); *id.* at 564, n. 2 ("Although 'imminence' [of injury] is concededly a somewhat elastic concept, it . . . has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control.").

Finally, Jones presents testimony from her deposition regarding an alleged incident she had while taking a bus from Los Angeles to Oakland, while in a wheelchair. Jones Dep. 271:9-13. In its Order, the Court found Jones had not presented enough facts (time, location, which bus, what operator, etc.) regarding that incident to make it probative for purposes of standing for injunctive relief. According to the testimony, that alleged incident occurred at least a year before the parties moved for summary judgment, and yet Jones presents that testimony to the Court now for the first time. Thus, again, it cannot form a ground for reconsideration. Additionally, the testimony relates to an alleged incident Jones had on a bus she took from Union Station in Los Angeles to a train or light rail station in Oakland. It does not concern any difficulties Jones had using an SCMTD bus, or any transportation services in or out of Santa Cruz. And while Jones testified that she 'guessed' that the bus was an AMTRAK-licensed bus, Jones Dep. 273:17-20, she did not testify as to any more specific information about which bus, she's introduced no evidence that the bus was licensed by AMTRAK, and she apparently attempted no discovery concerning that alleged incident. That testimony therefore amounts to: Jones took some bus, that may or may not have been connected to AMTRAK, but was not operated by SCMTD (SCMTD doesn't operate buses out of Los Angeles, *see* https://www.scmtd.com/en/routes/schedule/map, last visited on January 9, 2020), on some date from Los Angeles to Oakland. It does nothing to show failures by Defendants to operate their transportation services in compliance with the ADA.

In sum, even the newly presented evidence taken together with the old still shows a single incident Jones had on a bus operated by SCMTD. With these facts, the Court refers again to *Midgett*, 254 F.3d at 850, where the Ninth Circuit wrote:

> Plaintiff's evidence establishes several frustrating, but isolated,

> instances of malfunctioning lift service on Tri-Met. The evidence also shows that, unfortunately, a few individual Tri-Met operators have not treated passengers as they are required and are trained to do. Under the regulations, these occasional problems do not, without more, establish a violation of the ADA. At most, the evidence shows past violations of the ADA. It does not, however, support an inference that Plaintiff faces a real and immediate threat of continued, future violations of the ADA in the absence of injunctive relief.

Even with Jones' newly presented evidence, which cannot in any event form a ground for reconsideration because she had it at her disposal before, she still fails to show a likelihood that she will use the same services of Defendants, or—importantly—a realistic threat of future harm even if she did. Jones is not entitled to injunctive relief.

### 2. Potential Violations of the ADA

Regarding the issue of training, Jones continues to cherry pick the same passages from witnesses' testimony. She sets forth no new legal argument. For example, she continues to rely on a portion of Gonzalez's testimony where he replied "No" when asked if he had had training "on scooters specifically." Mot. 8 (quoting Aikens Decl. ¶ 3, Ex. C ("Gonzalez Dep.") 28:6-8, ECF No. 204-3). However, as the Court noted in its Order, Gonzalez later clarified that he had been trained on "regular scooters," just "not really on this – on this particular scooter with the real small tires --":

> Q: You said you've never been trained on how to secure scooters on the bus?
> A: No. Secure, but not that kind -- not that kind of small -- small scooter.
> Q: So this particular scooter you haven't had training on?
> A: On that particular scooter, no. We do on those regular scooters.
> Q: Uh-huh.
> A: But not really on this -- on this particular scooter with the real small tires and --
> Q: Okay.

*See* 2019 WL 5087594, at \*6 (N.D. Cal. Oct. 10, 2019) (quoting Decl. of Carla D. Aikens in Supp. of Pl.'s Mot. for Partial Summ. J. ¶ 4, Ex. D at 30:21-31:6, ECF No. 176-3). Jones herself also cites word-for-word (but then ignores) additional portions of Gonzalez's deposition where he testified that he had been taught on "regular scooters," but "not that type with the small tires, like I said." Aikens Decl. ¶ 4, Ex. C, Gonalez Decl. 33:2-11. The fact remains that Jones has not produced evidence that Gonzalez was not trained on scooters, but only that he was not trained on

her particular scooter, which scooter was not intended to be ridden on a bus. The Court found—and Jones has provided no contrary legal authority on this point—that the relevant regulations did not require training drivers on securing every single mobility device available. It thus found, and still finds, that Jones has submitted no evidence showing that Defendants' failed to train its drivers in compliance with the relevant regulations.

Jones asserts that, "five years after Plaintiff's incident, Defendants' buses are still not properly equipped to safely transport three-wheeled devices such as hers." Mot. 7. She cites no foundation for this proposition, and so it does not warrant discussion. She also asserts that the Court "made clear" it did not believe it was necessary for Defendants to provide mechanisms to safely secure mobility devices. But that is not an accurate reading of the Court's Order. Nowhere did the Court imply that it was unnecessary for Defendants to provide proper securement equipment for securing mobility devices; rather, Jones provided no credible evidence that Defendants had not. The Court also noted that the regulation Jones relied on prohibits movement of a mobility aid to two inches when the mobility aid is secured "in accordance with manufacturer's instructions," 49 C.F.R. 38.23(d)(5), but that owner's manual for Jones' scooter clearly stated, "WARNING – Do not sit in your scooter while in a moving vehicle." Thus, the tipping of Jones' scooter was not evidence that Defendants had failed to comply with securement standards. Jones takes issue with the Court's analysis on this point and argues "it is not clear what the legal basis is for utilizing the owner's manual as a basis to defeat liability." The legal basis is the text of the regulation, which the Court discussed in its Order. To read it as Jones would have it would mean striking from it: "When the wheelchair or mobility aid is secured in accordance with manufacturer's instructions . . . ." The fact remains that, according to the manufacturer's instructions for Jones' scooter, the scooter should not have been used in a moving vehicle.[1] Jones provided no other evidence that Defendants failed to provide adequate securement equipment at the time of her incident, or any other.

---

[1] Jones asserts that "there is evidence that all mobility assistive devices . . . have the same garden-variety manufacturer disclaimers." Mot. 10. Yet she has never introduced such evidence and there is none in the record.

8

1   Finally, Jones writes that, "while the Magistrate Judge suggested merely that [Gonzalez] did not have [an operator's] handbook, [Gonzalez] made clear that *no one* had a handbook because they had not been written." Mot. 9. She cites to Gonzalez's testimony that "they starting to write on" an operator's handbook. Gonzalez Dep. 28:9-15. The difference Jones articulates is immaterial: Jones still fails to explain how drivers not receiving an operator's handbook would automatically translate into a failure to train under the relevant regulations—she points to no rule or regulation which states: "Adequate training must include an operator's manual." At the same time, Jones has not challenged the accuracy of Gonzalez's training records, which show mobility device training, or his assertions in his declaration regarding his annual training.[2]

### C.   Jones' Negligence Claim

Jones begins by asserting that the Court held that her negligence claim failed because her complaint discussed a train, train tracks, and a train signal system at certain portions. She points out that Defendants "are clearly aware that the negligence claim involves a bus" and "should not be permitted to avoid liability if a simple edit would make her complaint comport with all other pleadings and evidence in this case." Mot. 5. Jones reads too much into that portion of the Court's Order, which plainly states that the negligence claim "fails *to the extent* it references trains, train tracks, or train systems." (emphasis added). The Court included that language in its order because of the numerous references to trains and train tracks in the Third Amended Complaint and because all of the evidence on summary judgment concerned an incident that occurred on a bus, not a train. It is indeed clear that Jones believes Defendants are liable because of Gonzalez's negligent conduct on a bus, which is why the Court found her negligence claim failed to the extent Jones repeatedly asserted liability connected with a train or train travel.[3]

Jones also misreads the Court's findings vis-à-vis whether the bus was speeding. The Court did not disregard Jones' testimony and accept as fact Gonzalez and another passenger's

---

[2] Jones challenges those assertions, but does so by selectively quoting his testimony, as discussed above. Thus, she doesn't genuinely dispute them.

[3] *E.g.*: "Failing to provide adequate equipment to safely transport [sic] Failing to properly maintain and/or repair the railroad tracks/track system in question;" "Failing to properly inspect, maintain, and repair the signal system associated with the train and train tracks in question." TAC ¶ 78.

9

testimony that the bus was not speeding. The Court quoted Jones' deposition wherein she testified: "I can't – you know, I couldn't see the speedometer, but I did feel like we were moving at a rather rapid pace, especially when we hit the curve, and everybody got jostled around." 2019 WL 5087594, at *10. And Jones also testified that she was reading right before the accident, Decl. of Robert G. Howie in Supp. of Defs.' Mot. for Summ. J. ("Howie Decl.") ¶ 5, Ex. C at 44:14-45:11, ECF No. 175-3, and that she "had the impression that the bus was going fast," *id.* at 37:8-13, but that "*I couldn't tell you how fast it was going. I just know it felt like we maybe shouldn't be going so fast*," Howie Decl. ¶ 6, Ex. D at 277:18-22, ECF No. 175-3 (emphasis added). The Court found that Jones' testimony alone, without any (other) evidence that the bus was speeding, did not raise a genuine question as to whether it was.[4] *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("A fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, this court has refused to find a genuine issue where the only evidence presented is uncorroborated and self-serving testimony.") (citations and internal quotations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. . . . [S]ummary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party.") (citations and internal quotations omitted).

In her Motion for Reconsideration, Jones presses the argument that Defendants should not have transported her at all unless she was appropriately secured in her scooter, and that by transporting her unsecured they were negligent. Mot. 6. In her motion for summary judgment, Jones made clear that her negligence claim was based on "duties defined by" the statutes and regulations:

> Plaintiff's argument for partial summary judgment against SCMTD
> on the [statutory claims] apply equally to her negligence claim against

---

[4] The Court did mention the testimony of Christian Nieto and the declaration of Gonzalez. However, it did not accept as fact those opinions, and even without them Jones failed to raise a genuine question as to whether the bus was going the appropriate speed.

10

> SCMTD. . . . As discussed above, SCMTD had *several duties defined by Title II of the ADA, the Rehabilitation Act, and applicable regulations (e.g. 49 C.F.R. §§ 37.123, 38.23)*, and it breached its duties through the acts and omissions described above. *These breaches are of course the proximate causes of Plaintiff's injuries*, and thus, Plaintiff requests partial summary judgment on her negligence claims against SCMTD.

Mot. for Partial Summ. J. 23-24, ECF No. 176 (emphasis added); *see also* Pl.'s Opp'n to Def.'s Mot. for Summ. J. 15-16, ECF No. 188 ("Plaintiff has provided ample evidence of Defendants' negligence by the many violations of federal access regulations in transporting Plaintiff . . . ."); Pl.'s Reply to Mot. for Reconsideration 4, ECF No. 211 ("The driver did not follow this basic training in this instance, establishing a violation of the ADA, Rehab Act, Unruh (per Cal. Civ. Code 51(f)), and also *establishing SCMTD's duty* that was breached under a negligence theory.") (emphasis added). Contrary to Jones' arguments, however, the Court found that "[t]here is no evidence that Defendants failed to train Gonzalez . . . in compliance with those acts, or any evidence that Defendants failed to provide adequate equipment to offer safe transport to Jones."[5] In other words, it found no evidence of a breach by Defendants of any duties defined by the ADA or other statutes.[6] To the extent Jones argues that a 'duty not to transport' arises from the ADA

---

[5] Jones cites the testimony of another passenger, Nieto, who she claims "stated on two occasions during his deposition that the straps were loose and not secured." Aikens Decl. ¶ 2, Ex. A, Nieto Dep. 38:19-24; 56:9-13. However, Jones left out that Nieto also testified that Gonzalez asked Jones to "move to a safer area, as you would call it, on the disabled people chairs that they have next to him, and she denied," saying that "she wanted to be on the scooter," Nieto Dep. 38:25-39:6, and that Gonzalez tightened the straps "as much as he could" and did actually strap the scooter down, initially, before Jones fell, *id.* 56:14-57:6. (Nieto also opined that the straps appeared too loose because the scooter was too small, *id.* at 39:7-16, and that Jones, "was the first time I've seen a scooter person [on a bus]; so that was pretty unusual," *id.* at 56:1-8.)

[6] Additionally, even if Jones had shown a violation of the ADA, multiple courts have held that "a violation of the ADA anti-discrimination provisions cannot" support a claim for negligence. *M.R. v. Tajdar*, 2018 WL 6050888, at *6 (D. Md. Nov. 19, 2018) (citing two cases from the same district); *id.* at 7 ("A claim based on a violation of a statute or regulation designed to protect an individual from physical harm falls squarely within the range of negligence claims. . . . A negligence claim based on a violation of an anti-discrimination statute does not."); *Hunter v. District of Columbia*, 64 F. Supp. 3d 158, 189 (D.D.C. Aug. 14, 2018) ("Multiple courts have found that the ADA is not a public safety statute for purposes of the negligence per se doctrine.") (citing, *inter alia*, *McCree v. Se. Pa. Transp. Auth.*, 2009 WL 166660, at *12 (E.D. Pa. Jan. 22, 2009) ("[A] violation of an ADA regulation may not be used as evidence of negligence per se in a personal injury action like this one."); *White v. NCL Am., Inc.*, 2006 WL 1042548, at *5 (S.D. Fla. Mar. 8, 2006) ("Because the ADA was not designed to protect those with disabilities from personal injuries, Plaintiff is unable to state a claim for per se negligence.")); *Pena v. H.E. Butt Grocery Co.*, 2005 WL 2277500, at *2 (S.D. Tex. Aug. 22, 2005) ("Further, the ADA's private

11

and regulations, the Court notes again that 49 C.F.R. § 37.165 reflects "a *mandate to use best efforts* to restrain or confine the wheelchair to the securement area. *The entity does the best it can, given its securement technology and the nature of the wheelchair*." 49 C.F.R. § 37.123, App. D (emphasis added). Put another way, the statute does not mandate perfect service. Jones' argument that Defendants somehow violated the ADA because they didn't call for back-up transportation is not supported by law or the facts: whether or not SCMTD has its own policies specifying when a driver should call for back-up (which might be more generous than what the law requires), the regulations require only that a service provider use best efforts to secure a disabled passenger, and the evidence does not reflect that Gonzalez failed to do so.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Jones' motion.

**IT IS SO ORDERED.**

Dated: January 21, 2020

_____
THOMAS S. HIXSON
United States Magistrate Judge

---

cause of action is limited to civil suits by disabled individuals to enforce the provisions of the ADA, including equitable relief to enforce compliance with its accessibility standards, but is not a strict liability federal tort claim. Hence, the ADA was merely designed to protect disabled individuals against discrimination, and neither the negligence cause of action nor the money damages sought by Plaintiff are available for non-compliance with UFAS or the ADA.").

12