# APPENDIX 6

<u>Jury Instructions</u>

-       Joint Proposed Jury Instructions

JOINT PROPOSED JURY INSTRUCTIONS

TABLE OF CONTENTS

**Preliminary Instructions**
(Ninth Circuit Civil Jury Instructions)

1.2 Duty of Jury (Court Reads and Provides Written Set of Instructions)

1.3 Duty of Jury (Court Reads Instructions At The Beginning Of Trial But Does Not Provide Written Copies)

1.4 Duty of Jury (Court Reads and Provides Written Instructions at End of Case)

1.5 Claims and Defenses

1.6 Burden of Proof—Preponderance of the Evidence

1.7 Burden of Proof—Clear and Convincing Evidence

1.8 Two or More Parties—Different Legal Rights

1.9 What Is Evidence

1.10 What Is Not Evidence

1.11 Evidence for Limited Purpose

1.12 Direct and Circumstantial Evidence

1.13 Ruling on Objections

1.14 Credibility of Witnesses

1.15 Conduct of the Jury

1.17 No Transcript Available to Jury

3.4   Readback or playback [If Requested]

1.18 Taking Notes

1.19 Questions to Witnesses by Jurors

1.20 Bench Conferences and Recesses

1.21 Outline of Trial

**Instructions In The Course of Trial**
(Ninth Circuit Civil Jury Instructions)

2.0 Cautionary Instructions

2.1 Stipulated Testimony

2.2 Stipulations of Fact

2.3 Judicial Notice

2.4 Deposition in Lieu of Live Testimony

2.9 Impeachment Evidence—Witness

2.13 Expert Opinion

2.14 Charts and Summaries Not Received in Evidence


**Agency Instructions**

(Ninth Circuit Civil Jury Instructions)


4.1 Corporations and Partnerships—Fair Treatment

4.2 Liability of Corporations—Scope of Authority Not in Issue

4.4 Agent and Principal—Definition

4.8 Act of Agent is Act of Principal -- Scope of Authority Not in Issue

4.10 Principal Sued but Not Agent—No Issue as to Agency or Authority

    Organization and Public Entities - Fair Treatment

**Negligence**
(CACI )

400  Negligence-Essential Factual Elements

401  Basic Standard of Care

403  Standard of Care for Physically Disabled Person

    ADA Application

49 CFR§37.165(e) Lift Securement Use

49 CFR§37.3 Definition of "Wheelchair"

DOT FTA 2/4/13 Can a Operator Require a Seat Belt and Harness

DOT FTA 2/4/13 Must the Driver Accommodate any Wheelchair

DOT FTA 2/4/13 The Driver May Not Require the Passenger to Move to a Safe Seat

405  Comparative Fault of Plaintiff

411  Reliance on Good Conduct of Others

430 Causation: Substantial Factor

**Damages**
(Ninth Circuit Civil Jury Instructions)


5.1 Damages—Proof

5.2 Measures of Types of Damages

5.3 Damages—Mitigation

Compensatory Damages

5.4 Damages Arising in the Future—Discount to Present Cash Value

5.5 Punitive Damages

5.6 Nominal Damages

## Instructions at the End of Case
(Ninth Circuit Civil Jury Instructions)

3.1 Duty to Deliberate

3.2 Consideration of Evidence -- Conduct of the Jury

3.3 Communication With Court

3.4 Readback or Playback

3.5 Return of Verdict

3.7 Deadlocked Jury

3.8 Continuing Deliberations After Juror is Discharged

3.9 Post-Discharge Instruction

**INSTRUCTION \_\_\_**

**DUTY OF JURY (COURT READS AND PROVIDES WRITTEN SET OF INSTRUCTIONS)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set of instructions to refer to throughout the trial. These instructions are not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, these instructions will be collected and I will give you a final set of instructions. It is the final set of instructions that will govern your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.2

**INSTRUCTION __**

**DUTY OF JURY (COURT READS INSTRUCTIONS AT THE BEGINNING OF TRIAL BUT DOES NOT PROVIDE WRITTEN COPIES)**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.3

**INSTRUCTION __**

**DUTY OF JURY (COURT READS AND PROVIDES WRITTEN INSTRUCTIONS AT
END OF CASE)**

Members of the Jury: Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.4

## INSTRUCTION ___

## CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff asserts that she was injured by negligence of Santa Cruz Metropolitain Transit District and/or AMTRAK. The plaintiff has the burden of proving these claims.

The defendant denies those claims and also contends that plaintiff was herself negligent, and that she has not mitigated or avoided her damages. The defendant has the burden of proof on these affirmative defenses.

The plaintiff denies defendant's affirmative defenses.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.5

# INSTRUCTION ___

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.6

**INSTRUCTION ___**

**BURDEN OF PROOF— CLEAR AND CONVINCING EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.7

**INSTRUCTION ___**

**TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS**

You should decide the case as to each defendant party and plaintiff party separately.

Unless otherwise stated, the instructions apply to all parties.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.8

**INSTRUCTION ___**

**WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I may instruct you to accept as proved.

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.9

# INSTRUCTION ____

## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.10

**INSTRUCTION ___**

**EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.11

**INSTRUCTION \_\_\_\_**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.12

**INSTRUCTION ___**

**RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.13

**INSTRUCTION ___**

**CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying (although keep in mind that different people react differently to testifying in court);

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.14

## INSTRUCTION ____

## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider

to return a verdict:  do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it[,although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.  Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.15

**INSTRUCTION \_\_\_**

**NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.  If, during your deliberations, you determine that you want to review the testimony of a witness again, you can request to have that witness's testimony, or a portion of that witness's testimony, read back to you in the courtroom, with all of us present. It is up to me whether to permit a readback, and I may require that more of the witness's testimony be read back into the record, rather than just the portion that you requested. The readback could contain errors. The readback will not reflect the witness's demeanor, tone of voice, or other aspects of the live testimony. The way you remember and understand the live testimony controls. Finally, in your exercise of judgment, the testimony read back cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.17

**INSTRUCTION \_\_\_**

**NO TRANSCRIPT AVAILABLE TO JURY**

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.17

## INSTRUCTION NO. __

## READBACK OR PLAYBACK [IF REQUESTED]

If during jury deliberations a request is made by the jury or by one or more jurors for a readback of a portion or all of a witness's testimony, and the court in exercising its discretion determines after consultation with the lawyers that a readback should be allowed, the Committee recommends the following admonition be given in open court with both sides present:

Because a request has been made for a [readback] [playback] of the testimony of [witness's name] it is being provided to you, but you are cautioned that all [readbacks] [playbacks] run the risk of distorting the trial because of overemphasis of one portion of the testimony. [Therefore, you will be required to hear all the witness's testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible.] [Because of the length of the testimony of this witness, excerpts will be [read] [played].] The [readback] [playback] could contain errors. The [readback] [playback] cannot reflect matters of demeanor [, tone of voice,] and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony [read] [played] cannot be considered in isolation, but must be considered in the context of all the evidence presented.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 3.4

**INSTRUCTION ___**

**TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.18

**INSTRUCTION \_\_\_\_**

**QUESTIONS TO WITNESSES BY JURORS**

Option 1

Only the lawyers and I are allowed to ask questions of witnesses. A juror is not permitted to ask questions of witnesses. [Specific reasons for not allowing jurors to ask questions may be explained.] If, however, you are unable to hear a witness or a lawyer, please raise your hand and I will correct the situation.

Option 2

When attorneys have finished their examination of a witness, you may ask questions of the witness. [Describe procedure to be used.] If the rules of evidence do not permit a particular question, I will advise you. After your questions, if any, the attorneys may ask additional questions.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.19

**INSTRUCTION** \_\_\_\_

**BENCH CONFERENCES AND RECESSES**

From time to time during the trial, it may become  necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.20

**INSTRUCTION ___**

**OUTLINE OF TRIAL**

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 1.21

## INSTRUCTION ___

## CAUTIONARY INSTRUCTIONS

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom.  This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case.  This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers.  You also must not communicate with anyone, in any way, about this case.  And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here.  So you must not learn any additional information about the case from sources outside the courtroom.  To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

If you think that you might have done so, please let me know now by raising your hand.  [Wait for a show of hands].  I see no raised hands; however, if you would prefer to talk to the court privately in response to this question, please notify a member of the court's staff at the next break.  Thank you for your careful adherence to my instructions.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.0

**INSTRUCTION NO. __**

**STIPULATED TESTIMONY**

The parties have agreed what witness's testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.1

**INSTRUCTION NO. __**

**STIPULATIONS OF FACT**

The parties have agreed to certain facts [to be placed in evidence as Exhibit __] [that will be read to you]. You must therefore treat these facts as having been proved.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.2

**INSTRUCTION NO. __**

**JUDICIAL NOTICE**

The court has decided to accept as proved the fact that [state fact]. You must accept this fact as true.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.3

**INSTRUCTION ___**

**DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of [name of witness] was taken on [date]. Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.4

**INSTRUCTION NO. __**

**IMPEACHMENT EVIDENCE—WITNESS**

The evidence that a witness has been convicted of a crime, lied under oath on a prior occasion, or testified to conflicting facts, etc..., may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.9

**INSTRUCTION ___**

**EXPERT OPINION**

You have heard testimony from experts who testified to opinions and the reasons for his/her

opinions. This opinion testimony is allowed, because of the education or experience of this

witness.

Such opinion testimony should be judged like any other testimony. You may accept it or

reject it, and give it as much weight as you think it deserves, considering the witness's education

and experience, the reasons given for the opinion, and all the other evidence in the case.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.13

## INSTRUCTION ___

## CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE

Certain charts and summaries not admitted into evidence [may be] [have been] shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 2.14

**INSTRUCTION** ___

**CORPORATIONS AND PARTNERSHIPS—FAIR TREATMENT**

All parties are equal before the law and a public entity is entitled to the same fair and conscientious consideration by you as any party.

Defendants Santa Cruz Metropolitan Transit District and AMTRAK are public entities.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 4.1

**INSTRUCTION ____**

**LIABILITY OF CORPORATIONS—SCOPE OF AUTHORITY NOT IN ISSUE**

Under the law, a public entity is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a public entity is responsible for the acts of its employees, agents, directors, and officers performed within the scope of authority.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 4.2

**INSTRUCTION ___**

**AGENT AND PRINCIPAL—DEFINITION**

An agent is a person who performs services for another person under an express or implied agreement and who is subject to the other's control or right to control the manner and means of performing the services. The other person is called a principal.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 4.4

**INSTRUCTION ___**

**ACT OF AGENT IS ACT OF PRINCIPAL— SCOPE OF AUTHORITY NOT IN ISSUE**

Any act or omission of an agent within the scope of authority is the act or omission of the principal.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 4.8

**INSTRUCTION ___**

**PRINCIPAL SUED BUT NOT AGENT—NO ISSUE AS TO AGENCY OR AUTHORITY**

Sergio Loan-Gonzales and Leonardo Pena were the agents the Defendants, Santa Cruz Metropolitan Transit District, and, therefore, any act or omission of Sergio Lona Gonzalez and Leonardo Pena within the scope of their authority was the act or omission of Santa Cruz Metropolitan Transit District.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 4.10

**INSTRUCTION __**

**ORGANIZATIONS AND PUBLIC ENTITIES – FAIR TREATMENT**

All parties are equal before the law and a public entity is entitled to the same fair and conscientious consideration by you as any party.

**INSTRUCTION NO. __**

**NEGLIGENCE–ESSENTIAL FACTUAL ELEMENTS**

Plaintiff Amanda Jones claims that she was harmed by defendants' negligence. To establish this claim, she must prove all of the following:

1. That Santa Cruz Metropolitan Transit District or Sergio Gonzales was negligent;

2. That plaintiff Amanda Jones was harmed; and

3. That Santa Cruz Metropolitan Transit District or Sergio Gonzales's negligence was a substantial factor in causing plaintiff Amanda Jones harm.

*Authority: Judicial Council of California Civil Jury Instructions (2022 edition), CACI No. 400*

**INSTRUCTION __**

**BASIC STANDARD OF CARE**

Negligence is the failure to use reasonable care to prevent harm to oneself or to others.  A person can be negligent by acting or by failing to act. A person is negligent if that person does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation.

You must decide how a reasonably careful person would have acted in that party's situation.

*Authority: Judicial Council of California Civil Jury Instructions (2022 edition), CACI No. 401*

**INSTRUCTION NO. __**

**STANDARD OF CARE FOR PHYSICALLY DISABLED PERSON**

A person with a physical disability is required to use the amount of care that a reasonably careful person who has the same physical disability would use in the same situation.

*Authority: Judicial Council of California Civil Jury Instructions (2022 edition), CACI No. 403*

**INSTRUCTION __**

**ADA APPLICATION**

The American Disability Act (the ADA) applies to public transportation in this case.  The regulations and guidance that follow are directions for the execution of public transport under the ADA.

**INSTRUCTION __**

**LIFT AND SECUREMENT USE** §37.165

The entity (vehicle driver) may recommend to a user of a wheelchair that the individual transfer to a vehicle seat.  The entity (vehicle driver) may not require the individual to transfer.

Authority: *The regulation for operator involvement with passengers using ADA mobility devices is attached.  The proposed instruction states the content of 49 CFR § 37.165 (e) effective as of October 1, 2011.*

# Code of Federal Regulations

## Title 49 - Transportation

Volume: 1
Date: 2011-10-01
Original Date: 2011-10-01
Title: Section 37.165 - Lift and securement use.
Context: Title 49 - Transportation. Subtitle A - Office of the Secretary of Transportation. PART 37 - TRANSPORTATION SERVICES FOR INDIVIDUALS WITH DISABILITIES (ADA). Subpart G - Provision of Service.

### § 37.165      Lift and securement use.

Link to an amendment published at 76 FR 57936, September 19, 2011.

(a) This section applies to public and private entities.

(b) All common wheelchairs and their users shall be transported in the entity's vehicles or other conveyances. The entity is not required to permit wheelchairs to ride in places other than designated securement locations in the vehicle, where such locations exist.

(c)(1) For vehicles complying with part 38 of this title, the entity shall use the securement system to secure wheelchairs as provided in that Part.

(2) For other vehicles transporting individuals who use wheelchairs, the entity shall provide and use a securement system to ensure that the wheelchair remains within the securement area.

(3) The entity may require that an individual permit his or her wheelchair to be secured.

(d) The entity may not deny transportation to a wheelchair or its user on the ground that the device cannot be secured or restrained satisfactorily by the vehicle's securement system.

(e) The entity may recommend to a user of a wheelchair that the individual transfer to a vehicle seat. The entity may not require the individual to transfer.

(f) Where necessary or upon request, the entity's personnel shall assist individuals with disabilities with the use of securement systems, ramps and lifts. If it is necessary for the personnel to leave their seats to provide this assistance, they shall do so.

(g) The entity shall permit individuals with disabilities who do not use wheelchairs, including standees, to use a vehicle's lift or ramp to enter the vehicle. *Provided,* that an entity is not required to permit such individuals to use a lift Model 141 manufactured by EEC, Inc. If the entity chooses not to allow such individuals to use such a lift, it shall clearly notify consumers of this fact by signage on the exterior of the vehicle (adjacent to and of equivalent size with the accessibility symbol).

[56 FR 45621, Sept. 6, 1991, as amended at 58 FR 63103, Nov. 30, 1993]

**Effective Date Note:** At 76 FR 57936, Sept. 19, 2011, § 37.165(b) was revised, effective Oct. 19, 2011. For the convenience of the user, the revised text is set forth as follows:

### § 37.165      Lift and securement use.

(b) Except as provided in this section, individuals using wheelchairs shall be transported in the entity's vehicles or other conveyances.

(1) With respect to wheelchair/occupant combinations that are larger or heavier than those to which the design standards for vehicles and equipment of 49 CFR part 38 refer, the entity must carry the wheelchair and occupant if the lift and vehicle can accommodate the wheelchair and occupant. The entity may decline to carry a wheelchair/occupant if the combined weight exceeds that of the lift specifications or if carriage of the wheelchair is demonstrated to be inconsistent with legitimate safety requirements.

(2) The entity is not required to permit wheelchairs to ride in places other than designated securement locations in the vehicle, where such locations exist.

(b) The entity shall establish a system of regular and frequent maintenance checks of lifts sufficient to determine if they are operative.

(c) The entity shall ensure that vehicle operators report to the entity, by the most immediate means available, any failure of a lift to operate in service.

(d) Except as provided in paragraph (e) of this section, when a lift is discovered to be inoperative, the entity shall take the vehicle out of service before the beginning of the vehicle's next service day and ensure that the lift is repaired before the vehicle returns to service.

(e) If there is no spare vehicle available to take the place of a vehicle with an inoperable lift, such that taking the vehicle out of service will reduce the transportation service the entity is able to provide, the public entity may keep the vehicle in service with an inoperable lift for no more than five days (if the entity serves an area of 50,000 or less population) or three days (if the entity serves an area of over 50,000 population) from the day on which the lift is discovered to be inoperative.

(f) In any case in which a vehicle is operating on a fixed route with an inoperative lift, and the headway to the next accessible vehicle on the route exceeds 30 minutes, the entity shall promptly provide alternative transportation to individuals with disabilities who are unable to use the vehicle because its lift does not work.

**§ 37.165  Lift and securement use.**

(a) This section applies to public and private entities.

(b) All common wheelchairs and their users shall be transported in the entity's vehicles or other conveyances. The entity is not required to permit wheelchairs to ride in places other than designated securement locations in the vehicle, where such locations exist.

(c)(1) For vehicles complying with part 38 of this title, the entity shall use the securement system to secure wheelchairs as provided in that Part.

(2) For other vehicles transporting individuals who use wheelchairs, the entity shall provide and use a securement system to ensure that the wheelchair remains within the securement area.

(3) The entity may require that an individual permit his or her wheelchair to be secured.

(d) The entity may not deny transportation to a wheelchair or its user on the ground that the device cannot be secured or restrained satisfactorily by the vehicle's securement system.

(e) The entity may recommend to a user of a wheelchair that the individual transfer to a vehicle seat. The entity may not require the individual to transfer.

(f) Where necessary or upon request, the entity's personnel shall assist individuals with disabilities with the use of securement systems, ramps and lifts. If it is necessary for the personnel to leave their seats to provide this assistance, they shall do so.

(g) The entity shall permit individuals with disabilities who do not use wheelchairs, including standees, to use a vehicle's lift or ramp to enter the vehicle. *Provided,* that an entity is not required to permit such individuals to use a lift Model 141 manufactured by EEC, Inc. If the entity chooses not to allow such individuals to use such a lift, it shall clearly notify consumers of this fact by signage on the exterior of the vehicle (adjacent to and of equivalent size with the accessibility symbol).

[56 FR 45621, Sept. 6, 1991, as amended at 58 FR 63103, Nov. 30, 1993]

EFFECTIVE DATE NOTE: At 76 FR 57936, Sept. 19, 2011, § 37.165(b) was revised, effective Oct. 19, 2011. For the convenience of the user, the revised text is set forth as follows:

**§ 37.165  Lift and securement use.**

\*     \*     \*     \*     \*

(b) Except as provided in this section, individuals using wheelchairs shall be transported in the entity's vehicles or other conveyances.

(1) With respect to wheelchair/occupant combinations that are larger or heavier than those to which the design standards for vehicles and equipment of 49 CFR part 38 refer, the entity must carry the wheelchair and occupant if the lift and vehicle can accommodate the wheelchair and occupant. The entity may decline to carry a wheelchair/occupant if the combined weight exceeds that of the lift specifications or if carriage of the

wheelchair is demonstrated to be inconsistent with legitimate safety requirements.

(2) The entity is not required to permit wheelchairs to ride in places other than designated securement locations in the vehicle, where such locations exist.

\*          \*          \*          \*          \*

**§ 37.167   Other service requirements.**

(a) This section applies to public and private entities.

(b) On fixed route systems, the entity shall announce stops as follows:

(1) The entity shall announce at least at transfer points with other fixed routes, other major intersections and destination points, and intervals along a route sufficient to permit individuals with visual impairments or other disabilities to be oriented to their location.

(2) The entity shall announce any stop on request of an individual with a disability.

(c) Where vehicles or other conveyances for more than one route serve the same stop, the entity shall provide a means by which an individual with a visual impairment or other disability can identify the proper vehicle to enter or be identified to the vehicle operator as a person seeking a ride on a particular route.

(d) The entity shall permit service animals to accompany individuals with disabilities in vehicles and facilities.

(e) The entity shall ensure that vehicle operators and other personnel make use of accessibility-related equipment or features required by part 38 of this title.

(f) The entity shall make available to individuals with disabilities adequate information concerning transportation services. This obligation includes making adequate communications capacity available, through accessible formats and technology, to enable users to obtain information and schedule service.

(g) The entity shall not refuse to permit a passenger who uses a lift to disembark from a vehicle at any designated stop, unless the lift cannot be deployed, the lift will be damaged if it is deployed, or temporary conditions at the stop, not under the control of the entity, preclude the safe use of the stop by all passengers.

(h) The entity shall not prohibit an individual with a disability from traveling with a respirator or portable oxygen supply, consistent with applicable Department of Transportation rules on the transportation of hazardous materials (49 CFR subtitle B, chapter 1, subchapter C).

(i) The entity shall ensure that adequate time is provided to allow individuals with disabilities to complete boarding or disembarking from the vehicle.

(j)(1) When an individual with a disability enters a vehicle, and because of a disability, the individual needs to sit in a seat or occupy a wheelchair securement location, the entity shall ask the following persons to move in order to allow the individual with a disability to occupy the seat or securement location:

(i) Individuals, except other individuals with a disability or elderly persons, sitting in a location designated as priority seating for elderly and handicapped persons (or other seat as necessary);

(ii) Individuals sitting in or a fold-down or other movable seat in a wheelchair securement location.

(2) This requirement applies to light rail, rapid rail, and commuter rail systems only to the extent practicable.

(3) The entity is not required to enforce the request that other passengers move from priority seating areas or wheelchair securement locations.

(4) In all signage designating priority seating areas for elderly persons and persons with disabilities, or designating wheelchair securement areas, the entity shall include language informing persons sitting in these locations that they should comply with requests by transit provider personnel to vacate their seats to make room for an individual with a disability. This requirement applies to all fixed route vehicles when they are acquired by the entity or to new or replacement signage in the entity's existing fixed route vehicles.

[56 FR 45621, Sept. 6, 1991, as amended at 58 FR 63103, Nov. 30, 1993]

## INSTRUCTION __

## DEFINITION OF "WHEELCHAIR."

*Wheelchair* means a mobility aid belonging to any class of three-or-more wheeled devices, usable indoors, designed or modified for an used by individuals with mobility impairments, whether operated manually or powered.

Authority: *The regulation for operator involvement with passengers using ADA mobility devices is attached.  The proposed instruction states the content of 49 CFR § 37.165 (e) effective as of October 1, 2011.  The plaintiff was not using a wheelchair as such.  The Federal Regulation defining a "wheelchair" includes Plaintiff's device, but clarification is needed as to some of the applicable statutory and regulatory rules.  The proposed instruction sets forth the Federal regulation defining the Plaintiff's scooter as a "wheelchair."  CFR § 37.3 Definitions.*

This content is from the eCFR and is authoritative but unofficial.

## Title 49 - Transportation

## Subtitle A - Office of the Secretary of Transportation

## Part 37 - Transportation Services for Individuals with Disabilities (ADA)

**Authority:** 42 U.S.C. 12101-12213; 49 U.S.C. 322.

**Source:** 56 FR 45621, Sept. 6, 1991, unless otherwise noted.

## Subpart A - General

## § 37.3 Definitions.

As used in this part:

*Accessible* means, with respect to vehicles and facilities, complying with the accessibility requirements of parts 37 and 38 of this title.

*The Act* or *ADA* means the Americans with Disabilities Act of 1990 (Pub. L. 101-336, 104 Stat. 327, 42 U.S.C. 12101-12213 and 47 U.S.C. 225 and 611), as it may be amended from time to time.

*Administrator* means Administrator of the Federal Transit Administration, or his or her designee.

*Alteration* means a change to an existing facility, including, but not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, changes or rearrangement in structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions. Normal maintenance, reroofing, painting or wallpapering, asbestos removal, or changes to mechanical or electrical systems are not alterations unless they affect the usability of the building or facility.

*Automated guideway transit system* or *AGT* means a fixed-guideway transit system which operates with automated (driverless) individual vehicles or multi-car trains. Service may be on a fixed schedule or in response to a passenger-activated call button.

*Auxiliary aids and services* includes:

(1)  Qualified interpreters, notetakers, transcription services, written materials, telephone headset amplifiers, assistive listening devices, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, closed and open captioning, text telephones (also known as telephone devices for the deaf, or TDDs), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments;

(2)  Qualified readers, taped texts, audio recordings, Brailled materials, large print materials, or other effective methods of making visually delivered materials available to individuals with visual impairments;

(3)  Acquisition or modification of equipment or devices; or

(4)  Other similar services or actions.

*Bus* means any of several types of self-propelled vehicles, generally rubber-tired, intended for use on city streets, highways, and busways, including but not limited to minibuses, forty- and thirty-foot buses, articulated buses, double-deck buses, and electrically powered trolley buses, used by public entities to

provide designated public transportation service and by private entities to provide transportation service including, but not limited to, specified public transportation services. Self-propelled, rubber-tired vehicles designed to look like antique or vintage trolleys are considered buses.

*Commerce* means travel, trade, transportation, or communication among the several states, between any foreign country or any territory or possession and any state, or between points in the same state but through another state or foreign country.

*Commuter authority* means any state, local, regional authority, corporation, or other entity established for purposes of providing commuter rail transportation (including, but not necessarily limited to, the New York Metropolitan Transportation Authority, the Connecticut Department of Transportation, the Maryland Department of Transportation, the Southeastern Pennsylvania Transportation Authority, the New Jersey Transit Corporation, the Massachusetts Bay Transportation Authority, the Port Authority Trans-Hudson Corporation, and any successor agencies) and any entity created by one or more such agencies for the purposes of operating, or contracting for the operation of, commuter rail transportation.

*Commuter bus service* means fixed route bus service, characterized by service predominantly in one direction during peak periods, limited stops, use of multi-ride tickets, and routes of extended length, usually between the central business district and outlying suburbs. Commuter bus service may also include other service, characterized by a limited route structure, limited stops, and a coordinated relationship to another mode of transportation.

*Commuter rail car* means a rail passenger car obtained by a commuter authority for use in commuter rail transportation.

*Commuter rail transportation* means short-haul rail passenger service operating in metropolitan and suburban areas, whether within or across the geographical boundaries of a state, usually characterized by reduced fare, multiple ride, and commutation tickets and by morning and evening peak period operations. This term does not include light or rapid rail transportation.

*Demand responsive system* means any system of transporting individuals, including the provision of designated public transportation service by public entities and the provision of transportation service by private entities, including but not limited to specified public transportation service, which is not a fixed route system.

*Designated public transportation* means transportation provided by a public entity (other than public school transportation) by bus, rail, or other conveyance (other than transportation by aircraft or intercity or commuter rail transportation) that provides the general public with general or special service, including charter service, on a regular and continuing basis.

*Direct threat* means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, procedures, or by the provision of auxiliary aids or services.

*Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.

   (1)  The phrase *physical or mental impairment* means -

      (i)  Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory including speech organs, cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine;

(ii) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities;

(iii) The term *physical or mental impairment* includes, but is not limited to, such contagious or noncontagious diseases and conditions as orthopedic, visual, speech, and hearing impairments; cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, mental retardation, emotional illness, specific learning disabilities, HIV disease, tuberculosis, drug addiction and alcoholism;

(iv) The phrase *physical or mental impairment* does not include homosexuality or bisexuality.

(2) The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and work.

(3) The phrase *has a record of such an impairment* means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

(4) The phrase *is regarded as having such an impairment* means -

(i) Has a physical or mental impairment that does not substantially limit major life activities, but which is treated by a public or private entity as constituting such a limitation;

(ii) Has a physical or mental impairment that substantially limits a major life activity only as a result of the attitudes of others toward such an impairment; or

(iii) Has none of the impairments defined in paragraph (1) of this definition but is treated by a public or private entity as having such an impairment.

(5) The term *disability* does not include -

(i) Transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, gender identity disorders not resulting from physical impairments, or other sexual behavior disorders;

(ii) Compulsive gambling, kleptomania, or pyromania; or

(iii) Psychoactive substance abuse disorders resulting from the current illegal use of drugs.

*Facility* means all or any portion of buildings, structures, sites, complexes, equipment, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located.

*Fixed route system* means a system of transporting individuals (other than by aircraft), including the provision of designated public transportation service by public entities and the provision of transportation service by private entities, including, but not limited to, specified public transportation service, on which a vehicle is operated along a prescribed route according to a fixed schedule.

*FT Act* means the Federal Transit Act of 1964, as amended (49 U.S.C. App. 1601 *et seq.*).

*High speed rail* means a rail service having the characteristics of intercity rail service which operates primarily on a dedicated guideway or track not used, for the most part, by freight, including, but not limited to, trains on welded rail, magnetically levitated (maglev) vehicles on a special guideway, or other advanced technology vehicles, designed to travel at speeds in excess of those possible on other types of railroads.

*Individual with a disability* means a person who has a disability, but does not include an individual who is currently engaging in the illegal use of drugs, when a public or private entity acts on the basis of such use.

*Intercity rail passenger car* means a rail car, intended for use by revenue passengers, obtained by the National Railroad Passenger Corporation (Amtrak) for use in intercity rail transportation.

*Intercity rail transportation* means transportation provided by Amtrak.

*Light rail* means a streetcar-type vehicle operated on city streets, semi-exclusive rights of way, or exclusive rights of way. Service may be provided by step-entry vehicles or by level boarding.

*New vehicle* means a vehicle which is offered for sale or lease after manufacture without any prior use.

*Operates* includes, with respect to a fixed route or demand responsive system, the provision of transportation service by a public or private entity itself or by a person under a contractual or other arrangement or relationship with the entity.

*Origin-to-destination service* means providing service from a passenger's origin to the passenger's destination. A provider may provide ADA complementary paratransit in a curb-to-curb or door-to-door mode. When an ADA paratransit operator chooses curb-to-curb as its primary means of providing service, it must provide assistance to those passengers who need assistance beyond the curb in order to use the service unless such assistance would result in in a fundamental alteration or direct threat.

*Over-the-road bus* means a bus characterized by an elevated passenger deck located over a baggage compartment.

*Paratransit* means comparable transportation service required by the ADA for individuals with disabilities who are unable to use fixed route transportation systems.

*Private entity* means any entity other than a public entity.

*Public entity* means:

    (1)  Any state or local government;

    (2)  Any department, agency, special purpose district, or other instrumentality of one or more state or local governments; and

    (3)  The National Railroad Passenger Corporation (Amtrak) and any commuter authority.

*Purchase or lease,* with respect to vehicles, means the time at which an entity is legally obligated to obtain the vehicles, such as the time of contract execution.

*Public school transportation* means transportation by schoolbus vehicles of schoolchildren, personnel, and equipment to and from a public elementary or secondary school and school-related activities.

*Rapid rail* means a subway-type transit vehicle railway operated on exclusive private rights of way with high level platform stations. Rapid rail also may operate on elevated or at grade level track separated from other traffic.

*Remanufactured vehicle* means a vehicle which has been structurally restored and has had new or rebuilt major components installed to extend its service life.

*Secretary* means the Secretary of Transportation or his/her designee.

*Section 504* means section 504 of the Rehabilitation Act of 1973 (Pub. L. 93-112, 87 Stat. 394, 29 U.S.C. 794), as amended.

*Service animal* means any guide dog, signal dog, or other animal individually trained to work or perform tasks for an individual with a disability, including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items.

*Small operator* means, in the context of over-the-road buses (OTRBs), a private entity primarily in the business of transporting people that is not a Class I motor carrier. To determine whether an operator has sufficient average annual gross transportation operating revenues to be a Class I motor carrier, its revenues are combined with those of any other OTRB operator with which it is affiliated.

*Solicitation* means the closing date for the submission of bids or offers in a procurement.

*Specified public transportation* means transportation by bus, rail, or any other conveyance (other than aircraft) provided by a private entity to the general public, with general or special service (including charter service) on a regular and continuing basis.

*Station* means, with respect to intercity and commuter rail transportation, the portion of a property located appurtenant to a right of way on which intercity or commuter rail transportation is operated, where such portion is used by the general public and is related to the provision of such transportation, including passenger platforms, designated waiting areas, restrooms, and, where a public entity providing rail transportation owns the property, concession areas, to the extent that such public entity exercises control over the selection, design, construction, or alteration of the property, but this term does not include flag stops (*i.e.*, stations which are not regularly scheduled stops but at which trains will stop to board or detrain passengers only on signal or advance notice).

*Used vehicle* means a vehicle with prior use.

*Vanpool* means a voluntary commuter ridesharing arrangement, using vans with a seating capacity greater than 7 persons (including the driver) or buses, which provides transportation to a group of individuals traveling directly from their homes to their regular places of work within the same geographical area, and in which the commuter/driver does not receive compensation beyond reimbursement for his or her costs of providing the service.

*Vehicle,* as the term is applied to private entities, does not include a rail passenger car, railroad locomotive, railroad freight car, or railroad caboose, or other rail rolling stock described in section 242 of title III of the Act.

*Wheelchair* means a mobility aid belonging to any class of three- or more-wheeled devices, usable indoors, designed or modified for and used by individuals with mobility impairments, whether operated manually or powered.

[56 FR 45621, Sept. 6, 1991, as amended at 58 FR 63101, Nov. 30, 1993; 61 FR 25415, May 21, 1996; 63 FR 51690, Sept. 28, 1998; 76 FR 57935, Sept. 19, 2011; 79 FR 21405, Apr. 16, 2014; 80 FR 13260, Mar. 13, 2015]

## INSTRUCTION __

## CAN A OPERATOR REQUIRE A SEAT BELT AND HARNESS

Under the broad nondiscrimination provisions in Section 37.5 of the DOT ADA regulations, a transit operator is not permitted to mandate the use by wheelchair users of seat belts and shoulder harnesses, unless the operator mandates the use of devices by all passengers, including those sitting in vehicle seats.  For example, on fixed route buses, if none of the other passengers are required to wear shoulder belts then neither can the person in the mobility device be required to do so.

Authority: *"Disability Law Guidance" U.S. Department of Transportation, Federal Transit Administration February 4, 2013.*

accommodate at least one wheelchair.

## May a transit operator deny boarding to a rider whose wheelchair is difficult to secure?

- No. If the transit operator has a policy that requires securement, or if a rider asks that the wheelchair be secured, Section 37.165(f) of the DOT ADA regulations requires transit personnel to use their best efforts to secure the device. Section 37.165(d) states that transit operators cannot refuse to accommodate a wheelchair because the device cannot be secured to the driver's satisfaction. Given the diversity of wheelchairs, transit operators should consult with the owner of the wheelchair to determine the best means of securement.

## Does a wheelchair user have to use the seat belt and shoulder harness?

- Under the broad nondiscrimination provisions in Section 37.5 of the DOT ADA regulations, a transit operator is not permitted to mandate the use by wheelchair users of seat belts and shoulder harnesses, unless the operator mandates the use of these devices by all passengers, including those sitting in vehicle seats. For example, on fixed route buses, if none of the other passengers are required to wear shoulder belts then neither can the person in the mobility device be required to do so.

  Transit operators may establish a policy that requires the seat belt and shoulder harness to be used by all riders, including those who use wheelchairs as well as those who use vehicle seats, if seat belts and shoulder harnesses are provided at all seating locations. In some cases, state law could require an operator to adopt such a policy.

  When developing seat-belt-use policies, it must be stressed that Section 38.23(d)(7) prohibits the use of the seat belt and shoulder harness in lieu of securing the wheelchair itself. If the passenger's wheelchair cannot be secured, or cannot be secured adequately to the satisfaction of both passenger and transit personnel, the seat belt and shoulder harness must not be used.

  Many state seat belt laws also contain provisions exempting certain types of vehicles (such as buses and taxis) from compliance, as well as exceptions for persons who cannot use a seat belt for medical reasons. Any seat-belt-use policy established by a transit operator should reflect such provisions.

* Some changes to design loads and dimensional limits for wheelchair lifts have been made by the Next Generation Corridor Equipment Pool Committee, i.e., the "305 committee" to specifications for certain intercity and high-speed railcars. These are not regulatory changes or requirements but may be applicable. For more information, see http://www.highspeed-rail.org.

This guidance has been approved through the Department of Transportation's Disability Law Coordinating Council as representing the official views of the Department on this matter.

February 4, 2013

Last updated: Tuesday, September 1, 2015

U.S. DEPARTMENT OF TRANSPORTATION

**Federal Transit Administration**

1200 NEW JERSEY AVENUE, SE

WASHINGTON, DC 20590

202-366-4043

Subscribe To Email Updates

    

## INSTRUCTION __

## MUST THE DRIVER ACCOMMODATE ANY WHEELCHAIR

If the transit operator (Santa Cruz Metropolitan Transit Authority) has a policy that requires securement, of if a rider asks that the wheelchair be secured, Section 37.165(f) of the DOT ADA regulations requires transit personnel to use their best efforts to secure the device. Section 37.165(d) states that transit operators cannot refuse to accommodate a wheelchair because the device cannot be secured to the driver's satisfaction. Given the diversity of wheelchairs, transit operators should consult with the owner of the wheelchair to determine the best means of securement.

Authority: *"Disability Law Guidance" U.S. Department of Transportation, Federal Transit Administration February 4, 2013.*

locations and devices to secure two wheelchairs, while vehicles 22 feet and under must be able to
accommodate at least one wheelchair.

## May a transit operator deny boarding to a rider whose wheelchair is difficult to secure?

- No. If the transit operator has a policy that requires securement, or if a rider asks that the wheelchair be secured, Section 37.165(f) of the DOT ADA regulations requires transit personnel to use their best efforts to secure the device. Section 37.165(d) states that transit operators cannot refuse to accommodate a wheelchair because the device cannot be secured to the driver's satisfaction. Given the diversity of wheelchairs, transit operators should consult with the owner of the wheelchair to determine the best means of securement.

## Does a wheelchair user have to use the seat belt and shoulder harness?

- Under the broad nondiscrimination provisions in Section 37.5 of the DOT ADA regulations, a transit operator is not permitted to mandate the use by wheelchair users of seat belts and shoulder harnesses, unless the operator mandates the use of these devices by all passengers, including those sitting in vehicle seats. For example, on fixed route buses, if none of the other passengers are required to wear shoulder belts then neither can the person in the mobility device be required to do so.

  Transit operators may establish a policy that requires the seat belt and shoulder harness to be used by all riders, including those who use wheelchairs as well as those who use vehicle seats, if seat belts and shoulder harnesses are provided at all seating locations. In some cases, state law could require an operator to adopt such a policy.

  When developing seat-belt-use policies, it must be stressed that Section 38.23(d)(7) prohibits the use of the seat belt and shoulder harness in lieu of securing the wheelchair itself. If the passenger's wheelchair cannot be secured, or cannot be secured adequately to the satisfaction of both passenger and transit personnel, the seat belt and shoulder harness must not be used.

  Many state seat belt laws also contain provisions exempting certain types of vehicles (such as buses and taxis) from compliance, as well as exceptions for persons who cannot use a seat belt for medical reasons. Any seat-belt-use policy established by a transit operator should reflect such provisions.

---

\* Some changes to design loads and dimensional limits for wheelchair lifts have been made by the Next Generation Corridor Equipment Pool Committee, i.e., the "305 committee" to specifications for certain intercity and high-speed railcars. These are not regulatory changes or requirements but may be applicable. For more information, see http://www.highspeed-rail.org.

---

This guidance has been approved through the Department of Transportation's Disability Law Coordinating Council as representing the official views of the Department on this matter.

February 4, 2013

Last updated: Tuesday, September 1, 2015

U.S. DEPARTMENT OF TRANSPORTATION

**Federal Transit Administration**

1200 NEW JERSEY AVENUE, SE

WASHINGTON, DC 20590

202-366-4043

Subscribe To Email Updates

    

## INSTRUCTION __

**THE DRIVER MAY NOT REQUIRE THE PASSENGER TO MOVE TO A SAFE SEAT**

Section 37.162(e) of the DOT ADA regulations allows persons who use wheelchairs to transfer to a vehicle seat, if one is available. Such a move is the rider's decision and the operator cannot force a rider to transfer to a vehicle seat, although the operator can suggest a transfer in a non-coercive way.

Authority: *"Disability Law Guidance" U.S. Department of Transportation, Federal Transit Administration February 4, 2013.*

(FMVSS) represents the minimum design load specified under 49 CFR Part 38. FMVSS does not limit the capacity of the lift.

### If the lift manufacturer specifies that wheelchairs must face away from the vehicle when using the lift, are transportation operators required to permit passengers to board facing the vehicle?

- Yes. 49 CFR Part 38 specifies that a lift must permit both inboard and outboard facing of wheelchair users. A lift that requires passengers to face a specific direction does not comply with the regulations.

What kinds of services must transportation personnel provide?

- Because safe and nondiscriminatory transportation is the responsibility of the transportation operator, Section 37.173 of the DOT ADA regulations requires operators to train their personnel to properly assist and treat individuals with disabilities with sensitivity, and to operate vehicles and equipment safely. This includes training personnel to use the accessibility equipment and to accommodate the different types of wheelchairs.

  Attendant-type services (e.g., manually lifting or transferring passengers to seats and carrying personal baggage or suitcases (except where provided to nondisabled passengers)) are not required. However, assistance with boarding and disembarking, including pushing a manual wheelchair up a particularly steep ramp, is required.

### Does a wheelchair need brakes in order to use the transportation service?

- No. The DOT ADA regulations' definition of a wheelchair does not include a requirement for brakes or any other equipment. A transportation operator may not deny transportation to a wheelchair user because the device does not have brakes or the user does not choose to set the brakes.

### Can an operator refuse to carry a person with a disability, especially a person using an electric scooter that meets the definition of a "wheelchair," because of higher insurance rates or liability concerns?

- No. Section 37.5(g) of the DOT ADA regulations prohibits an operator from denying service to an individual with a disability because its insurance company conditions coverage or rates on the absence of individuals with disabilities or persons who use wheelchairs.

### Can an operator require a person to transfer from a wheelchair to a vehicle seat?

- No. Section 37.165(e) of the DOT ADA regulations allows persons who use wheelchairs to transfer to a vehicle seat, if one is available. Such a move is the rider's decision and the operator cannot force a rider to transfer to a vehicle seat, although the operator can suggest a transfer in a non-coercive way.

## Securement

### May a transit operator require that wheelchairs be secured in buses and vans?

- Yes, if the transit operator has established such a policy, and the vehicle is required to be equipped with a securement system by 49 CFR Part 38. Section 37.165(c)(3) of the DOT ADA regulations allows a transit operator to establish a policy that requires all riders to have their wheelchairs secured while aboard a transit bus or van. Therefore, the operator may decline to provide service to a rider who refuses to allow his or her wheelchair to be secured.

  Alternatively, transit operators may adopt a policy that allows wheelchairs to ride unsecured. If the rider wishes his or her wheelchair to be secured, however, the operator's personnel must provide the requested assistance.

  The regulations do not require that rail vehicles be equipped with securement devices; if securement devices are nonetheless provided, their use is optional and at the rider's discretion.

### What kinds of securement equipment must be provided in buses and vans?

- Section 38.23(d) of the DOT ADA regulations requires all ADA-compliant buses and vans to have a two-part securement system, one to secure the wheelchair, and a seat belt and shoulder harness for the wheelchair user. Section 38.23(a) requires vehicles over 22 feet in length to have enough securement

**INSTRUCTION NO. __**

**COMPARATIVE FAULT OF PLAINTIFF**

Both Santa Cruz Metropolitan Transit District and Sergio Gonzales claims that plaintiff Amanda Jones's own negligence contributed to her harm. To succeed on this claim, it must be proved both of the following:

    1. That plaintiff Amanda Jones was negligent; and

    2. That plaintiff Amanda Jones negligence was a substantial factor in causing her harm.

If the defendants prove the above, plaintiff Amanda Jones's damages are reduced by your determination of the percentage of plaintiff Amanda Jones's responsibility. I will calculate the actual reduction.

*Authority: Judicial Council of California Civil Jury Instructions (2022 edition), CACI No. 405*

## INSTRUCTION NO. __

## RELIANCE ON GOOD CONDUCT OF OTHERS

Every person has a right to expect that every other person will use reasonable care, unless that person knows, or should know, that the other person will not use reasonable care.

*Authority: Judicial Council of California Civil Jury Instructions (2022 edition), CACI No. 411*

**INSTRUCTION __**

**CAUSATION: SUBSTANTIAL FACTOR**

A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

Conduct is not a substantial factor in causing harm if the same harm could have occurred without that conduct.

*Authority: Judicial Council of California Civil Jury Instructions (2022 edition), CACI No. 430*

**INSTRUCTION \_\_\_**

**DAMAGES—MITIGATION**

The plaintiff has a duty to use reasonable efforts to mitigate damages. To mitigate means to avoid or reduce damages.

The defendant has the burden of proving by a preponderance of the evidence:

1.      that the plaintiff failed to use reasonable efforts to mitigate damages; and

2.      the amount by which damages would have been mitigated.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 5.3

**INSTRUCTION ___**

**DAMAGES—PROOF**

**MEASURES OF TYPES OF PROOF**

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for the plaintiff on the plaintiff's negligence claim] claim, you must determine the plaintiff's damages. The plaintiff has the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

The nature and extent of the injuries;

The disability, disfigurement, loss of enjoyment of life experienced and that with reasonable probability will be experienced in the future;

The mental, physical pain and suffering experienced and that with reasonable probability will be experienced in the future;

The reasonable value of necessary medical care, treatment, and services received to the present time;

The reasonable value of necessary medical care, treatment, and services  that with reasonable probability will be required in the future;

The reasonable value of wages, earnings, earning capacity, salaries, employment, and employment opportunities that with reasonable probability will be lost in the future.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 5.1
Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 5.2

# INSTRUCTION __

## COMPENSATORY DAMAGES

If you decide that AMTRAK or Santa Cruz Metropolitan Transit District are legally responsible for harm caused to Ms. Jones, you must decide how much money will reasonably compensate her for that harm. This compensation is called "compensatory damages."

The possible compensatory damages claimed by Ms. Jones for harm caused by AMTRAK and Santa Cruz Metropolitan Transit District fall into two categories called economic damages and noneconomic damages.

Definition of Economic and Non-economic damages:

Economic damages are those damages which equate to a monetary loss such as medical expenses, lost wages and property damage;

Non-economic damages are damages such as pain and suffering that are not monetarily quantifiable or do not have a fixed monetary value.

The amount of damages must include an award for each item of harm that was caused by wrongful conduct on the part of AMTRAK and Santa Cruz Metropolitan Transit District, even if the particular harm could not have been anticipated. Ms. Jones does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. However, you must not speculate or guess in awarding damages. The following are the specific items of noneconomic damages claimed by Ms. Jones: physical pain; mental suffering; loss of enjoyment of life; physical impairment; inconvenience; grief; anxiety; humiliation; and emotional distress. No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

For future non-economic damages, determine the amount in current

dollars paid at the time of judgment that will compensate Ms. Jones for these future

noneconomic damages.

## INSTRUCTION ___

## DAMAGES ARISING IN THE FUTURE—DISCOUNT TO PRESENT CASH VALUE

Any award for future economic damages must be for the present cash value of those damages.

Noneconomic damages such as pain and suffering, disability, and disfigurement, are not reduced to present cash value.

Present cash value means the sum of money needed now, which, when invested at a reasonable rate of return, will pay future damages at the times and in the amounts that you find the damages will be incurred.

The rate of return to be applied in determining present cash value should be the interest that can reasonably be expected from safe investments that can be made by a person of ordinary prudence, who has ordinary financial experience and skill.  You should also consider decreases in the value of money that may be caused by future inflation.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 5.4

**INSTRUCTION __**

**PUNITIVE DAMAGES**

If you find for the plaintiff, you may, but are not required to, award punitive damages. The purposes of punitive damages are to punish a defendant and to deter similar acts in the future. Punitive damages may not be awarded to compensate a plaintiff.

The plaintiff has the burden of proving by clear and convincing evidence that punitive damages should be awarded and, if so, the amount of any such damages.

You may award punitive damages only if you find that the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights. Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the plaintiff.

If you find that punitive damages are appropriate, you must use reason in setting the amount. Punitive damages, if any, should be in an amount sufficient to fulfill their purposes but should not reflect bias, prejudice or sympathy toward any party.  In considering the amount of any punitive damages, consider the degree of reprehensibility of the defendant's conduct [, including whether the conduct that harmed the plaintiff was particularly reprehensible because it also caused actual harm or posed a substantial risk of harm to people who are not parties to this case. You may not, however, set the amount of any punitive damages in order to punish the

defendant for harm to anyone other than the plaintiff in this case].

In addition, you may consider the relationship of any award of punitive damages to any actual harm inflicted on the plaintiff.

Punitive damages may not be awarded against Santa Cruz Metropolitan Transit District. You may impose punitive damages against one or more of the defendants and not others, and may award different amounts against different defendants. Punitive damages may be awarded even if you award plaintiff only nominal, and not compensatory, damages.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 5.5

**INSTRUCTION ___**

**NOMINAL DAMAGES**

The law that applies to this case authorizes an award of nominal damages. If you find for the plaintiff but you find that the plaintiff has failed to prove damages as defined in these instructions, you must award nominal damages. Nominal damages may not exceed one dollar.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 5.6

## INSTRUCTION ___

## DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 3.1

**INSTRUCTION ___**

**CONSIDERATION OF EVIDENCE -- CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations.

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to

read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings[, and a mistrial could result that would require the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 3.2

**INSTRUCTION ___**

**COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the [marshal] [bailiff], signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit*, No. 3.3

**INSTRUCTION ___**

**RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the Courtroom Deputy that you are ready to return to the courtroom.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 3.5

## INSTRUCTION ____

## DEADLOCKED JURY

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with the other jurors. During your deliberations, you should not be unwilling to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of the other jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now return to the jury room and continue your deliberations.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 3.7

**INSTRUCTION ___**

**CONTINUING DELIBERATIONS AFTER JUROR IS DISCHARGED**

[One] [Some] of your fellow jurors [has] [have] been excused from service and will not participate further in your deliberations. You should not speculate about the reason the [juror is] [jurors are] no longer present.

You should continue your deliberations with the remaining jurors. Do not consider the opinions of the excused [juror] [jurors] as you continue deliberating. All the previous instructions given to you still apply, including the requirement that all the remaining jurors unanimously agree on a verdict.

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 3.8

**INSTRUCTION ___**

**POST-DISCHARGE INSTRUCTION**

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

[If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.]

[Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence. Please respect the privacy of the views of the other jurors.]

[Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me and I will assist.]

Authority: *Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit, No.* 3.9