UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMANDA JONES,

             Plaintiff,

    v.

NATIONAL RAILROAD PASSENGER
CORPORATION, et al.,

            Defendants.

Case No.  15-cv-02726-TSH

**ORDER RE PLAINTIFF'S MOTION
FOR SANCTIONS AND COURT'S
ORDER TO SHOW CAUSE**

Re: Dkt. 456, 467

## I.    INTRODUCTION

Plaintiff Amanda Jones moves for sanctions in the amount of $75,594.67 against
Defendant Santa Cruz Metropolitan Transit District ("SCMTD") and/or its counsel.  ECF Nos.
456, 464, 465.  SCMTD filed an Opposition (ECF No. 469) and Plaintiff filed a Reply (ECF No.
472).  In addition, the Court ordered SCMTD and its counsel to show cause why they should not
be sanctioned.  ECF No. 467.  They responded at ECF No. 471.  Having considered the parties'
positions, relevant legal authority, and the record in this case, the Court **GRANTS** Plaintiff's
motion in part and **SUSTAINS** the order to show cause in part, and orders Robert G. Howie,
Counsel for SCMTD, to pay monetary sanctions in amount of $46,363.29 for the following
reasons.[1]

## II.    BACKGROUND

November 29, 2023, was the first day of an anticipated two-week trial in the above-
captioned matter.  The scheduled trial was a retrial, following a trial in March 2023 in which the
jury was unable to reach a verdict.  Prior to trial, both Plaintiff and Defendant confirmed they were

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 8,
12, 16.

not planning to call any witnesses who did not testify in the previous trial. Pretrial Conf. Tr. at 12–13, ECF No. 461. On the first day of trial, following voir dire by the Court and Plaintiff's counsel, counsel for SCMTD, Robert G. Howie, began voir dire for the defense. Before asking the prospective jurors any questions, Howie informed the entire pool of prospective jurors that the Plaintiff (1) had multiple sclerosis (MS), and (2) was "confined to a wheelchair for reasons that have nothing to do with" the lawsuit. Trial Tr. at 12–13, ECF No. 460.

In its oral ruling granting Plaintiff's motion for a mistrial, the Court stated the following:

> The major issue in dispute in this case is causation, and Mr. Howie's statement in front of the prospective jurors that the plaintiff has MS goes directly to the issue of causation in a way that is prejudicial to Plaintiff's case. In the previous trial I do not recall there was any mention of MS, and both sides have told me that they were planning to call the same witnesses to testify at this trial as in the previous trial, and so I have no basis to think that evidence regarding MS would be admissible. I do think it is massively prejudicial the way that it was told to the prospective jurors, and, again, it goes directly to the core issue in this case, which is causation. Accordingly, the plaintiff's motion for a mistrial is granted.

*Id.* at 17.

In ECF No. 456, Plaintiff moved for sanctions for attorneys' fees and costs incurred because of the mistrial. In ECF No. 459, the Court observed that "[t]he responding parties are entitled to notice and an opportunity to respond to the amount of the requested sanctions." Accordingly, the Court ordered Plaintiff to file by December 15, 2023 one or more declarations specifying in detail the amount of the sanctions and what each cost item is for. Those declarations are filed at ECF Nos. 464 and 465. The Court set the responding parties' deadline to respond to the motion for sanctions as December 29, 2023, and set January 5, 2024 as the deadline for Plaintiff's optional reply. ECF No. 459. The Court subsequently ordered supplemental briefing concerning Plaintiff's request for sanctions. ECF No. 478. The Court set a deadline of May 6, 2024 for Plaintiff's supplemental brief, a deadline of May 13, 2024 for Defendants' optional response, and a deadline of May 20, 2024 for Plaintiff's optional reply. *Id.* Plaintiff filed a supplemental brief on May 6. ECF No. 480. Defendants did not file an optional response, and Plaintiff did not file an optional reply.

In addition, in ECF No. 467, the Court ordered SCMTD and its counsel to show cause why

United States District Court
Northern District of California

2

the Court should not sanction them for the Court-incurred expenses associated with the empanelment of the prospective jurors, as well for the costs incurred by Plaintiff and Plaintiff's counsel.  In other words, Plaintiff's fees and costs associated with the mistrial are the subject of both Plaintiff's motion and the Court's OSC, whereas the Court's costs related to the jury empanelment are embraced only by the OSC.

### III.   DISCUSSION

Plaintiff moves for sanctions under 28 U.S.C. § 1927, the Court's inherent power, Civil Local Rules 1-4 and 11-4(a)(4), and California Rule of Professional Conduct 8.4.  The Court's OSC invoked only section 1927.

### A.   Imposition of Sanctions Under 28 U.S.C. § 1927

#### 1.   Legal Standard

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "[A] finding that the attorney[] recklessly raised a *frivolous* argument which resulted in the multiplication of the proceedings' justifies § 1927 sanctions."  *Caputo v. Tungsten Heavy Powder, Inc.*, 96 F.4th 1111, 1155 (9th Cir. 2024) (quoting *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010)) (emphasis in original).  Sanctions under § 1927 may only be imposed upon individual attorneys, rather than against the client or law firm.  *Kaass Law Firm v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293–94 (9th Cir. 2015).

#### 2.   Discussion

In his opposition, Howie contends that sanctions should only be imposed upon a showing of bad faith or reckless conduct coupled with an improper purpose.  Opp'n at 7, ECF No. 469.  The Court recognizes that within the last decade, courts in this circuit have not been entirely consistent about whether a finding of bad faith is required to impose sanctions under 28 U.S.C. § 1927.  However, in *Caputo*, the Ninth Circuit's most recent published decision on the matter, the Court held "it is plainly clear that 'a finding that the attorneys recklessly raised a *frivolous*

argument which resulted in the multiplication of the proceedings' justifies § 1927 sanctions." 96 F.4th at 1155 (quoting *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010)) (emphasis in original); *see also In re Keegan Mgmt. Co., Secs. Litig.,* 78 F.3d 431, 436 (9th Cir. 1996) ("Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument.") (cleaned up).

The Court finds Howie's statements to the prospective jurors constituted the raising of a frivolous argument. Howie did not indicate that any witness would be called to testify that MS caused the injuries Plaintiff alleges, nor did he indicate that any such evidence would be admitted—or even admissible—at trial. *See* Trial Tr. at 16-17. Howie did state that Dr. Conte determined that Plaintiff has MS, and that her MS was not caused by the accident. But neither side was planning to call Dr. Conte as a witness at trial, which Howie acknowledged. *Id.* Further, as Plaintiff's counsel explained, whether the accident caused her MS is "not the issue. The comment is that she needs the wheelchair because she has MS. No one is going to say that." *Id.* at 16:10-12. No witness at the previous trial ever mentioned MS as a cause or potential cause of Plaintiff's alleged injuries, and Howie had confirmed he was not planning to call any new witnesses. Pretrial Conf. Tr. at 13.

In the course of voir dire, attorneys sometimes make factual assertions to prospective jurors about the case, usually to help the prospective jurors understand why the attorney is asking about the subject. For example, if a plaintiff is disabled, counsel might mention that fact and then ask the prospective jurors whether they or their close friends or family members have a similar disability or what their experiences may have been in dealing with people who have a similar disability. When an attorney does this, he must have a reasonable belief that evidence will be admitted at trial to support his factual assertions to the prospective jurors about the case. This is basic common sense. Here, Howie had no basis to think there would be any evidence admitted at trial that Plaintiff has MS and that it is the reason she is in a wheelchair. And he knew that. When Plaintiff moved for a mistrial, Howie identified the witness who "would testify that she has MS" – Dr. Conte – and in the same breath said: "The fact is that Dr. Conte was not going to be called" to testify at trial. Trial Tr. at 16:5-7. Howie's statements to the prospective jurors were therefore frivolous.

United States District Court
Northern District of California

Howie contends he was merely looking to elicit information about possible bias regarding the cause of disability. Opp'n at 1–2, 8. Howie argues that by informing the jury that Plaintiff had MS and that she was "confined to a wheelchair" for reasons that had nothing to do with the incident at issue, he was conducting an inquiry into whether jurors would "presum[e] that a wheelchair-bound personal injury plaintiff" who was involved in an accident "is 'permanently disabled' and 'unable to walk' as a result of the accident versus an illness or otherwise." *Id.* at 5. But while Howie characterizes his statement to the prospective jurors as a question (*id.* at 1, 3, 5–6, 8–9), Howie's statements constituted an argument about causation, rather than an inquiry into potential jurors' preconceptions about what causes disability:

> THE COURT: Let's have voir dire from the defense, please.
> MR. HOWIE: Thank you, Your Honor.
> Thank you, everyone, for being here. We appreciate it.
> I know what it's like to be in the jury box a little bit, and it's very -- sometimes people are recalcitrant about speaking up about bias, if that's exactly what was just the topic.
> The plaintiff suffers from MS, multiple sclerosis. She's confined to a wheelchair for reasons that have nothing to do with this accident.

Trial Tr. at 12–13.

Howie's reliance on *Darbin v. Nourse*, 664 F.2d 1109 (9th Cir. 1981), in furtherance of this argument, is inapposite. *Darbin* concerned a civil rights action brought by a former inmate against the county sheriff. There, the Ninth Circuit held that the trial court's refusal to inquire on voir dire into whether prospective jurors were more likely to believe the testimony of a police officer simply because of his position constituted an abuse of discretion because that inquiry was necessary to probe for bias. *Darbin*, 664 F.2d at 1114–15. Here, Howie made no inquiry, nor did his statements indicate an attempt to determine whether prospective jurors held any preconceptions about what causes disability. Rather, he simply announced to the jury pool that Plaintiff had MS, and implied that Plaintiff was in a wheelchair exclusively due to MS.

Howie further contends these statements were justified because Plaintiff's counsel had already introduced a theory of causation to the jury, referring to the following excerpt from Plaintiff's voir dire.

MS. AIKENS:   . . . To the extent that my client has sustained

1

2

3

4

> permanent disability as a result of this incident, if I came up here and I asked you -- and so not walking anymore, not able to travel, things like that.
> If I came up here and I asked you for –
> So juror number 3, if I asked you for $50 million, would you say there's absolutely no way I would do that. I don't care what you show me.

5   Trial Tr. at 7.  However, Plaintiff's counsel framed such a theory as a hypothetical finding the jury

6   might make, rather than an assumption underlying the remaining facts of the case.  More

7   importantly, there was going to be some evidence at trial to support the claim that the Plaintiff

8   sustained a permanent disability as a result of this incident.  That's why we are having a trial.

9   Thus, while Plaintiff's counsel asked a hypothetical that asked the prospective jurors to assume

10  contested facts, she did not taint the jury pool by introducing facts that would never come into

11  evidence.

12          The Court is likewise unpersuaded by Howie's explanation that a curative instruction

13  would have sufficed.  As Howie points out in his opposition, this is a personal injury case.  The

14  only claim remaining at issue for trial is negligence, for which causation of Plaintiff's injuries is a

15  central issue.  Further, MS is not an obscure disease that few people have heard of.  Right off the

16  bat Howie tainted the entire venire by implying that a highly recognizable disease was the true

17  cause of Plaintiff's injuries, when he knew that no evidence to that effect was likely to be admitted

18  at trial.

19          Howie's conduct was thus extremely prejudicial, and the Court finds this conduct was

20  reckless, in addition to frivolous.  Howie's actions clearly multiplied the proceedings.  As a direct

21  result of the statements Howie made during voir dire, the Court will have to hold a third trial in

22  this case, resulting in yet another jury selection process and some duplication of trial preparation

23  efforts.

24          Accordingly, pursuant to 28 U.S.C. § 1927, the Court **SANCTIONS** Howie and concludes

25  he must personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred

26  because of his conduct at trial.

27

28

United States District Court
Northern District of California

### 3.    Amount of Sanction

#### a.    Court Costs

As noted above, one category of costs that was the subject of the OSC was the Court's costs incurred in connection with the empanelment of the venire.  ECF No. 467.

Howie argues that sanctions for court costs are not available under 28 U.S.C. § 1927.  ECF No. 471 at 9.  It turns out that this argument is more complicated than it might seem.  In June 1980, the Supreme Court held that "costs" under 28 U.S.C. § 1927 refer only to taxable costs enumerated in 28 U.S.C. § 1920.  *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 757-63 (1980).  At the time, 28 U.S.C § 1927 read: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."  447 U.S. at 756 n.3.  However, three months after the Supreme Court's decision in *Roadway Express*, Congress amended 28 U.S.C. § 1927 to include excess "expenses" and "attorneys' fees" reasonably incurred because of such conduct.  *See* Act of September 12, 1980, Pub. L. No. 96–349, 94 Stat. 1154.  This is the amendment:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case ~~as to increase costs~~ unreasonably and vexatiously may be required by the court to satisfy personally ~~such excess costs~~ the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Accordingly, an award of sanctions under § 1927 is no longer limited to taxable costs but may also include reasonable expenses and attorneys' fees.  *See, e.g.*, *Morrison v. Walker*, 939 F.3d 633, 635 (5th Cir. 2019) (explaining that the 1980 amendment to 28 U.S.C. § 1927 "broaden[ed] lawyers' personal financial exposure to include 'expenses and attorneys' fees.'").

In reviewing the case law interpreting section 1927, however, it is not clear that the 1980 statutory amendment has gotten the attention it deserves.  Sure, the word "costs" in section 1927 still refers to the items enumerated in section 1920 – that's the holding of *Roadway Express*.  But the big change is that something doesn't need to be a "cost" anymore to be recoverable under section 1927 – it could also be an "expense" or "attorneys' fees."  Further, given the Supreme

7

Court's holding in *Roadway Express* that "costs" in section 1927 means the same thing as the costs enumerated in section 1920, when Congress then promptly amended section 1927 to also allow for the recovery of "expenses," presumably that meant something else.  Nonetheless, the appellate case law disallowing the award of jury fees under section 1927 consists essentially of citations to *Roadway Express* and the holding that jury fees are not "costs" within the meaning of section 1920.  *See Boettcher v. Hartford Ins. Group*, 927 F.2d 23, 25 (1st Cir. 1991); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 560 (3rd Cir. 1985); *United States v. Austin*, 749 F.2d 1407, 1409 (9th Cir. 1984).  One district court outside of the First, Third and Ninth Circuits declined to follow these circuit precedents and awarded jury fees under section 1927 because these decisions do not "account for the fact that Congress expanded the breadth of § 1927 after the *Roadway Express* decision."  *See Dowe v. National R.R. Passenger Corp.*, 2004 WL 1393603, *4 (N.D. Ill. June 22, 2004) (awarding jury fees under section 1927 and declining to follow these circuit precedents).

This Court is in the Ninth Circuit and is therefore bound by *Austin*.  But even were that not the case, the Court would still conclude that, notwithstanding the 1980 amendment, jury fees remain unavailable under section 1927.  As a result of the 1980 amendment, section 1927 now contains a list of sanctions that may be awarded for vexatious conduct:  "the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  "[T]he canon of *noscitur a sociis* teaches that a word is 'given more precise content by the neighboring words with which it is associated.'"  *Fischer v. United States*, 603 U.S. __, 144 S. Ct. 2176, 2183 (2024) (quoting *United States v. Williams*, 553 U.S. 285, 294 (2008)).  "[A] word is known by the company it keeps (the doctrine of *noscitur a sociis*).  This rule we rely upon to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving 'unintended breadth to the Acts of Congress.'"  *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)).

We know from *Roadway Express* that "costs" in section 1927 mean costs incurred by one's opponent within the meaning of section 1920.  We know from common sense that "attorneys' fees" in section 1927 mean attorneys' fees incurred by one's opponent.  If "expenses"

in section 1927 include jury fees incurred by the court, then "expenses" is not similar to the words around it because these fees are not incurred by one's opponent.  The better interpretation, in keeping with *noscitur a sociis*, is that costs, expenses and attorneys' fees all refer to things incurred by one's opponent.  *Cf. Eash*, 757 F.2d at 560 ("Neither § 1920 nor § 1927 contains reference to the costs of impaneling a jury, costs which customarily are borne by the government.  Only the opposing litigants' costs and expenses incurred by virtue of an attorney's misconduct are within the ambit of the statutes.").  Accordingly, the Court does not impose monetary sanctions under section 1927 for any costs incurred by the court.

### b.    Plaintiff's Fees and Expenses

Plaintiff seeks a total in fees and costs of $75,594.67 (ECF No. 464, 465), consisting of $59,797.31 charged by Carla D. Aikens, PLC (Decl. of Carla Aikens ¶¶ 12–13 & Ex. A to Aikens Decl. at 4), and $15,797.36 charged by Peiffer Wolf Carr Kane Conway & Wise LLP ("Peiffer Wolf").  Decl. of Catherine Cabalo ¶ 12 & Ex. A to Cabalo Decl. at 3, Ex. B to Cabalo Decl. at 2, 4.

### i.    Attorney's Fees

### aa.    Reasonable Hourly Rates

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987).  "Generally, the relevant community is the forum in which the district court sits."  *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997).  "The burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum*, 465 U.S. at 896 n.11.

Plaintiff asks that her attorneys, including Plaintiff's lead attorney, Carla Aikens, be compensated at their current hourly rates.  Howie contends that the hourly rates claimed by Plaintiff's counsel "are extraordinarily excessive for a simple personal injury case with a single

theory of liability." Opp'n at 9.

Based on the Court's own experience and knowledge, the hourly rate requested for Aikens is within the range of reasonable hourly rates for attorneys of comparable skill, experience, and reputation doing similar work in the San Francisco Bay Area. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."). Aikens asks that she be compensated at her current hourly rate of $750 per hour. Aikens Decl. ¶ 7. Aikens submitted a declaration in support of this rate, as well as a copy of the State Bar of Michigan's 2023 Economics of Law Survey Results, which includes detailed hourly rate information by practice area. *See* Supp. Decl. of Carla Aikens at 1–2 & Ex. 1 to Aikens Supp. Decl. at 5–17, ECF No. 473. She received a J.D. degree from Georgetown University Law Center and served as a federal judicial law clerk in the United States District Court for the Eastern District of Michigan. Aikens Decl. ¶ 2. She has been practicing law since 2005. *Id.* ¶ 1. Following her time at two large law firms, Aikens started her own firm in 2010. *Id.* ¶ 4. The Court finds Aikens' requested hourly rate is in line with personal injury lawyers of her experience and qualifications in the Detroit metro area, and that hourly rates in this district are at least as high as those in Detroit.

After reviewing the supporting declaration and considering the experience of counsel, her professional qualifications, and the nature of their responsibilities in this matter, the Court finds Catherine Cabalo's requested hourly rate of $920 is excessive given the limited scope and relative simplicity of the case and Cabalo's responsibilities in the matter. Cabalo, Plaintiff's local counsel, asserts that her reasonable hourly rate is $920. Cabalo submitted a declaration in support of this rate. Cabalo Decl. ¶ 6. Cabalo graduated from the University of Washington Law School in 2001 and served as a judicial law clerk in the Hawaii Supreme Court. *Id.* ¶ 3. Cabalo founded Peiffer Wolf's Disability Rights Practice Group in 2016 and has served as the firm's Practice Chair since then. *Id.* ¶ 4. In support of the hourly rate she seeks, Cabalo explains that this district previously approved her $785 hourly rate in 2020 in *Nevarez v. Forty Niners Football Co., et al.*, No. 16-CV-07013-LHK, and contends that an annual 5.5% increase from that rate is reasonable. Supp. Cabalo Decl. ¶¶ 5–6, ECF No. 472-1. However, in *Nevarez*, Cabalo was class counsel for a class

action involving multiple claims.  The other examples Plaintiff provides of similar or higher hourly rates approved by this district were likewise for more complex matters than the instant personal injury case.  *See Roe v. SFBSC Management, LLC, et al.*, No. 17-cv-06971-LB, ECF No. 129 (approving attorney's fees in class action settlement); *Roe v. SFBSC Management LLC, et al.*, N.D. Cal. Case No.14-cv-03616-LB, ECF No. 270-1 (granting motion for attorney's fees in putative class action); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236-WHO, 2020 WL 7626410, at *3 (finding similar hourly rates "reasonable given the scope and complexity of this case").  The Court is likewise unpersuaded that Cabalo's work with ADA transportation expert Douglas Cross justifies the fees Plaintiff demands for local counsel in an individual personal injury action with one remaining negligence claim.  Accordingly, the Court approves Cabalo's hourly rate at $785 for this case.

Associate attorney Khushpreet Mehton recorded 2.6 hours at a rate of $600 per hour conducting research for the motion for sanctions.  Cabalo Decl. ¶¶ 8, 11.  Based on the Court's experience and knowledge, the Court approves an hourly rate of $550 for Mehton.

Howie did not contest the $150 hourly rate for Aikens' legal assistant, Katarzyna Pazik.  *See* Opp'n at 10–11; Aikens Decl. ¶ 11.  The Court finds this hourly rate is reasonable and comparable to that of experienced legal assistants in this district and approves an hourly rate of $150 for substantive legal work performed by Pazik.

### bb.    Scope of Attorney's Fees

Plaintiff asserts that one attorney and one legal assistant at Carla D. Aikens, PLC, devoted 62.3 hours to preparing for and attending the second trial in this matter and 15.5 hours to meeting with Plaintiff after the mistrial and preparing Plaintiff's motion for sanctions and attached declarations.  Ex. A to Aikens Decl. at 2–3, ECF No. 464-1; Supp. Aikens Decl. at 20, Ex. 472-2 (amended hours including time preparing reply).  Plaintiff also seeks $15,452.00 in fees incurred by local counsel Peiffer Wolf.  Partner Catherine Cabalo recorded 6.1 hours preparing for the November 2023 trial in the leadup to the trial date and recorded 9 hours from the date of the trial preparing for voir dire, attending the first day of the trial, and preparing the declaration and exhibits in support of Plaintiff's motion for sanctions.  Ex. A to Cabalo Decl. at 2–3, ECF No.

United States District Court<br>Northern District of California

11

465-1.[2]  Associate attorney Khushpreet Mehton recorded 2.6 hours conducting research for the motion for sanctions.  Cabalo Decl. ¶ 8.

Howie contends that trial preparation costs would have been incurred regardless of the mistrial, and that fees that would not have been incurred but for the mistrial are thus confined to the date of the mistrial.  Opp'n at 10–11.  It is true that, had a mistrial not been declared, Plaintiff would have born trial costs anyway.  But a mistrial means that Plaintiff will have to bear these costs twice—another trial will need to be scheduled, which will result in some duplication of trial preparation efforts.  Still, the Court agrees with Howie that some of Plaintiff's preparation for trial was not wasted, as it may still be useful for the continued trial date.  Several of the timekeeping entries for which Plaintiff seeks reimbursement will likely reduce the workload for the continued trial, rather than needing to be reduplicated in full (e.g., preparation of pretrial filings and exhibits, reviewing pretrial motions, and reviewing witness list and verdict form).  Accordingly, the Court applies a fifty percent reduction to the total, otherwise compensable, time billed before November 29, 2023, the date of mistrial.

In addition to the issues raised by Howie, the Court finds that certain billing entries submitted by Plaintiff seek to recover for administrative tasks or time.  The Court finds that Aikens has sufficiently established Pazik's qualifications to perform substantive legal work.  However, the Court finds that several of Pazik's time entries for which Plaintiff seeks attorney's fees are administrative rather than legal in nature.  *See Mente Grp. LLC v. Arnell Enterprises, Inc.*, No. 20-cv-07459-VKD, 2022 WL 4391423, at *8 (N.D. Cal. Sept. 22, 2022) (party seeking to recover attorney's fees for work performed by legal assistants "must establish . . . that the legal assistant performed substantive legal work under the direction and supervision of an attorney") (internal quotations and citations omitted).  The substantive tasks Pazik performed, such as preparing subpoenas and preparing a motion for witnesses to appear remotely, are specific to the circumstances of the trial that was scheduled to begin November 29, 2023, and will need to be

---

[2] Cabalo's declaration attests that she recorded 14.4 hours in total, while the attached time log lists 15.1 hours of work performed, including an additional 0.7 hours for "Continued Preparation of Declaration ISO Motion for Sanctions."  Cabalo Decl. ¶ 7 & Ex. A to Cabalo Decl. at 3.  The Court calculates this time based on the timekeeping entries submitted.

United States District Court
Northern District of California

reduplicated at least in part for the continued trial.  Accordingly, the Court will count 2.7 hours logged by Ms. Pazik, representing timekeeping entries for substantive legal work, toward attorney's fees for trial preparation.

The Court also declines to include in Plaintiff's reimbursable attorney's fees time spent traveling and not otherwise preparing for trial.  Accordingly, the Court subtracts the time billed by Cabalo to travel to attend the trial and pre-trial conference, during which she does not indicate that she was preparing for trial.  The Court also reduces one of Aikens' time entries where it does not seem realistic that she was engaged in trial preparation during the entire time of her travel.

### cc.    Conclusion – Attorney's Fees

Accordingly, the Court grants Plaintiff's request for reimbursement of attorney's fees in the amount of $40,664.25, including $24,210.00 for the day of the mistrial and the subsequent motions for fees and $16,454.25 toward trial preparation, as detailed below.

| Date | Time-keeper | Description | Hourly Rate Claimed | Time billed | Fees Requested | Adjusted Hourly Rate | Reduc-tions | Time minus reductions | Adjusted Fees |
|---|---|---|---|---|---|---|---|---|---|
| 11/29/23 | C. Aikens | Preparation for and attendance at trial. | $750 | 6.5 | $4,875 | $750 | – | 6.5 | $4,875 |
| 11/29/23 | C. Aikens | Internal discussion re next steps and filing motions | $750 | 1.2 | $900 | $750 | – | 1.2 | $900 |
| 11/30/23 | C. Aikens | Meeting with client re mistrial | $750 | 0.3 | $225 | $750 | – | 0.3 | $225 |
| 11/30/23 | C. Aikens | Research and draft motion for fees; internal correspondence with counsel re same. | $750 | 3.8 | $2,850 | $750 | – | 3.8 | $2,850 |
| 12/11/23 | C. Aikens | Preparation of time data for use in declaration | $750 | 0.8 | $600 | $750 | – | 0.8 | $600 |
| 12/15/23 | C. Aikens | Preparation of declaration and transferring time data | $750 | 4.0 | $3,000 | $750 | – | 4.0 | $3,000 |
| 1/2/23 | C. Aikens | Research and draft reply; correspond with CC re same | $750 | 3.1 | $2,325.00 | $750 | – | 3.1 | $2,325.00 |
| 1/5/23 | C. Aikens | Draft and prepare reply | $750 | 2.3 | $1,687.50 | $750 | – | 2.3 | $1,687.50 |
| 11/29/23 | C. Cabalo | Continued review & analysis of Juror Questionnaires to prepare for voir dire. | $920 | 0.5 | $460 | $785 | – | 0.5 | $392.50 |
| 11/29/23 | C. Cabalo | Travel to/from (1.0) & attend (4.5) Trial Day 1. | $920 | 5.5 | $5,060 | $785 | 1 hour (travel) | 4.5 | $3,532.50 |

United States District Court
Northern District of California

| Date | Timekeeper | Description | Hourly Rate Claimed | Time Billed | Fees Requested | Adjusted Hourly Rate | Reductions | Time Minus Reductions | Adjusted Fees |
|---|---|---|---|---|---|---|---|---|---|
| 11/29/23 | C. Cabalo | Multiple messages w/ D. Cross RE: mistrial & next steps. | $920 | 0.4 | $368 | $785 | – | 0.4 | $314 |
| 11/29/23 | C. Cabalo | Review & analysis of ECF 453 (Minute Entry RE: Juror Selection & Mistrial) (0.1) & ECF 454 Trial Log Day 1 (0.1). | $920 | 0.2 | $184 | $785 | – | 0.2 | $157 |
| 12/4/23 | C. Cabalo | Strategize Motion for Sanctions w/ C. Aikens. | $920 | 0.2 | $184 | $785 | – | 0.2 | $157 |
| 12/4/23 | C. Cabalo | Prepare Declaration & compile exhibits ISO Motion for Sanctions | $920 | 1.5 | $1,380 | $785 | – | 1.5 | $1,177.50 |
| 12/12/23 | C. Cabalo | Continued preparation of Declaration ISO Motion for Sanctions. | $920 | 0.7 | $644 | $785 | – | 0.7 | $549.50 |
| 11/29/23 | K. Mehton | Review local, federal, and professional rules of conduct sections relevant to motions for sanctions. | $600 | 1.2 | $720 | $550 | – | 1.2 | $660 |
| 11/30/23 | K. Mehton | Westlaw research re case law supporting motion for sanctions based on mistrial. Email findings to C.Cabalo and C.Aikens. | $600 | 1.4 | $840 | $550 | – | 1.4 | $770 |
| **Trial and Motion Totals** | | | | | | | | | |
| Trial and motion totals: Carla Aikens | | | $750 | 22 | $16,500 | $750 | | 22 | $16,500 |
| Trial and motion totals: Cat Cabalo | | | $920 | 9 | $8,280 | $785 | 1 hour | 8 | $6,280 |
| Trial and motion totals: Khushpreet Mehton | | | $600 | 2.6 | $1,560 | $550 | | 2.6 | $1,430 |
| | | | | | **Total Fees Requested** | | | | **Total Adjusted Fees** |
| | | | | | $26,340 | | | | **$24,210** |

| Date | Timekeeper | Description | Hourly Rate Claimed | Time Billed | Fees Requested | Adjusted Hourly Rate | Reductions | Time Minus Reductions | Adjusted Fees |
|---|---|---|---|---|---|---|---|---|---|
| 10/17/23 | C. Aikens | Internal corr. re preparing for trial and coordinating remote witnesses. | 750 | 0.2 | 150 | 750 | – | 0.2 | 150 |
| 10/27/23 | C. Aikens | Coordination and review of exhibits for printing; internal corr re same. | 750 | 0.8 | 600 | 750 | – | 0.8 | 600 |
| 11/1/23 | C. Aikens | Preparation and review pretrial filings, motion, and internal correspondence re same. | 750 | 2.8 | 2100 | 750 | – | 2.8 | 2100 |
| 11/2/23 | C. Aikens | Review of filing, correspondence re exhibits and trial preparation. Review of exhibit pages | 750 | 2.3 | 1725 | 750 | – | 2.3 | 1725 |

14

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 11/6/23 | C. Aikens | Exhibit preparation and corr with printer | 750 | 1.5 | 1125 | 750 | — | 1.5 | 1125 |
| 11/7/23 | C. Aikens | Correspondence re exhibit preparation and printing | 750 | 1.2 | 900 | 750 | — | 1.2 | 900 |
| 11/7/23 | C. Aikens | Review of Defendant's proposed jury instruction modifications; internal corr re same | 750 | 0.3 | 225 | 750 | — | 0.3 | 225 |
| 11/8/23 | C. Aikens | Trial prep re witnesses and exhibits; internal corr re same | 750 | 1.7 | 1275 | 750 | — | 1.7 | 1275 |
| 11/9/23 | C. Aikens | Corr re exhibit printing and trial witnesses | 750 | 0.8 | 600 | 750 | — | 0.8 | 600 |
| 11/10/23 | C. Aikens | Corr re witnesses | 750 | 0.3 | 225 | 750 | — | 0.3 | 225 |
| 11/14/23 | C. Aikens | Review court order re: real-time transcripts; internal corr re same | 750 | 0.2 | 150 | 750 | — | 0.2 | 150 |
| 11/15/23 | C. Aikens | Review of defense witness list, verdict form, and draft objections to same; review of objections to witnesses; internal corr. re same | 750 | 0.8 | 600 | 750 | — | 0.8 | 600 |
| 11/16/23 | C. Aikens | trial preparation and internal corr re witnesses | 750 | 0.9 | 675 | 750 | — | 0.9 | 675 |
| 11/20/23 | C. Aikens | Review of pretrial motions and corr with staff re same | 750 | 0.7 | 525 | 750 | — | 0.7 | 525 |
| 11/20/23 | C. Aikens | Review Defendant's administrative motions. | 750 | 0.2 | 150 | 750 | — | 0.2 | 150 |
| 11/21/23 | C. Aikens | Review order granting admin. motion re electronic equipment | 750 | 0.1 | 75 | 750 | — | 0.1 | 75 |
| 11/22/23 | C. Aikens | Review of pretrial filings and motions; internal corr. re same | 750 | 0.8 | 600 | 750 | — | 0.8 | 600 |
| 11/22/23 | C. Aikens | Preliminary review of jury materials; internal corr re same | 750 | 0.3 | 225 | 750 | — | 0.3 | 225 |
| 11/23/23 | C. Aikens | Corr re trial prep | 750 | 0.3 | 225 | 750 | — | 0.3 | 225 |
| 11/23/23 | C. Aikens | Review draft of Plaintiff's admin motion for filing; internal corr re same | 750 | 0.2 | 150 | 750 | — | 0.2 | 150 |
| 11/26/23 | C. Aikens | Corr w counsel and expert re trial | 750 | 0.2 | 150 | 750 | — | 0.2 | 150 |
| 11/27/23 | C. Aikens | Travel to California (trial preparation during flight) | 750 | 5.5 | 4125 | 750 | 1.5 (travel) | 4 | 3000 |
| 11/27/23 | C. Aikens | Trial preparation; internal corr. re same | 750 | 6 | 4500 | 750 | — | 6 | 4500 |
| 11/27/23 | C. Aikens | Review of additional survey; internal corr re same | 750 | 0.2 | 150 | 750 | — | 0.2 | 150 |

United States District Court
Northern District of California

| Date | Name | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11/28/23 | C. Aikens | Trial preparation; including meeting with expert; internal corr. re same | 750 | 11.2 | 8400 | 750 | — | 11.2 | 8400 |
| 11/1/23 | C. Cabalo | Review & analysis of ECF 432 (SCMTD's Witness & Exhibit Lists) to determine necessary further action. | 920 | 0.2 | 184 | 785 | — | 0.2 | 157 |
| 11/2/23 | C. Cabalo | Review & analysis of ECF 436 (Order Granting Motion RE: Exhibits) to determine necessary further action. | 920 | 0.1 | 92 | 785 | — | 0.1 | 78.5 |
| 11/7/23 | C. Cabalo | Review & analysis of ECF 437 (SCMTD Proposed Verdict Form) & ECF 438 (SCMTD Jury Instructions) to determine possible responses to same & necessary further action. | 920 | 0.2 | 184 | 785 | — | 0.2 | 157 |
| 11/13/23 | C. Cabalo | Review & analysis of ECF 439 (Clerk's Notice RE: Trial Deadline for Daily Transcript and/or Realtime Reporting) to determine necessary further action. | 920 | 0.1 | 92 | 785 | — | 0.1 | 78.5 |
| 11/15/23 | C. Cabalo | Review & analysis of ECF 440 (SCMTD Objections to P's Exhibit List) & ECF 441 (SCMTD Objections to P's Witness List) to determine necessary further action. | 920 | 0.1 | 92 | 785 | — | 0.1 | 78.5 |
| 11/20/23 | C. Cabalo | Review & analysis of ECF 443 (SCMTD Request RE: Zoom testimony) & ECF 444 (SCMTD Request RE: electronics/equipment) to determine necessary further action. | 920 | 0.2 | 184 | 785 | — | 0.2 | 157 |
| 11/21/23 | C. Cabalo | Review & analysis of ECF 445 (Order RE: Trial Technology) & ECF 446 (Order Granting ECF 444) to determine necessary further action. | 920 | 0.2 | 184 | 785 | — | 0.2 | 157 |
| 11/22/23 | C. Cabalo | Review & analysis of email & multiple attachments from Jury Clerk Eric Diaz RE: Judge's List and juror info to determine necessary further action & prepare for voir dire & jury selection. | 920 | 0.6 | 552 | 785 | — | 0.6 | 471 |

| Date | Name | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 11/27/23 | C. Cabalo | Review & analysis of email & multiple attachments from E. Diaz RE: juror #5 & updated juror documents to determine necessary further action and to prepare for voir dire & jury selection. | 920 | 0.4 | 368 | 785 | — | 0.4 | 314 |
| 11/27/23 | C. Cabalo | Travel to/from (1.0) & attend Final Pretrial Conference (0.5) and A/V courtroom staging (0.5). | 920 | 2 | 1840 | 785 | 1 (travel) | 1 | 785 |
| 11/27/23 | C. Cabalo | Receipt, review, & analysis of ECF 452 (Minute Entry RE: Final Pretrial Conference) to confirm juror excusals. | 920 | 0.1 | 92 | 785 | — | 0.1 | 78.5 |
| 11/27/23 | C. Cabalo | Multiple messages w/ ADA Transportation expert Doug Cross RE: trial prep. | 920 | 0.3 | 276 | 785 | — | 0.3 | 235.5 |
| 11/28/23 | C. Cabalo | Message (0.1) & email (0.1) to D. Cross RE: expert trial prep; Zoom trial prep w/ D. Cross & C. Aikens (1.0); review & analysis of multiple emails from D. Cross RE: trial prep (0.4). | 920 | 1.6 | 1472 | 785 | — | 1.6 | 1256 |
| 8/21/23 | K. Pazik | Correspondence with counsel regarding trial books | 100 | 0.1 | 10 | n/a | 0.1 (admin) | 0 | 0 |
| 10/31/23 | K. Pazik | Contact court regarding extending time to print exhibits. | 125 | 0.1 | 12.5 | n/a | 01 (admin) | 0 | 0 |
| 11/1/23 | K. Pazik | Draft and revise witness and exhibit list | 150 | 1 | 150 | n/a | 1 (admin) | 0 | 0 |
| 11/1/23 | K. Pazik | Set up and file motion to extend | 150 | 0.6 | 90 | 150 | — | 0.6 | 90 |
| 11/2/23 | K. Pazik | Prepare subpoenas | 150 | 1 | 150 | 150 | — | 1 | 150 |
| 11/2/23 | K. Pazik | Contact court regarding exhibits | 150 | 0.1 | 15 | n/a | 0.1 (admin) | 0 | 0 |
| 11/3/23 | K. Pazik | Coordinating with process server for subpoenas | 150 | 1 | 150 | n/a | 1 (admin) | 0 | 0 |
| 11/7/23 | K. Pazik | Preparing trial books for printing. Calls with printer. | 150 | 4 | 600 | n/a | 4 (admin) | 0 | 0 |
| 11/20/23 | K. Pazik | Scheduling with witnesses for Plaintiff | 150 | 1 | 150 | n/a | 1 (admin) | 0 | 0 |
| 11/21/23 | K. Pazik | Prepare and file administrative filings for trial | 150 | 1.3 | 195 | n/a | 1.3 (admin) | 0 | 0 |
| 11/21/23 | K. Pazik | Scheduling with witnesses for Plaintiff | 150 | 1 | 150 | n/a | 1 (admin) | 0 | 0 |
| 11/22/23 | K. Pazik | Scheduling with | 150 | 2 | 300 | n/a | 2 | 0 | 0 |

| Date | Attorney | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | witnesses for Plaintiff | | | | | (admin) | | |
| 11/27/23 | K. Pazik | Prepare motion for witnesses to appear remotely; file after editing on 11/26. | 150 | 1.1 | 165 | 150 | — | 1.1 | 165 |
| 11/27/23 | K. Pazik | Email with expert. | 150 | 0.1 | 15 | n/a | 0.1 (admin) | 0 | 0 |
| 11/27/23 | K. Pazik | Scheduling with witnesses for Plaintiff | 150 | 2 | 300 | n/a | 2 (admin) | 0 | 0 |
| **Trial Preparation Totals** | | | | | | | | | |
| Trial Preparation: Carla Aikens | | | 750 | 39.5 | $29,625 | 750 | 1.5 (travel) | 38 | $28,500 |
| Trial Preparation: Cat Cabalo | | | 920 | 6.1 | $5,612 | 785 | 1 (travel) | 5.1 | $4,003.50 |
| Trial Preparation: Katarzyna Pazik | | | variable | 16.4 | $2,452.50 | 150 | 13.7 (admin) | 2.7 | $405 |
| Trial Preparation: Adjusted fees before applying 50% reduction | | | | | $37,689.50 | | | | $32,908.50 |
| Trial preparation: Total adjusted fees after 50% reduction applied | | | | | | | | | **$16,454.25** |

### ii.      Expenses

Aikens also seeks $15,344.81 in costs for out-of-pocket expenses incurred to prepare for and attend the second trial. Ex. A to Aikens Decl. at 4. These costs include fees directly related to the trial, as well as food and travel costs Aikens Decl. ¶ 13 & Ex. A.

As discussed above, in *Roadway Express*, the Supreme Court held that "costs" under section 1927 referred only to taxable costs enumerated in section 1920. However, three months after the Supreme Court's decision in *Roadway Express*, Congress amended section 1927 to include excess "expenses" and "attorney's fees" reasonably incurred because of such conduct. Accordingly, an award of sanctions under section 1927 is no longer limited to taxable costs but may also include reasonable expenses. *See Morrison*, 939 F.3d at 635.

### aa.      Service, printing and delivery fees, and expert fees

Aikens seeks $10,418.93 in additional expenses directly related to the trial, broken down as follows: (1) service of process for subpoena on Christian Nieto $75.00; (2) service of process for subpoena on Shonoa Ruddick $75.00; (3) printing and delivery fees for Trial 2 $8,326.11; and (4) expert fees for Douglas Cross from 10/17/23–11/29/23 $1,942.82. Ex. A to Aikens Decl. at 3–4; Ex. 2 to Supp. Aikens Decl. at 36–37, ECF No. 473. The Court finds these expenses are reasonable and that the service of process fees will need to be reduplicated for the continued trial.

18

United States District Court
Northern District of California

1   The Court finds that the printing and delivery fees for the trial were not necessarily wasted;

2   Plaintiff can reuse the exhibits and print any new exhibits separately for the continued trial.  As to

3   expert witness fees, the Court expects that although some of the work performed by Plaintiff's

4   expert witness will need to be performed again at the continued trial, at least some of the work he

5   performed in the weeks leading up to trial was not wasted.  Accordingly, the Court grants

6   Plaintiff's request for reimbursement for service of process expenses in full and grants her request

7   for reimbursement of fifty percent of expert fees Plaintiff seeks.  The Court denies Plaintiff's

8   motion for reimbursement for Plaintiff's printing and delivery expenses.

9                                      **bb.      Meals**

10          Aikens seeks $426.20 in meal expenses, as follows: (1) airport meals $28.52; (2) lunch

11   prior to expert meeting $21.19; (3) food and snacks for week of trial $144.99; (4) dinner at hotel

12   $104.61; (5) meal at courthouse $8.95, and (6) lunch at hotel $117.94.  Ex. A to Aikens Decl. at 4;

13   Ex. 2 to Supp. Aikens Decl. at 22–23; 32–33.  Plaintiff also seeks reimbursement of $345.36 in

14   out-of-pocket meal expenses incurred by local counsel Peiffer Wolf to attend the November 2023

15   trial, including $33.19 in lunch from the Court cafeteria for herself and Aikens, and $312.17 for

16   dinner for herself and Aikens on November 29, 2023.  Cabalo Decl. ¶ 12; Ex. B to Cabalo Decl. at

17   2, 4, ECF No. 465-2.  The Court finds Aikens' first, second, third, and fifth meal expenses

18   reasonable, as well as Cabalo's expense for lunch from the Court cafeteria.  However, the Court

19   finds Aikens' fourth and sixth meal expenses and Cabalo's dinner expenses on November 29 to be

20   unreasonably high.  Accordingly, the Court applies a reduction to these claimed expenses, capping

21   reimbursement for each of these meals at $50 per person.

22                              **cc.      Travel, Lodging and Parking**

23          Finally, Aikens seeks $4,499.68 in travel expenses, as follows: (1) airfare to SFO

24   $1,062.45; (2) fare to hotel from airport $42.94; (3) accessible train ticket for Plaintiff for trial

25   $527.40; (4) taxi to court $12.00; (5) fare from court $11.98; (6) fare to airport from hotel $52.72;

26   (7) airfare from SFO to DTW on November 30 $1,503.30; (8) hotel from 11/27 to 11/30

27   $1,222.89, and (9) airport parking $64.00.  Ex. A to Aikens Decl. at 4; Ex. 2 to Supp. Aikens Decl.

28   at 23–32, 34–35.

United States District Court
Northern District of California

1  Aikens' travel and parking expenses to attend the trial will need to be incurred again for

2  the continued trial.  The Court grants Plaintiff's request for reimbursement of Plaintiff's third

3  expense request, for accessible train tickets for Plaintiff to attend the trial.  Although Plaintiff did

4  not actually appear at trial on the first day, Plaintiff's tickets were for December 3 and December

5  5, indicating that Plaintiff would appear only on the fourth day of trial.  Because these travel

6  arrangements reflect a decision by Plaintiff and her counsel, rather than simply a failure to attend

7  trial, the Court grants this request.

8  The Court likewise grants Plaintiff's request for reimbursement of the first and seventh

9  expenses, for flights to and from San Francisco to attend trial.  These expenses, totaling $2,656.75,

10  appear unreasonable at first glance.  Aikens confirmed, however, that both flights were in the

11  airline's economy-class "main cabin," and that the expenses reflect the cost of flying shortly after

12  Thanksgiving and of changing the return ticket on short notice due to the mistrial.  *See generally*

13  *Hellenberg v. Ford Motor Co.*, No. 18-cv-2202 JM, 2020 WL 1820126, at *7 (S.D. Cal. Apr. 10,

14  2020) (disallowing expenses for first-class airfare when not expressly justified by Plaintiffs and

15  discounting accordingly).  Plaintiff's Supp. Br. in support of Motion at 2, ECF No. 480.  The

16  Court thus finds these expenses reasonable, and grants Plaintiff's request for them.

17  The Court finds the eighth expense, for three nights' hotel stay, to be excessive and

18  unreasonable.  *See, e.g.*, *HRPT Properties Tr. v. Lingle*, 775 F. Supp. 2d 1225, 1242 (D. Haw.

19  2011) (disallowing reimbursement for first-class airfare and luxury hotel expenses when not

20  sufficiently justified by Plaintiffs).  The Court reduces the amount for Plaintiff's hotel to $864, or

21  $288 per night, which reflects the U.S. General Services Administration's maximum per diem

22  lodging rate for San Francisco for October through December 2023.  *See* U.S. General Services

23  Administration Per diem files. FY 23 Per Diem Rates [Excel file], *available at*

24  https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-files.

25  The Court finds the remaining travel and parking expenses reasonable, and grants

26  Plaintiff's motion as to those expenses.

27  **dd.    Conclusion – Expenses**

28  Accordingly, the Court grants Plaintiff's request for reimbursement of expenses in the

amount of $5,699.04 in expenses, including $150 for service of process, $971.41 in expert witness

fees, $436.84 in meal expenses, and $4,140.79 for travel, lodging, and parking, as detailed below.

| Date | Activity | Description | Charge for Expense | Reduction | Expense after reduction |
|---|---|---|---|---|---|
| 11/9/23 | Service of Process | Subpoena for Christian Nieto | $75 | — | $75 |
| 11/9/23 | Service of Process | Subpoena for Shonoa Ruddick | $75 | — | $75 |
| 11/13/23 | Printing and Delivery Fee | Printing for Trial | $8,326.11 | $8,326.11 | $0.00 |
| 12/8/23 | Expert Fee | Douglas Cross Fee from 10/17/23–11/29/23 | $1,942.82 | $971.41 | $971.41 |
| 11/27/23 | Meal | Airport meals | $28.52 | — | $28.52 |
| 11/27/23 | Meal | Lunch prior to expert meeting | $21.19 | — | $21.19 |
| 11/27/23 | Meal | Food and snacks for week of trial | $144.99 | — | $144.99 |
| 11/28/23 | Meal | Dinner at hotel | $104.61 | $54.61 | $50 |
| 11/29/23 | Meal | Meal at courthouse | $8.95 | — | $8.95 |
| 11/29/23 | Meal | Lunch at hotel | $117.94 | $67.94 | $50 |
| 11/29/23 | Meal | Lunch at courthouse | $33.19 | — | $33.19 |
| 11/29/23 | Meal | Dinner (for both attorneys) at LihoLiho Yacht Club | $312.17 | $212.17 | $100 |
| 11/16/23 | Travel | Flight to SFO on 11/27 | $1,062.45 | — | $1,062.45 |
| 11/27/23 | Travel | Fare to hotel from airport | $42.94 | — | $42.94 |
| 11/28/23 | Travel | Accessible train ticket for Plaintiff for Trial | $527.40 | — | $527.40 |
| 11/29/23 | Travel | Taxi to court | $12 | — | $12 |
| 11/29/23 | Travel | Fare from court | $11.98 | — | $11.98 |
| 11/29/23 | Travel | Fare to airport from hotel | $52.72 | — | $52.72 |
| 11/20/23 | Travel | Flight from SFO to DTW | $1,503.30 | — | $1,503.30 |
| 11/30/23 | Lodging | Hotel from 11/27 to 11/30 | $1,222.89 | $358.89 | $864 |
| 11/30/23 | Parking | Airport parking | $64 | — | $64 |
| | | | Total Charges for Expenses | Total Reductions | Total Expenses after Reductions |
| | | | $15,690.17 | $9991.13 | **$5,699.04** |

## B.    Remaining Issues

The Court declines to separately analyze whether Howie should also be sanctioned

pursuant to the Court's inherent power, Civil Local Rules 1-4 and 11-4(a)(4), or California Rule of

Professional Conduct 8.4.  With respect to Plaintiff's fees and expenses, the Court would not issue

a greater amount of sanctions pursuant to those other bases than it is issuing under section 1927.

Nor has Plaintiff made any legal arguments that sanctions under those other bases could be

United States District Court
Northern District of California

awarded under a lesser showing of wrongdoing than is required under section 1927.  Therefore, there is no utility in separately addressing them.

With respect to the Court's expenses related to jury empanelment, Plaintiff argues in reply that even if those expenses cannot be awarded under section 1927, they could likely be awarded under the Court's inherent power.  ECF No. 472 at 8-9 (citing *United States v. Wallace*, 964 F.2d 1214, 1218 (D.C. Cir. 1992)).  The Court declines to reach that issue.  Plaintiff's motion for sanctions did not seek the jury-related fees.  Rather, those were solely the subject of the Court's Order to Show Cause, which invoked only section 1927, not the Court's inherent power.  ECF No. 467.

The Court assumes for the sake of argument that under its inherent power it could sanction Howie's client, SCMTD.  However, the Court would not do so.  Howie committed the misconduct, and there is no basis to attribute it to his client.

### IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion for sanctions is **GRANTED IN PART** and **DENIED IN PART**, and the Court's Order to Show Cause is **SUSTAINED IN PART** and **OVERRULED IN PART**.  Howie is **SANCTIONED** in the amount of $46,363.29, consisting of $40,664.25 in attorney's fees and $5,699.04 in expenses, payable to Plaintiff and her counsel.

**IT IS SO ORDERED.**

Dated: September 27, 2024

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California