1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
CHARLES S. PAINTER, SB# 89045
2     E-Mail: Charles.Painter@lewisbrisbois.com
GRAHAM M. CRIDLAND, SB# 243646
3     E-Mail: Graham.Cridland@lewisbrisbois.com
2020 West El Camino Avenue, Suite 700
4  Sacramento, California 95833
Telephone: 916.564.5400
5  Facsimile:  916.564.5444

6  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
JEFFRY A. MILLER SB# 126074
7     E-Mail: jeff.miller@lewisbrisbois.com
LANN G. McINTYRE, SB# 106067
8     E-Mail: lann.mcintyre@lewisbrisbois.com
550 West C Street, Suite 1700
9  San Diego, California 92101
Telephone: 619.699.4971
10  Facsimile:  619.233.8627

11  Attorneys for Defendant SANTA CRUZ
METROPOLITAN TRANSIT DISTRICT

12

13                    UNITED STATES DISTRICT COURT

14          NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

15

16  AMANDA JONES,                          Case No. 3:15-cv-02726-TSH

17              Plaintiff,                 **DEFENDANT SANTA CRUZ
                                           METROPOLITAN TRANSIT
18       vs.                               DISTRICT'S NOTICE OF MOTION AND
                                           MOTION FOR NEW TRIAL PURSUANT
19  NATIONAL RAILROAD PASSENGER            TO FED. R. CIV. P. 59; MEMORANDUM
    CORPORATION ("AMTRAK"), and SANTA      OF POINTS AND AUTHORITIES IN
20  CRUZ METROPOLITAN TRANSIT              SUPPORT**
    DISTRICT,
21                                         **[Filed Concurrently with the Declaration of
              Defendant.                   Charles S. Painter and Supporting Exhibits]**
22
                                           Date:     May 29, 2025
23                                         Time:     10:00
                                           Crtrm.:   E (15th Floor)
24
                                           Judge:    THOMAS S. HIXSON
25
                                           Trial Date:         March 3, 2025
26

27

28

155765408.1                                                          Case No. 3:15-cv-02726-TSH

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

2

3   I.     INTRODUCTION...................................................................................................1

4   II.    STATEMENT OF ISSUES TO BE DECIDED..................................................2

5   III.   STATEMENT OF RELEVANT FACTS .............................................................3

6   IV.    LEGAL STANDARD ..........................................................................................4

7   V.     THE JURY SHOULD HAVE HEARD EVIDENCE OF PLAINTIFF'S MS
8          DIAGNOSIS. .......................................................................................................4

9   VI.    JUROR NUMBER 6 SLEPT THROUGH ESSENTIAL PORTIONS OF THE
           TRIAL. .................................................................................................................7
10
    VII.   THE JURY WAS INCORRECTLY INSTRUCTED ON DAMAGES.................8
11
    VIII.  THE JURY'S NONECONOMIC AND ECONOMIC DAMAGES AWARDS
12         WERE EXCESSIVE. .........................................................................................12

13         A.     There Is Insufficient Evidence to Support the Damages Awards. ...........12

14         B.     Plaintiff's Counsel Inflamed the Jury by Urging Retribution Against
15                SCMTD. ....................................................................................................16

16         C.     Comparable verdicts show the noneconomic damages award is an outlier. ............18

17  IX.    CONCLUSION ...................................................................................................19

18

19

20

21

22

23

24

25

26

27

28



DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Atkins v. City of Los Angeles*,
5     8 Cal. App. 5th 696 (2017)...................................................................................................... 11

6

*Behr v. Redmond*,
    193 Cal. App. 4th 517 (2011).................................................................................................. 12
7

*Bermudez v. Ciolek*,
8     237 Cal. App. 4th 1311 (2015)................................................................................................ 10

9

*Brady v. Gebbie*,
    859 F.2d 1543 (9th Cir. 1988)................................................................................................. 12
10

11

*Claiborne v. Blauser*,
    934 F.3d 885 (9th Cir. 2019)..................................................................................................... 4
12

*Clausen v. M/V New Carissa*,
13     339 F.3d 1049 (9th Cir. 2003)................................................................................................. 10

14

*Erickson Prods. Inc. v. Kast*,
15     921 F.3d 822 (9th Cir. 2019)..................................................................................................... 8

16

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*,
    762 F.3d 829 (9th Cir. 2014)..................................................................................................... 4
17

*Frost v. BNSF Ry. Co.*,
18     914 F.3d 1189 (9th Cir. 2019)................................................................................................... 9

19

*Gasperini v. Ctr. for Humanities, Inc.*,
    518 U.S. 415 (1996).............................................................................................................. 12
20

21

*Hardeman v. Monsanto Co.*,
    997 F.3d 941 (9th Cir. 2021)..................................................................................................... 7
22

*Hemmings v. Tidyman's Inc.*,
23     285 F.3d 1174 (9th Cir. 2002)................................................................................................. 16

24

*In re Air Crash Disaster Near New Orleans, La.*,
    767 F.2d 1151 (5th Cir. 1985)................................................................................................. 18
25

26

*Licudine v. Cedars-Sinai Medical Ctr.*,
    3 Cal. App. 5th 881 (2016)..................................................................................................... 11

27

*McDonough Power Equipment, Inc. v. Greenwood*,
28     464 U.S. 548 (1984).................................................................................................................. 7

155765408.1                   ii                 Case No. 3:15-cv-02726-TSH

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Molski v. M.J. Cable, Inc.*,
   481 F.3d 724 (9th Cir. 2007)..................................................................................4

*Mooney v. Roller Bearing Co.*,
   601 F. Supp. 3d 881 (W.D. Wash. 2022) ...........................................................16

*Murphy v. City of Long Beach*,
   914 F.2d 183 (9th Cir. 1990)..................................................................................8

*Nairn v. Nat'l R. Passenger Corp.*,
   837 F.2d 565 (2d Cir. 1988)................................................................................18

*Oracle Corp. v. SAP AG*,
   *765 F.3d 1081* (9th Cir. 2014)..............................................................................4

*Overly v. Ingalls Shipbuilding, Inc.*,
   74 Cal. App. 4th 164 (1999)................................................................................11

*Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*,
   652 F. Supp. 3d 1098 (C.D. Cal. 2023)..............................................................16

*Raper v. Rosario*,
   836 F.3d 1072 (9th Cir. 2016)............................................................................16

*Ruvalcaba v. City of Los Angeles*,
   64 F.3d 1323 (9th Cir. 1995)................................................................................4

*Seatlegoode v. Portland Pub. Schs.*,
   371 F.3d 503 (9th Cir. 2004)..............................................................................17

*Seffert v. L.A. Transit Lines*,
   56 Cal. 2d 498 (1961)..........................................................................................12

*Smith v. Phillips*,
   455 U.S. 209 (1982)..............................................................................................7

*Stevenson v. Holland*,
   504 F. Supp. 3d 1107 (E.D. Cal. 2020)................................................................7

*Tanner v. U.S.*,
   483 U.S. 107 (1987) ........................................................................................7–8

*Thornton v. Kaplan*,
   958 F. Supp. 502 (D. Colo. 1996)......................................................................18

*U.S. v. Barrett*,
   703 F.2d 1076 (9th Cir. 1982)..........................................................................7–8

*U.S. v. Lester*,
   749 F.2d 1288 (9th Cir. 1984)............................................................................16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1

iii

Case No. 3:15-cv-02726-TSH

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*U.S. v. Olano,*
    62 F.3d 1180 (9th Cir. 1995) ................................................................................ 7

*Velez v. Roche,*
    335 F. Supp. 2d 1022 (N.D. Cal. 2004) ............................................................ 12

*Watson v. City of San Jose,*
    800 F.3d 1135 (9th Cir. 2015) ............................................................................ 9

*Wendell v. GlaxoSmithKline LLC,*
    858 F.3d 1227 (9th Cir. 2017) ............................................................................ 7

*Yanez v. Plummer,*
    221 Cal. App. 4th 180 (2013) ............................................................................. 6

*Young v. Bank of America,*
    141 Cal. App. 3d 108 (1983) ............................................................................. 15

*Zhang v. Am. Gem Seafoods, Inc.,*
    339 F.3d 1020 (2003) ....................................................................................... 12

**Rules & Regulations**

Fed. R. Civ. P. 59(a)(1) .......................................................................................... 4

Fed. R. Civ. P. 59(a)(1)(A) ..................................................................................... 4

Fed. R. Civ. P. 61 ............................................................................................... 4–5

Fed. R. Evid. 702.................................................................................................... 7

**Other Authorities**

CACI 3903A ......................................................................................................... 10

CACI 3903C..................................................................................................... 10–11

CACI 3903D ..................................................................................................... 10–11

CACI 3903E ..................................................................................................... 10–11

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

# NOTICE OF MOTION

PLEASE TAKE NOTICE that on May 29, 2025 at 10:00 a.m. in Courtroom E of the United States District Court, Northern District of California, San Francisco Division located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant SANTA CRUZ METROPOLITAN TRANSIT DISTRICT ("SCMTD"), by and through its counsel of record, will and hereby does move for a new trial pursuant to Federal Rule of Civil Procedure 59. This motion is based upon this Notice, the Memorandum of Points and Authorities submitted herewith, all pleadings and documents in this matter; the minutes of the court clerk; the reporter's notes or transcript; and upon such oral argument that is presented to this Court at the time of the hearing and upon the ruling of this Motion.

# RELIEF REQUESTED

SCMTD respectfully requests that this Court order a new trial on liability and damages due to the cumulative and prejudicial instances of error set forth in detail below. Alternatively, SCMTD respectfully requests this Court issue a remittitur reducing the economic and noneconomic damages awards, or if AMJ does not consent to the remittitur, hold a partial new trial limited to the issue of damages.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In August of 2014, a month after undergoing knee surgery, plaintiff Amanda Jones, who is now known as AMJ,[1] traveled from Chicago to the University of California, Santa Cruz for an academic training as part of a post doctorate program in social work. On a doctor's recommendation, AMJ used a mobility scooter to navigate UC Santa Cruz's campus. Upon conclusion of the weekend long training program, AMJ took a bus operated by Santa Cruz Metropolitan Transit District ("SCMTD") to the San Jose airport. AMJ remained in the scooter upon boarding the bus. According to AMJ, the bus driver did not properly secure the scooter.

---

[1]    Plaintiff now uses "they/them" pronouns.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   When the bus encountered a bend in the road, the scooter tipped over with AMJ in it. As a result,

2   AMJ claims knee and back injuries and is allegedly wheelchair bound.

3         In 2017, AMJ was diagnosed with the degenerative disease of multiple sclerosis ("MS").

4   AMJ also moved to Los Angeles, California and ultimately did not complete the post doctorate

5   program. While the jury heard evidence regarding some of these developments relevant to AMJ's

6   injuries and damages, the jury did not learn of AMJ's MS and could not consider its effect on

7   AMJ's recovery from this incident. Ultimately, the jury found defendant SCMTD liable for

8   negligence and awarded a total of over $12 million in damages to AMJ.

9         SCMTD thus asserts a new trial should be held to rectify a number of prejudicial errors

10  throughout trial. First, the jury should have been permitted to hear evidence of AMJ's MS

11  diagnosis. This diagnosis affected AMJ's recovery from the incident as well as AMJ's future

12  damages. Second, Juror Number 6 slept through key portions of witness testimony even after

13  admonishments by the Court. Juror Number 6's actions—or rather, inaction—severely prejudiced

14  SCMTD's right to a fair trial. Third, the jury received legally inadequate jury instructions on

15  economic and noneconomic damages. These instructions served only to increase juror confusion

16  regarding damages elements and how much to award. Fourth, a remittitur or new trial should be

17  ordered to reduce the jury's excessive awards of noneconomic and economic damages. Based on

18  the dearth of evidence submitted pertaining to AMJ's damages, the jury's award is the result of

19  passion and prejudice. Comparable verdicts also demonstrate how far the jury strayed beyond

20  reasonable compensation for AMJ's claimed injuries.

21  **II.    STATEMENT OF ISSUES TO BE DECIDED**

22        Whether a complete new trial, partial new trial, and/or remittitur is warranted because: (1)

23  the jury should have heard evidence of AMJ's multiple sclerosis diagnosis because such diagnosis

24  was directly relevant to AMJ's claims of causation, injury and damages; (2) Juror Number 6 slept

25  through essential portions of the trial, which impeded SCMTD's right to a fair trial; (3) the jury

26  received legally incorrect instructions on economic and noneconomic damages that compounded

27  the jury's prior confusion regarding the elements of such damages; and/or (4) the jury rendered an

28  excessive award of $12,631,250 in noneconomic damages and $368,000 in economic damages.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1                                    2                        Case No. 3:15-cv-02726-TSH
DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1  III.    **STATEMENT OF RELEVANT FACTS**

2       AMJ filed this action in 2015 for injuries allegedly sustained while riding the Amtrak

3  Highway 17 Express bus operated by SCMTD from Santa Cruz to San Jose, California.

4  [Declaration of Charles S. Painter, "Painter Decl.," Ex. A, at 3.] AMJ was riding the bus while in a

5  mobility scooter on August 25, 2014. AMJ alleges the bus driver did not properly secure the

6  scooter after AMJ boarded the bus. When the bus allegedly sped around a curve, AMJ fell over in

7  the scooter. AMJ allegedly sustained knee and back injuries as a result of the bus driver's actions.

8       In March 2025, a jury trial was held in AMJ's action against SCMTD for negligence. The

9  jury heard evidence from: (1) AMJ; (2) Leonardo Pena, Safety and Trainer Coordinator for

10  SCMTD; (3) Sergio Lona Gonzales, retired SCMTD employee; (4) Christian Nieto, eyewitness to

11  the incident; (5) Shonoa Ruddick, risk management; (6) Daniel Zaragoza, SCMTD's Deputy

12  Director of Operations; (7) Dr. Jamie Jackson, physical therapist; (8) Douglas Cross, AMJ's

13  expert; (9) Dr. Gregory Primus, AMJ's orthopedic surgeon; (10) Dr. Jonathan Nassos, rebuttal

14  orthopedic surgeon; (11) David Rishel, AMJ's expert transit consultant. [Painter Decl., Exs. C–L.]

15  AMJ did not call any damages experts to testify.

16       Following closing arguments, during which counsel for AMJ made a number of

17  inflammatory statements, the jury began its deliberations. The jury deliberated for almost two

18  days. On the afternoon of the first day, and in response to hearing the jury instructions pertaining

19  to damages, the jury submitted a question to the Court regarding the distinction between economic

20  and noneconomic damages and how to decide such damages in a manner that would not be

21  speculative. [Painter Decl., Ex. X.] That question prompted the Court to issue additional jury

22  instructions distinguishing between the two damages and a revised verdict form with separate lines

23  to list noneconomic and economic damages. [*Id.* at Exs. AA–BB.]

24       Ultimately, the jury returned a verdict in favor of AMJ. The jury found that SCMTD was

25  negligent, and its negligence was a substantial factor in causing harm to AMJ. [Painter Decl., Exs.

26  BB–CC.] The jury then awarded AMJ: (1) $12,631,250 in noneconomic damages and (2)

27  $368,000 in economic damages. [*Id.*] The jury did not find that AMJ was contributorily negligent.

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    As will be shown, numerous errors occurred throughout trial that substantially prejudiced SCMTD

2    and contributed to the shockingly large damages award. A new trial is now warranted.

3    **IV.    LEGAL STANDARD**

4         Pursuant to Rule 59(a)(1), "[t]he court may, on motion, grant a new trial on all or some of

5    the issues . . ., for any reason for which a new trial has heretofore been granted in an action at law

6    in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). The court may order a new trial "where 'the

7    verdict is against the weight of the evidence,' 'the damages are excessive' or, 'for other reasons,

8    the trial was not fair to the [moving] party.'" *Claiborne v. Blauser*, 934 F.3d 885, 894 (9th Cir.

9    2019). A new trial may also be granted where "the jury has reached a seriously erroneous result,"

10   *Oracle Corp. v. SAP AG,* 765 F.3d 1081, 1093 (9th Cir. 2014) (citation omitted), or "on any

11   ground necessary to prevent a miscarriage of justice," *Experience Hendrix L.L.C. v.*

12   *Hendrixlicensing.com Ltd.*, 762 F.3d 829, 842 (9th Cir. 2014). Another recognized ground for

13   granting a new trial is an excessive damages award. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729

14   (9th Cir. 2007). Where a damages verdict is excessive, the court may grant a new trial unless the

15   plaintiff accepts a remittitur, which "must reflect 'the maximum amount sustainable by the

16   proof.'" *Oracle*, 765 F.3d at 1094 (citation omitted).

17   **V.    THE JURY SHOULD HAVE HEARD EVIDENCE OF PLAINTIFF'S MS**

18        **DIAGNOSIS.**

19        Under Federal Rule of Civil Procedure 61, "[u]nless justice requires otherwise, no error in

20   admitting or excluding evidence—or any other error by the court or a party—is ground for

21   granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing

22   a judgment or order." Fed. R. Civ. P. 61. "At every stage of the proceeding, the court must

23   disregard all errors and defects that do not affect any party's substantial rights." *Id.* "A new trial is

24   only warranted when an erroneous evidentiary ruling 'substantially prejudiced' a party."

25   *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

26        AMJ's diagnosis of MS in 2017 was highly relevant to all aspects of this trial. Not only

27   would MS have affected AMJ's ability to recover from the 2014 incident, but the disease

28   manifests in the reduced mobility that AMJ attributes solely to this incident. Consequently, the

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1                                        4                    Case No. 3:15-cv-02726-TSH

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1  jury should have been permitted to hear evidence of AMJ's MS diagnosis in order to evaluate

2  whether SCMTD's alleged negligence was a substantial factor in causing AMJ's inability to walk.

3  Likewise, evidence of AMJ's diagnosis would have affected the jury's evaluation of AMJ's future

4  noneconomic and economic damages arising from the incident as well as AMJ's projected lifespan

5  for purposes of calculating those damages. SCMTD thus asserts that excluding evidence of AMJ's

6  diagnosis constitutes a substantially prejudicial error that changed the course of this trial and calls

7  for an entirely new trial. Fed. R. Civ. P. 61.

8       AMJ was diagnosed with MS on July 12, 2017, after experiencing continued symptoms of

9  weakness and paresthesias. [Painter Decl., Ex. B, at 6.] After AMJ underwent a brain MRI, Dr.

10  Moser observed "multiple relatively extensive" lesions that were most consistent with MS. [*Id.*]

11  Neurologist Dr. Sicotte then examined AMJ noting that AMJ's "strength [was] intact but with

12  poor effort at time[s]." [*Id.* at 7.] AMJ's expert witness, Dr. William Conte, opined that based on a

13  reasonable degree of medical certainty, AMJ has MS. [*Id.* at 8.] Dr. Conte further opined that

14  based on a reasonable degree of medical certainty, the 2014 incident did not cause or exacerbate

15  AMJ's underlying MS. [*Id.*]

16       AMJ, however, did not call Dr. Conte at trial. [Painter Decl., Ex. N, at 18:4-25.] Counsel

17  for SCMTD argued that excerpts from Dr. Conte's deposition should still be designated because

18  Dr. Primus, who would be testifying, included the MS diagnosis as part of his differential

19  diagnosis and stated that some of AMJ's medical conditions, other than orthopedic injuries, were

20  caused by MS. [*Id.* at 18:9-19.] AMJ sought to exclude any and all references to their MS

21  diagnosis at trial. This Court agreed, finding that references to AMJ's diagnosis were irrelevant

22  and would cause unfair prejudice. [*Id.* at 19:14-25.] According to the Court, "medical conditions

23  that the plaintiff has that are not causally related to the injury at issue in this case are not relevant,

24  and irrelevant evidence is not admissible." [*Id.* at 19:17-20.] Further, the Court stated that

25  mentioning AMJ's diagnosis would be unfairly prejudicial and could confuse the jury. [*Id.* at

26  19:21-22.] The jury might think that MS caused AMJ's injuries. [*Id.* at 19:23-25.] As such, the

27  Court ruled that there could be no mention of multiple sclerosis at trial. [*Id.* at 20:1-3.]

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1    Under California law, "[a] defendant's negligent conduct may combine with another factor

2  to cause harm; if a defendant's negligence was a substantial factor in causing the plaintiff's harm,

3  then the defendant is responsible for the harm; a defendant cannot avoid responsibility just

4  because some other person, condition, or event was also a substantial factor in causing the

5  plaintiff's harm; ***but conduct is not a substantial factor in causing harm if the same harm would***

6  ***have occurred without that conduct***." *Yanez v. Plummer*, 221 Cal. App. 4th 180, 187 (2013)

7  (emphasis added). Here, the harm AMJ alleges of being unable to walk without assistance would

8  have befallen AMJ without SCMTD's purported negligence. MS is a degenerative autoimmune

9  disease that affects the central nervous system, including the brain and spine, and causes the

10  myelin sheath surrounding nerves to degrade. It is known as a "demyelinating disease." [Painter

11  Decl., Ex. B, at 9.] According to the National Multiple Sclerosis Society, "[d]ifficulty in walking

12  is among the most common mobility limitations in multiple sclerosis."[2]

13    The crux of this action is whether AMJ would have recovered from the prior knee surgery,

14  and walked again without pain and mobility devices, but for SCMTD's alleged negligence in

15  securing AMJ's scooter. During the previous 2023 trial, Dr. Primus discussed AMJ's MS as it

16  related to AMJ's current condition by testifying that "[AMJ] still has quad weakness, and there's

17  various things that we're thinking about that could be leading to [AMJ's] pronounced persistent

18  quad weakness. We mention a spine cause; we mention autoimmune issues that may be at play."

19  [Painter Decl., Ex. M, at 32:25–33:3.] In contrast, at the 2025 trial, Dr. Primus testified that AMJ's

20  future care would involve "more physical therapy" to strengthen AMJ's quads. [*Id.* at Ex. Q, at

21  1030:15-23.] Dr. Primus then alluded to AMJ's MS: "Because of [their] concerns about [their]

22  back and [their] worsening back issues and potential -- **that condition's potential effect on**

23  **[their] overall leg and leg weakness and function**, there definitely would have been

24  consideration to continue [their] spine evaluation and workup, as well as to address [their]

25  generalized weakness." [*Id.* at 1030:24–1031:4 (emphasis added).]

26

27  _____

[2]    *See* MS, National Multiple Sclerosis Society, *Walking (Gait Difficulties), How Multiple*

28  *Sclerosis Affects Gait and Walking*, https://www.nationalmssociety.org/understanding-ms/what-is-ms/ms-symptoms/walking-gait-difficulties (last visited Apr. 16, 2025).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    Due to the Court's order excluding all references to MS, SCMTD's counsel was unable to

2    question Dr. Primus regarding whether he ruled out AMJ's autoimmune disease from his

3    differential diagnosis. *See Hardeman v. Monsanto Co.*, 997 F.3d 941, 953 (9th Cir. 2021) (when

4    conducting a differential diagnosis, "a physician 'rules in' all potential causes of a disease, 'rules

5    out' those for 'which there is no plausible evidence of causation, and then determines the most

6    likely cause among those that cannot be excluded.'") (quoting *Wendell v. GlaxoSmithKline LLC*,

7    858 F.3d 1227, 1234 (9th Cir. 2017)). Instead, SCMTD's counsel could only challenge Dr.

8    Primus's opinions regarding AMJ's current condition and necessary treatment as speculative and

9    beyond the scope of his treatment that last occurred many years prior. [Painter Decl., Ex. Q, at

10   1036:22-25]; Fed. R. Evid. 702. As the foregoing demonstrates, SCMTD's hands were tied by the

11   Court's exclusion of AMJ's MS diagnosis. Justice requires a new trial be held where the jury may

12   evaluate whether AMJ's autoimmune disease caused the alleged injuries and affected AMJ's

13   recovery as well as future damages.

14   **VI.    <u>JUROR NUMBER 6 SLEPT THROUGH ESSENTIAL PORTIONS OF THE</u>**

15   **<u>TRIAL.</u>**

16   A civil defendant's right to a fair trial is fundamental. *Stevenson v. Holland*, 504 F. Supp.

17   3d 1107, 1144 (E.D. Cal. 2020). "One touchstone of a fair trial is an impartial trier of fact -- 'a

18   jury ***capable*** and willing to decide the case solely on the evidence before it.'" *McDonough Power*

19   *Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209,

20   217 (1982)) (emphasis added). The jury must be both impartial and competent. *Tanner v. U.S.*,

21   483 U.S. 107, 126 (1987). And "[i]f only one juror were shown to be incompetent, the verdict

22   could not stand." *Id.* at 136 n. 4 (Marshall, J., concurring in part and dissenting in part).

23   Courts have considered sleeping jurors incompetent such that the juror may impede a

24   party's right to a fair trial. *U.S. v. Barrett*, 703 F.2d 1076, 1083 (9th Cir. 1982); *Tanner*, 483 U.S.

25   at 118–20. "A juror who is physically absent during testimony is indistinguishable from a juror

26   who is mentally absent because he or she is asleep. The basic problem is the same in both

27   situations: the juror does not observe witness testimony." *U.S. v. Olano*, 62 F.3d 1180, 1189 (9th

28   Cir. 1995). Simply put, a juror who sleeps through some of the trial is deemed incompetent. When

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

there is credible evidence a juror was asleep during trial, the Court must assess whether a party was prejudiced to warrant a new trial. *Barrett*, 703 F.2d at 1083. Prejudice occurs where the juror "miss[ed] **essential portions** of the trial" and was not fairly able "to consider the case." *Id.* at 1083 n. 13 (emphasis added).

Juror Number 6 was asleep during essential portions of the trial addressing causation. Beginning on March 5, 2025, the day of opening arguments and testimony of the first witness, defense counsel notified the Court that Juror Number 6 was a "sleeper," "nodding off" and asked the Court to "keep an eye on" the juror. [Painter Decl., Ex. O, at 412:12-14.] Juror Number 6 was slept during the defense's opening statement, as well as testimony by Leonardo Pena, the safety and training coordinator for SCMTD. [Painter Decl., ¶ 16.] The Court agreed to monitor Juror Number 6. [Ex. O, at 412:16-17.] However, Juror 6 continued to sleep throughout trial despite the Court's deputy's attempts to wake the juror. [Painter Decl., ¶¶ 16–18, 21; Ex. R.]

A key issue at trial was whether SCMTD's agent properly secured AMJ's scooter before the accident. SCMTD relied on David Risel's expert opinion that scooters like AMJ's can tip over, even when properly secured. This evidence showed SCMTD was not at fault and AMJ and SCMTD hotly debated this testimony. [*See* Painter Decl., Ex. T, 1464:8-11, 1464:15-16, 1491:11-17, 1492:12-13, 1501:7-12, 1532:17-19.] Yet, Juror Number 6 was once again asleep. [*See* Painter Decl., ¶ 21.] Juror Number 6 also slept during essential testimony by bus driver, Sergio Lona Gonzales, and nearly all of SCMTD's cross-examination of AMJ. [*Id.* at ¶¶ 17–18.] AMJ and Gonzales' testimony was crucial to fairly resolving this case. Thus, as a matter of law, Juror Number 6 was mentally unavailable (i.e. incompetent) and tainted the verdict. Just one incompetent juror invalidates a verdict. *Tanner*, 483 U.S. at 136 n. 4. Because Juror 6 slept through key testimony, SCMTD did not receive a fair trial from an impartial, competent jury.

## VII.    THE JURY WAS INCORRECTLY INSTRUCTED ON DAMAGES.

"Jury instructions 'must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading.'" *Erickson Prods. Inc. v. Kast*, 921 F.3d 822, 828 (9th Cir. 2019). A new trial is appropriate in cases of incorrect or inadequate jury instructions, unless the court finds the error harmless. *Id.*; *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir.

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1    1990). However, relevant here, the court presumes a misstatement of the law is prejudicial. *Frost*

2    *v. BNSF Ry. Co.*, 914 F.3d 1189, 1194 (9th Cir. 2019). If the moving party shows a misstatement

3    in instructions, the burden shifts to the non-moving party to establish it "'more probable than not'

4    that a properly instructed jury 'would have reached the same verdict.'" *Id.* A court may also

5    properly grant a new trial where instructions permit a jury to improperly award damages. *See*

6    *Watson v. City of San Jose*, 800 F.3d 1135, 1140–41 (9th Cir. 2015).

7            The jury instructions on both economic and noneconomic damages misstated the law. Such

8    instructions were inherently prejudicial, which shifts the burden to AMJ to show the same verdict

9    would have been reached. The instructions regarding damages (Instruction Number 29) originally

10   instructed the jury had to award damages "based upon evidence and not upon ***speculation,***

11   ***guesswork or conjecture***." [Painter Decl., Ex. V, at 32 (emphasis added).] But that instruction did

12   not delineate between the differing elements of economic and noneconomic damages. [*Id.*] The

13   instructions did not adhere to the relevant CACI instructions that explain the standard to prove

14   each type of economic and noneconomic damages. Defense counsel also proposed the verdict

15   separate economic and noneconomic damages for clarity, but the verdict was ultimately submitted

16   with only one line for all damages. [Ex. S, at 1443:5-12; Ex. W.]

17           After the jury started deliberating, the jury indicated it was confused by the damages

18   instructions: "Given that our award must be based upon evidence and not speculation, how do we

19   reconcile that with:

20           a) The fact that we don't know the exact cost of certain expenses?
             b) Subjective aspects of damages like 'loss of enjoyment of life'?"

21

22   [Painter Decl., Ex. X.] Not only did the jury not understand how to calculate damages, but

23   the jury lacked sufficient evidence to do so. The jury acknowledged AMJ did not provide any

     concrete evidence of her economic damages, such as medical provider invoices, wheelchair

24   receipts, service dog projected fees or receipts, or even documentation of her student loan balance

25   or monthly payments that appeared to be improperly claimed as a component of her damages.

26   Instead, the jury was forced to resort to pure speculation when evaluating AMJ's damages.

27   ///

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

Ultimately, the Court issued a new verdict form separating economic and noneconomic damages. [Painter Decl., Ex. BB, at 2.] The Court also issued additional instructions. Initially, the Court's proposed additional instructions, as well as SCMTD's, tracked the CACI instructions detailing the requirements for economic damages (i.e., CACI Nos. 3903A, 3903C–E). [*See* Exs. Y–Z.] The Court's proposed additional instructions also tracked CACI instruction number 3905A, which details the standard for noneconomic damages of physical pain, mental suffering, and emotional distress. [*See* Ex. Z, at 5.] Yet, the additional instructions given deviated from the accepted CACI versions and only served to increase the jury's confusion.

AMJ's counsel was responsible for creating this confusion by arguing the additional instructions should use the "same" language as what the Court already instructed in Instruction Number 29. [Painter Decl., Ex. U, at 1582:21-24, 1585:7-9, 1586:5-11, 1590:18-22, 1591:17-19, 1592:5-13.] AMJ's counsel even admitted that Instruction Number 29 and the proposed additional instructions tracking the CACI instructions "would be two different standards." [*Id.* at 1596:3-13.] Contrary to law, AMJ's counsel proposed using the Ninth Circuit standard for damages—*not* the CACI standard. [*Id.* at 1596:14-21.] As AMJ's claim was for negligence under California law, the appropriate standard was that of CACI. *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1064–65 (9th Cir. 2003) (measure of damages subject to state law in diversity cases). The Court gave additional instructions that largely tracked prior Instruction Number 29, even though that instruction had already confused the jury. [Ex. U, at 1607:2-22; Ex. AA.]

A new trial is warranted because the additional instructions misstated California's law on damages and directly led to the jury's confusion as well as an excessive damages award. AMJ sought economic damages in the form of past and future medical expenses, lost future earnings, lost earning capacity, and necessary past and future "services." [Painter Decl., Ex. AA, at 3.] California law on past medical expenses requires AMJ to specifically "prove the reasonable cost of reasonably necessary medical care" received, and future medical expenses require AMJ to "prove the reasonable cost of reasonably necessary medical care that [AMJ] is reasonably certain to need in the future." CACI 3903A; *see also Bermudez v. Ciolek*, 237 Cal. App. 4th 1311, 1328 (2015). AMJ did not make any attempt to submit such proof.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   As to lost future earnings, AMJ must specifically prove "the amount of [income, earnings,

2   salary, and/or wages AMJ] will be reasonably certain to lose in the future as a result of the injury."

3   CACI 3903C; *see also Atkins v. City of Los Angeles*, 8 Cal. App. 5th 696, 738 (2017). Again, AMJ

4   did not call her damages expert or provide any evidence regarding her anticipate lost wages.

5   Likewise, as to lost earning capacity, AMJ must specifically prove it is "reasonably

6   certain" the injury sustained "will cause [AMJ] to earn less money in the future than [AMJ]

7   otherwise could have earned" as well as the "reasonable value of that loss[.]" CACI 3903D; *see*

8   *also Licudine v. Cedars-Sinai Medical Ctr.*, 3 Cal. App. 5th 881, 887 (2016). The jury must

9   "compare what it is reasonably probable that [AMJ] could have earned without the injury to what

10   [AMJ] can still earn with the injury," considering the career choices AMJ "would have had a

11   reasonable probability of achieving." CACI 3903D. Once again, AMJ provided no actual evidence

12   that their earning capacity was affected by the accident—such as projected earnings versus actual

13   earnings—and the jury was left to resort entirely to speculation and conjecture.

14   Further, it is unclear whether the term "services" in the jury instructions relates to medical

15   services or household services. Under California law, AMJ can only recover for loss of *ability* to

16   provide future household services as part of a loss of future earnings. CACI 3903E; *see also*

17   *Overly v. Ingalls Shipbuilding, Inc.*, 74 Cal. App. 4th 164, 171 n. 5 (1999). AMJ made no attempts

18   to provide such evidence.

19   Prejudicial error also occurred when the jury was not instructed as to the standard for each

20   element of economic damages. Rather, the jury was told to "determine the plaintiff's economic

21   damages," by merely *considering* "[t]he reasonable value of necessary medical care, treatment,

22   and services received to the present time;" "[t]he reasonable value of necessary medical care,

23   treatment, and services that with reasonable probability will be required in the future;" and "[t]he

24   reasonable value of wages, earnings, earning capacity, salaries, employment, and employment

25   opportunities that with reasonable probability will be lost in the future." [Painter Decl., Ex. AA, at

26   3.] The instructions state AMJ "has the burden of proving . . . the amount of money that will

27   reasonably and fairly compensate" them. [*Id.*] However, the instructions do not specify that the

28   jury should consider specific proof of medical expenses and that of AMJ's losses (including lost

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1                                    11                        Case No. 3:15-cv-02726-TSH

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1   earning capacity and income) AMJ sustained from the injury, or that AMJ's lost income/earning

2   capacity would be offset by the amounts AMJ is otherwise capable of earning. These omissions

3   were fatal to the jury's understanding and legally incorrect. Even after the jury asked for

4   clarification of the damages standards, the jury received inadequate guidance. As could have been

5   anticipated, the jury returned an inflated damages award unrelated to the evidence actually

6   proffered at trial. A new trial is now warranted to rectify the cascading errors that resulted from

7   these incorrect, and inconsistent, jury instructions on damages.

8   **VIII.    THE JURY'S NONECONOMIC AND ECONOMIC DAMAGES AWARDS WERE**

9   **EXCESSIVE.**

10      **A.      There Is Insufficient Evidence to Support the Damages Awards.**

11      When reviewing a damages award for excessiveness, a district court, sitting in diversity,

12  applies state law for measuring excessiveness. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S.

13  415, 429–31, 434–36 (1996). California law requires the jury's award be based on sufficient

14  evidence. *See Behr v. Redmond*, 193 Cal. App. 4th 517, 526, 532–33 (2011). Likewise, California

15  law requires that the verdict is not "so out of line with reason that it shocks the conscience and

16  necessarily implies that the verdict must have been the result of passion and prejudice." *Seffert v.*

17  *L.A. Transit Lines*, 56 Cal. 2d 498, 508 (1961). Thus, jury awards of damages may be reduced if

18  they are "grossly excessive or monstrous," or "if the amount is 'clearly unsupported by the

19  evidence' or 'shocking to the conscience.'" *See Velez v. Roche*, 335 F. Supp. 2d 1022, 1038 (N.D.

20  Cal. 2004) (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1040 (2003); *Brady v.*

21  *Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988)).

22      Here, the jury returned a verdict in favor of AMJ for **$12,631,250** in noneconomic

23  damages and **$368,000** in economic damages after deliberating for two days. [Painter Decl., Ex.

24  BB, at 2.] Each of these awards is not only shocking to the conscience, but critically lacking in

25  evidentiary support. As previously discussed, the jurors submitted a question to the Court during

26  their first day of deliberations revealing they were having difficulty evaluating AMJ's scant

27  evidence to award noneconomic and economic damages. The jury asked how to render an award

28  that was *not* speculative, implying they were currently using speculation to arrive at damages

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1                                          12                              Case No. 3:15-cv-02726-TSH
DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED. CIV. R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1    figures, and expressed frustration that they did not have a list of AMJ's expenses. [*Id.* at Ex. X.]

2    The jury also inquired how they should objectively evaluate "subjective" damages such as "loss of

3    enjoyment of life." [*Id.*] This query shows jurors were left without *any* evidence to consider when

4    evaluating whether to award AMJ economic damages *and* had no idea how to calculate an award

5    of noneconomic damages that would not be speculative. Significantly, AMJ did not call any

6    damages experts at trial to support the request for noneconomic and economic damages.

7    Previously, AMJ designated Nora Ostrofe, an economist, and John McKinney, a vocational

8    evaluator to assess damages. [Painter Decl., Ex. B, at 2.] However, neither of these expert

9    witnesses testified at trial. AMJ testified on their own behalf regarding damages and did not

10    submit any concrete evidence of expenses that were incurred or anticipated. SCMTD respectfully

11    requests that AMJ be offered the choice of a remittitur or a partial new trial on damages.

12        Regarding AMJ's noneconomic damages, AMJ's testimony encompassed their experiences

13    after the accident, which included depression, weight gain, mobility loss and an inability to

14    continue their studies. As discussed above, those experiences were likely caused—at least in

15    part—by the MS that would have affected AMJ's recovery from the incident. Since SCMTD was

16    not permitted to develop this issue, the jury was left in the dark as to the effects of MS on AMJ's

17    alleged injuries and recovery. MS is a progressive auto immune disease that can worsen as an

18    individual ages, and in some cases, new symptoms may appear. This accident occurred on August

19    25, 2014. [Painter Decl., Ex. A, at 3.] This action was then tried almost eleven years later. During

20    that time, AMJ's MS has naturally progressed, and it is very likely that AMJ's quality of life and

21    estimated lifespan have been detrimentally impacted. By preventing the jury from hearing about

22    AMJ's MS, the jury was left to conclude that AMJ is now wheelchair bound due to the incident.

23        The jury also received an incomplete picture of AMJ's lifespan when calculating future

24    noneconomic and economic damages. AMJ's counsel presented a slide during closing argument

25    requesting AMJ receive $418,000 per year for the rest of AMJ's life. [See Painter Decl., Ex. T, at

26    1468:13-14, 1474:10-12.] Additional Instruction Number 4 (Life Expectancy) also shows the

27    Social Security Administration's actuarial table estimates a female of AMJ's age would live

28    another 38.33 years. [Ex. U, at 1588:4-8; Ex. Z, at 6; Ex. AA, at 6.] Although the slide was taken

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1                                        13                          Case No. 3:15-cv-02726-TSH
DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1  down, the jury was not admonished. [Ex. T, at 1480:15-18.] It appears the jury took counsel's

2  advice when it awarded over $12 million in noneconomic damages. In light of AMJ's diagnosis,

3  this projection of AMJ's estimated lifespan is inaccurate. As the inflated noneconomic damages

4  award shows, the jury erroneously ascribed AMJ's present condition solely to the incident.

5      Additionally, AMJ provided insufficient testimony pertaining to past and future

6  noneconomic damages to support an award of over $12 million. The Court instructed the jury to

7  consider the following items of noneconomic damages: "the nature and extent of the injuries; the

8  disability, disfigurement, loss of enjoyment of life experienced and that with reasonable

9  probability will be experienced in the future; the physical pain and suffering experienced and that

10  with reasonable probability will be experienced in the future[.]" [Painter Decl., Ex. AA, at 4.] The

11  Court also instructed the jury that "[n]o fixed standard exists," but to "decide a reasonable amount

12  based on the evidence and your common sense." [*Id*.] The jury was thus directed that

13  noneconomic damages must still be supported by sufficient evidence.

14      AMJ testified that they were involved in a car accident and they had knee surgery before

15  the 2014 incident on SCMTD's bus. After falling while in the mobility scooter on the bus, AMJ

16  described "being back to square one" with knee rehabilitation efforts. [Painter Decl., Ex. P, at

17  616:11-18.] AMJ experienced knee pain and was stressed due to studying for Ph.D. qualifying

18  exams. [*Id*. at 616:19-24, 617:8-17.] Even so, AMJ passed the qualifying exams. [*Id*. at 619:6-10.]

19  AMJ also testified that their leg "would not function depending on the weather" and AMJ's

20  medical team recommended AMJ leave Chicago for a more "temperate" climate. [*Id*. at 620:13-

21  19.] Based on this recommendation, AMJ moved to Los Angeles, California. After moving to Los

22  Angeles, AMJ described "doing a lot of kind of dissociating." [*Id*. at 636:4-7.]

23      AMJ initially remained enrolled at the University of Chicago after moving to California,

24  but ultimately "timed out" of the social work Ph.D. program in 2021. [*Id*. at 635:24–636:1.] The

25  incident purportedly caused AMJ to lose time necessary to complete the Ph.D. program due to

26  being in pain, undergoing physical therapy and experiencing post-traumatic stress disorder. [*Id*. at

27  637:14–638:8.]

28  / / /

155765408.1

14

Case No. 3:15-cv-02726-TSH

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED. R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    California law permits plaintiffs to recover damages for emotional distress when the injury

2    suffered is "severe, i.e., substantial or enduring as distinguished from trivial or transitory." *Young*

3    *v. Bank of America*, 141 Cal. App. 3d 108, 114 (1983). Examples of emotional distress include

4    "'highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation,

5    embarrassment, anger, chagrin, disappointment, worry and nausea.'" *Id.* As the foregoing shows,

6    AMJ vaguely claimed to have experienced dissociation and post-traumatic stress disorder after the

7    incident that does not rise to the level of compensable emotional distress. The evidence simply

8    cannot support an award of over $12 million.

9    Regarding AMJ's economic damages, after the jury's considerable confusion, the Court

10   instructed jurors to consider:

11       A. The reasonable value of necessary medical care, treatment, and services received
         to the present time;
12       B. The reasonable value of necessary medical care, treatment, and services that
         with reasonable probability will be required in the future;
13       C. The reasonable value of wages, earnings, earning capacity, salaries,
         employment, and employment opportunities that with reasonable probability will
14       be lost in the future.

15   [Painter Decl., Ex. AA, at 3.]

16   The Court then cautioned the jury not to rely upon "speculation, guesswork or conjecture."

17   [Painter Decl., Ex. AA, at 3.] However, AMJ's testimony at trial regarding economic damages was

18   nonexistent. AMJ stopped all rehabilitative treatment shortly after moving to California. [Ex. P, at

19   635:7-14.] AMJ claimed—without providing any receipts, or expert evidence—that they would

20   need to replace their wheelchair every five years, which costs approximately $3,000 without

21   insurance, and pay for service dogs. [*Id.* at 646:17-20, 651:12-25.] While AMJ currently has an

22   informally trained, "bootleg" service dog, AMJ estimated that formally trained services dogs

23   would cost about $25,000 to $30,000. [*Id.* at 650:12-18.] This figure lacked any evidentiary

24   support and was arbitrarily inflated. While the cost for a wheelchair was based on AMJ's past

25   purchase from Amazon, the cost of a formally trained service dog was wholly unsupported.

26   Further, AMJ's testimony regarding their career and future academic prospects was

27   completely speculative and violated the Court's prior motion in limine ruling. AMJ testified that

28

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    but for the incident they could have won numerous academic scholarships, such as the highly

2    competitive and prestigious Fulbright Scholarship along with the Kirchenstein and SSRC

3    Scholarships. [Ex. P, at 619:19-22, 622:10–623:5, 631:2-8.] It was unreasonable for the jury to

4    infer AMJ would have in fact received these sought-after scholarships. Moreover, AMJ sought to

5    claim prior student loans as economic damages, but did not provide any documentation of the total

6    amount of these loans or AMJ's monthly payments. AMJ testified without any support that they

7    have "upward" of $300,000 in student loans because the University of Chicago is a "very

8    expensive school." [*Id.* at 639:2-11.] AMJ's student loans were presumably accumulated long

9    before the incident and cannot be categorized as economic damages. Yet, in reaching $368,000 in

10   economic damages, it appears the jury included AMJ's student loans in their calculations. As

11   insufficient evidence supports each element of the economic damages award, a remittitur or new

12   trial must issue on this portion of the damages as well.

13        **B.**    **Plaintiff's Counsel Inflamed the Jury by Urging Retribution Against SCMTD.**

14        "[F]requent improper comments made at 'critical moments' during a case, including . . .

15   closing" may "warrant a new trial." *Pavemetrics Sys., Inc. v. Tetra Tech, Inc.*, 652 F. Supp. 3d

16   1098, 1104 (C.D. Cal. 2023). Courts examine the totality of the circumstances to determine the

17   nature and effect of improper statements, including the verdict itself. *Hemmings v. Tidyman's Inc.*,

18   285 F.3d 1174, 1193 (9th Cir. 2002). As will be shown, AMJ's counsel engaged in misconduct

19   during the closing argument by making inflammatory statements that prejudicially influenced the

20   jury to find for AMJ and award excessive damages.

21        Several rules govern the propriety of closing argument. Counsel may not make arguments

22   unsupported by, or extraneous to, the evidence. *Raper v. Rosario*, 836 F.3d 1072, 1083 (9th Cir.

23   2016); *Hemmings*, 285 F.3d at 1193. Counsel may not ask the jury to put itself in the shoes of one

24   of the parties (i.e. invoke the "Golden Rule"), nor make "reptilian" arguments to inflame

25   emotions, nor make "'impermissible comment[s] calculated to incite the jury' against the

26   defendant." *Mooney v. Roller Bearing Co.*, 601 F. Supp. 3d 881, 889 (W.D. Wash. 2022) (quoting

27   *U.S. v. Lester*, 749 F.2d 1288, 1301 (9th Cir. 1984)). Retributive arguments are not permitted

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1                                16                    Case No. 3:15-cv-02726-TSH
DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

1    unless the jury may award punitive damages. *Seatlegoode v. Portland Pub. Schs.*, 371 F.3d 503,

2    519–20 (9th Cir. 2004).

3        AMJ's counsel's closing argument was rife with inflammatory statements, improper

4    arguments, or inadmissible evidence that impassioned the jury to award excessive damages,

5    despite the lack of evidentiary support. AMJ's counsel also relied on retributory arguments even

6    though AMJ did not seek punitive damages. For example, AMJ's counsel argued SCMTD would

7    only "make changes" if punished monetarily. [Painter Decl., Ex. T, at 1466:13–1467:13.] AMJ's

8    counsel explained "it's not about retribution. It's about speaking in terms that a corporation

9    understands and [*sic*] risk. Tolerance for risk." [*Id.* at 1468:7-9.] AMJ's counsel continued to

10    improperly charge the jury to seek retribution, and would not drop the subject even after the Court

11    sustained multiple objections. [*See id.* at 1467:1-13, 1468:7-9.]

12        AMJ's counsel also asked the jury to imagine a "job description" living life as AMJ. [*id.* at

13    1479:25–1481:7.] Counsel urged the jury to imagine themselves in AMJ's shoes: "You drop out of

14    your Ph.D. program," [*id.* at 1481:9]; "You missed out on scholarships and fellowships your

15    classmates receive," [*id.* at 1481:15-16]; "Never sleep well, never sleep on your left side," [*id.* at

16    1482:15]; "Never know when your leg might give out as you're doing anything," [*id.* at 1482:17-

17    18]; "Experience life as a disabled person in a world not built for you," etc. [*Id.* at 1483:3-4; *see

18    also id.* at 1482:7-8, 1482:15–1483:5, 1484:17–1486:17.] Counsel asked repeatedly if it were a

19    job, "[w]ould you [the jury] take that job?" [*Id.* at 1486:18; *see also id.* at 1480:24-25, 1481:3-7.]

20        AMJ's counsel later implied SCMTD did not treat disabled individuals as human beings.

21    AMJ's counsel stated they took the job as AMJ's counsel because "these are people. These are

22    human beings. This is the side that I'm on. This is the side I chose to be on." [*Id.* at 1540:3-5.]

23    AMJ's counsel thereby created an inference that SCMTD did not treat AMJ, or other disabled

24    individuals, as human beings. Such arguments improperly imply "facts" outside the evidence that

25    can be designed only to inflame the passions of the jury.

26        Lastly, AMJ's counsel argued AMJ's damages were $414,078.67 per year. [*Id.* at 1479:25–

27    1480:5.] After defense counsel objected, AMJ's counsel stated, in front of the jury, that counsel

28    was "allowed to provide what we believe to be a reasonable number" under California law. [*Id.* at

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1480:6-13.] The Court admonished AMJ's counsel that there was "no evidence of this" calculation and sustained the objection. [*Id.* at 1480:6-8, 1480:15.] AMJ's counsel continued to refer to the calculation stating "my number might not be your number." [*Id.* at 1480:19-25.] AMJ's counsel also argued a "calculat[ion]" based on life as AMJ. [*Id.*]

Although AMJ's counsel asked the jury to "disregard" this calculation [*id.* at 1481:1], the prejudice was incurable. After closing, the jury expressed its confusion as to how to calculate damages given it did not "know the exact cost of certain expenses." [Ex. X.] But the jury ultimately based the damages award on the improper $414,078.67 per year, coupled with the life expectancy of 38 more years. [Ex. AA, at 5.] This explains why the jury awarded the excessive and similar amount of $12,999,250. [Exs. BB–CC.] As the foregoing shows, each instance of attorney misconduct during the closing argument compounded to enflame the jury to find for AMJ and award AMJ a shockingly large amount of damages.

### C.    Comparable verdicts show the noneconomic damages award is an outlier.

"In determining whether a jury award for compensatory damages is excessive, a court may review awards made in similar cases to determine whether or not an award is excessive and calls for an order of remittitur." *Thornton v. Kaplan*, 958 F. Supp. 502, 505 (D. Colo. 1996). "[C]ourts have found it useful to review awards in other cases involving similar injuries, while bearing in mind that any given judgment depends on a unique set of facts and circumstances." *Nairn v. Nat'l R. Passenger Corp.*, 837 F.2d 565, 568 (2d Cir. 1988) (citing *In re Air Crash Disaster Near New Orleans, La.*, 767 F.2d 1151, 1156–57 (5th Cir. 1985)). A review of verdicts rendered in California's superior courts shows that the verdict here is an outlier.

In *Green v. Empire Transportation, Inc.* (2018), Riverside County Superior Court Case Number RIC1613626, a wheelchair-bound plaintiff fell from their wheelchair while traveling on a public bus. [Painter Decl., Ex. EE, at 1.] The plaintiff sued the company that operated and maintained the bus, alleging there was broken safety equipment that led to the plaintiff's fall. [*Id.*] The defendant disputed that there was broken safety equipment and argued there was a possible defect in the wheelchair. [*Id.* at 2.] The plaintiff suffered a traumatic brain injury resulting in the need for around-the-clock care for the remainder of the plaintiff's life. [*Id.*] The defendant claimed

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

the plaintiff's degenerative injuries were unrelated to the accident. [*Id.*] The jury awarded $28,305 in past medical damages, $352,450 in future medical costs, $108,000 in past noneconomic damages, and $126,000 in future noneconomic damages, constituting **$614,755 total**. [*Id.*]

In *Rubin v. One Level World Inc.* (2019), Los Angeles Superior Court Case Number BC570895, a plaintiff attempted to use an installed motorized wheelchair lift in her condominium unit. The bolts in the lift failed, causing the plaintiff to fall, and the wheelchair to fall onto her. The plaintiff sued the defendant for negligent installation and maintenance of the lift, claiming the accident aggravated prior injuries from which she was healing, causing her to require a wheelchair for the rest of her life. [Painter Decl., Ex. FF, at 2.] The jury awarded **$1,118,603 total**. [*Id.* at 3.]

In *Borja v. Santa Clara County Transportation Authority* (2004), Santa Clara Superior Court Case Number CV802902, a plaintiff utilizing a three-wheeled electric motor scooter sustained injuries when her scooter tipped over on a public bus. [Painter Decl., Ex. DD, at 2.] The plaintiff asked the bus driver to help secure her with a seatbelt, and the bus driver allegedly stated that the driver was running late and would "take it easy." [*Id.*] The driver sped and drove "so recklessly" that the plaintiff's scooter tipped over, smashed the plaintiff's head against a seat, and forced the entire weight of the scooter onto the plaintiff. The bus driver stated the plaintiff refused use of a seatbelt. [*Id.*] The jury awarded **$2,165,327 total**. [*Id.* at 1.]

Here, the jury's award of almost $13 million far exceeds similar California cases. At best, the award is more than six times an exemplary case. The verdict is excessive and cannot stand.

## IX.    CONCLUSION

SCMTD respectfully requests that the Court grant an Order for a new trial on liability and damages, or in the alternative, a remittitur or partial new trial on damages.

DATED: April 16, 2025            LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    */s/ Jeffry A. Miller*
    JEFFRY A. MILLER
    LANN G. MCINTYRE
    CHARLES S. PAINTER
    GRAHAM M. CRIDLAND
    Attorneys for Defendant SANTA CRUZ
    METROPOLITAN TRANSIT DISTRICT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

155765408.1                          19                    Case No. 3:15-cv-02726-TSH
DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES

**CERTIFICATE OF SERVICE**
**FOR CASE NUMBER 3:15-cv-02726-TSH**

I hereby certify that on April 16, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Northern Division by using the CM/ECF system.

**DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION FOR NEW TRIAL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT; DECLARATION OF CHARLIE PAINTER; SUPPORTING EXHIBITS**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

  */s/ Raquel Legaspi*
Raquel Legaspi

DEFENDANT SANTA CRUZ METROPOLITAN TRANSIT DISTRICT'S NOTICE OF MOTION AND MOTION
FOR NEW TRIAL PURSUANT TO FED R. CIV. P. 59; MEMORANDUM OF POINTS AND AUTHORITIES